## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and between Plaintiffs Sidney Reid, Alisha Barnett, Dawn Damrow, Fran Pennell, Terri Naiser, Jonnie Phillips, Josephine Wells and Catherine Reny (the "Named Plaintiffs"), on behalf of themselves and the Settlement Class defined below, and Unilever United States, Inc. ("Unilever U.S."), Conopco, Inc. d/b/a Unilever Home and Personal Care USA ("Conopco") (collectively, "Unilever"). For the purpose of this Agreement, the Named Plaintiffs and Unilever are described collectively as the "Parties" to this Agreement, and Unilever and Les Emballages Knowlton, Inc. ("LEK") are described collectively as the "Defendants." Subject to the preliminary and final court approval as described below, the Parties state and agree as follows:

1. **Agreement to Resolve the Pending Litigation**. In order to avoid the expense, risks and uncertainty of continued litigation, the Parties have agreed to settle three putative class actions on the terms and subject to the conditions of this Settlement Agreement. Those actions, described collectively in this Settlement Agreement as the "Smoothing Kit Lawsuits," are currently pending in the United States District Court for the Northern District of Illinois (*Reid, et al. v. Unilever United States, Inc., et al.*, Case No. 12 CV 6058, hereinafter the "Reid Lawsuit"), in the United States District Court for the Western District of Kentucky (*Naiser et al. v. Unilever United States, Inc., et al*, Case No. 13 CV 0395, hereinafter the "Naiser Lawsuit") and the United States District Court for the Northern District of California (*Wells, et al. v. Unilever United States, et al.*, Case No. 13 CV 04749, hereinafter the "Wells Lawsuit"). The Parties have reached agreement to resolve the Smoothing Kit Lawsuits as a result of arms-length negotiations between counsel for the Named Plaintiffs and counsel for Unilever, including extensive discussions and formal mediation sessions conducted by former United States District Court

Judge Wayne Andersen, during the period from October 31, 2012 to the present, while the Parties conducted discovery and briefed various motions including motions to dismiss. The Named Plaintiffs, believing that the claims have substantial merit, have determined that this Settlement Agreement is fair, reasonable, adequate and in the best interests of Named Plaintiffs and the putative Settlement Class. Unilever, denying wrongdoing of any nature and without admitting liability, has agreed to the terms of this Settlement Agreement in order to address claims brought by consumers of Unilever products, and in order to avoid the burdens of continuing discovery expenses and litigation.

        **A.**      **<u>The Reid Lawsuit</u>.**  Named Plaintiff Sidney Reid and former named plaintiff Angel Lake filed the Reid Lawsuit against Unilever U.S. on behalf of themselves and a purported nationwide class on August 2, 2012, before the Hon. Ruben Castillo (hereinafter, the "Court"). The complaint filed by Reid and Lake asserted claims against Unilever U.S. for breach of warranty, violation of consumer fraud and deceptive trade practices statutes, and unjust enrichment, all arising out of the manufacture, advertising and sale of a product sold under the name "Suave® Professionals Keratin Infusion 30-Day Smoothing Kit" (the "Smoothing Kit"). On August 7, 2013, the Court granted in part and denied in part Unilever's motion to dismiss the complaint. The Court denied Unilever's motion to dismiss claims for breach of warranty and consumer fraud to the extent those claims were grounded in an alleged failure to disclose or warn, and granted Unilever's motion to the extent the consumer fraud claims were based on the same alleged affirmative misrepresentations that formed the basis of claims asserting breach of warranty. The Court dismissed the Plaintiffs' claims alleging violations of the Illinois and Alabama deceptive trade practices acts and dismissed the unjust enrichment claim of Plaintiff Lake but not of Plaintiff Reid. On August 13, 2013, Lake voluntarily dismissed her claims. On

September 23, 2013, Named Plaintiffs Reid, Barnett, Damrow and Pennell filed an Amended Complaint. The Amended Complaint added Conopco and LEK as defendants and replaced the previous proposed nationwide class with four proposed single-state classes consisting of all residents of Alabama, Illinois, Nevada and Wisconsin who purchased the Smoothing Kit. The Amended Complaint asserts claims for breach of warranty, violation of consumer fraud and deceptive trade practices statutes, negligence and/or gross negligence, strict liability and unjust enrichment. Unilever U.S. and Conopco filed answers to the Amended Complaint denying liability and raising a number of additional defenses, and the parties commenced formal discovery. On November 5, 2013, the Court entered an order staying the Reid Lawsuit for 60 days, until January 6, 2014, while the parties worked to negotiate a global settlement of the Smoothing Kit class action Lawsuits. On December 12, 2013, the Court extended the stay of the Reid Lawsuit until February 13, 2014.

    **B.**   **The Naiser Lawsuit**. On February 22, 2013, Named Plaintiffs Terri Naiser and Jonnie Phillips filed their complaint in the Jefferson Circuit Court of Kentucky against Unilever U.S., Conopco and LEK on behalf of themselves and a purported Kentucky class of purchasers of the Smoothing Kit. On March 14, 2013, without having served their initial complaint, Naiser and Phillips filed an amended complaint in the Jefferson Circuit Court. The amended complaint asserts claims for breach of warranty, violation of the Kentucky Consumer Protection Act, negligence and/or gross negligence, strict liability and unjust enrichment, all arising out of the manufacture, advertising and sale of the Smoothing Kit. Unilever U.S. and Conopco removed the Naiser Lawsuit to the United States District Court for the Western District of Kentucky (the "Kentucky Court"). Following the court's denial of their motions to dismiss, Unilever U.S. and Conopco filed answers to the amended complaint denying liability and raising

3

a number of additional defenses. On November 21, 2013, the Kentucky Court stayed the *Naiser* Lawsuit while the parties worked to negotiate a global settlement of the Smoothing Kit Lawsuits.

        **C.**      **The Wells Lawsuit**. On October 11, 2013, Named Plaintiffs Josephine Wells and Catherine Reny filed their complaint against Unilever U.S., Conopco and LEK in the United States District Court for the Northern District of California (the "California Court,") on behalf of a proposed multistate class of all persons within the United States who purchased the Smoothing Kit for personal or household use, other than those persons who reside in Alabama Illinois, Kentucky, Nevada or Wisconsin, or a proposed alternative class of California residents. The complaint in the *Wells* Lawsuit asserts claims for breach of warranty, violation of the Song-Beverly Consumer Warranty Act, violation of various state consumer protection and deceptive advertising statutes, negligence and/or gross negligence, strict liability and unjust enrichment , all arising out of the manufacture, advertising and sale of the Smoothing Kit. None of the Defendants in the *Wells* Lawsuit has yet responded to the complaint in that action. Defendants deny that they are liable to Wells, Reny or any member of the purported classes alleged in the complaint. On November 26, 2013, the California Court stayed the *Wells* Lawsuit while the parties worked to negotiate a global settlement of the Smoothing Kit Lawsuits.

        **2.**      **Conditional Class Certification for Class Settlement Purposes Only**. The Parties stipulate to certification, for settlement purposes only, of a Settlement Class (the "Class") defined as follows:

> All persons who purchased or used the Smoothing Kit in the United States before February 17, 2014, excluding (a) any such person who purchased for resale and not for personal or household use, (b) any such person who signed a release of any Defendant in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) any legal counsel or employee of

4

legal counsel for any Defendant, and (e) the presiding judges in the Smoothing Kit Lawsuits and their immediate family members.

Within ten (10) days of the execution of this Settlement Agreement, the Parties shall jointly file a motion seeking an Order preliminarily certifying the Class and approving the Settlement and will request that the Court enter the proposed Preliminary Approval Order attached as Exhibit 1 to this Agreement, preliminarily certifying the Settlement Class, appointing the Named Plaintiffs as representatives of the Settlement Class, and appointing Class Counsel for the Settlement Class. As set forth in the proposed Preliminary Approval Order, the Parties agree that Class Counsel shall be Jana Eisinger, of the Law Offices of Jana Eisinger, PLLC, Peter Safirstein, of Morgan & Morgan, P.C., and Christopher Polaszek, of Morgan & Morgan, P.A., and that Liaison Counsel shall be Marvin Miller, of Miller Law, LLC. The Parties further agree and stipulate that the preliminary and conditional certification of the Settlement Class and appointment of Class Counsel shall be binding only if this Settlement Agreement is executed, not terminated in accordance with Par. 19, approved by the Court both preliminarily and finally, and affirmed upon any appeal. If the Settlement Agreement is terminated or rejected, the Parties stipulate and agree that they will jointly request that the Court vacate the certification of the Settlement Class without prejudice to any Party's position on the issue of class certification, and restore the Parties to their respective litigation positions as they existed immediately before the execution of this Settlement Agreement.

3.    **No Admission of Liability or Other Concession**.    The Parties and their respective counsel agree that the settlement of the Smoothing Kit Lawsuits is not a concession, admission or acknowledgement by any Defendant that a litigation class could properly be certified in any of the Smoothing Kit Lawsuits. The Parties therefore agree not to argue, in this or any other proceeding, that the fact of this proposed settlement, or any stipulation to

5

certification of the Settlement Class, constitutes any concession or admission by Defendants that a litigation class could properly be certified. The Parties and their respective counsel further agree that no aspect of this Agreement, its provisions, the negotiations or the positions of any of the Parties leading to its execution, shall be construed as a concession, admission or acknowledgement by Defendants of the truth of any of the allegations made in the Smoothing Kit Lawsuits, or of any liability, fault or wrongdoing of any kind on the part of any Defendant. Accordingly, this Agreement shall not be offered or received in evidence in any action or proceeding in any court, private forum, administrative proceeding, or other tribunal as any kind of admission, concession by Defendants.

4. **Settlement Consideration**. In exchange for the releases provided in Paragraph 14 of this Agreement, within 10 days after entry of the Final Approval Order, Unilever will provide $10,250,000 to the Settlement Administrator for the establishment of two interest-bearing Settlement Funds in appropriate Settlement Accounts, to consist of a "Reimbursement Fund" of two hundred and fifty thousand dollars ($250,000) and an "Injury Fund" of ten million dollars ($10,000,000). The parties agree to the appointment of Dahl Administration LLC as the Settlement Administrator. In addition to the establishment of the aforementioned Funds, the duties of the Settlement Administrator are set forth in greater detail in Paragraph 11 herein. Payments from the Settlement Funds shall be made in accordance with the terms of this Settlement Agreement.

4(A). **Reimbursement Fund**. Any member of the Settlement Class who purchased a Smoothing Kit, did not suffer bodily injury to his or her hair or scalp as a result of using the Smoothing Kit, and does not timely request exclusion from the Settlement Class, shall be entitled to submit a claim against the Reimbursement Fund for a one-time payment of $10 per

person, subject to Par. 4(A)(iii) below (the "Reimbursement Fund Payment"). Any member of the Settlement Class who purchased a Smoothing Kit and suffered bodily injury and incurred expenses as a result of the use of the Smoothing Kit shall be entitled to submit his/her claim against the Reimbursement Fund, for the Reimbursement Fund Payment, on the same form used for any claim against the Injury Fund, noted separately on the claim form.

      **4(A)(i).** To be eligible for a payment from the Reimbursement Fund, a Settlement Class Member must submit to the Settlement Administrator (1) a completed Reimbursement Claim Form signed by the Settlement Class Member under penalty of perjury, in the form attached as Exhibit 2 to this Settlement Agreement attesting that the Settlement Class Member purchased the Smoothing Kit; and (2) if available, additional proof, in the form of a receipt, credit card statement, product packaging, supporting declarations, or other evidence acceptable to the Settlement Administrator, that the Settlement Class Member purchased the Smoothing Kit (collectively, "Purchase Evidence").

      **(4(A)(ii).** The Settlement Administrator identified in paragraph 4 of this Agreement shall have the full and final authority to determine the validity of any claims submitted against the Reimbursement Fund. Before declining any claim against the Reimbursement Fund, the Settlement Administrator shall issue a one-time request to the claimant, in order to permit the claimant to provide any information that is missing or improperly submitted on the claim form.

      **4(A)(iii).** If the claims made against the Reimbursement Fund collectively exceed the total amount of that Fund, then the Settlement Administrator shall distribute the funds *pro rata,* so that the full proceeds of the Reimbursement Fund are paid to all Claimants who submitted valid claims to the Fund. If there are amounts remaining in the

Reimbursement Fund after the payment of all claims that the Settlement Administrator has determined to be valid, then those remaining amounts shall be added to the Injury Fund.

      **4(B).** **Injury Fund – Reimbursement of Expenses**. Any member of the Settlement Class who suffered bodily injury to his or her hair or scalp, including but not limited to hair loss, significant damage to their hair, or scalp damage, as a result of using the Smoothing Kit ("Covered Injury"), and does not timely request exclusion from the Settlement Class ("Settlement Class Members"), may make a claim against the Injury Fund for reimbursement of amounts spent to redress such injuries, as set forth below. Claimants who do not have receipts for their expenses may make a claim for Benefit Option A, while Claimants who do have receipts may make a claim for Benefit Option B. Those Benefit Options are described in Par. 4(B)(v) and Par. 4(B)(vi) below.

      **4(B)(i).** The Settlement Administrator shall have authority to determine the validity of any claims submitted against the Injury Fund for either Benefit Option A or Benefit Option B, including the sufficiency of the Claimant's evidence of a Covered Injury and any other documentation submitted in support of the claim. Before declining any claim against the Injury Fund for reimbursement of expenses, the Settlement Administrator shall issue a one-time request to the claimant to provide any information that is missing or improperly submitted on the claim form. The Special Master shall review any claims deemed by the Settlement Administrator to be incomplete or not sufficiently supported before those claims are denied. The Special Master shall have full and final authority over any declination decision with respect to Benefit Options A and B and, within the caps set forth in Par. 4 of this Settlement Agreement, over amounts to be awarded from the Injury Fund for Benefit Option C, subject to Par. 4(D).

**4(B)(ii).** The following forms of supporting evidence shall be received by the Settlement Administrator in support of a claim of a Covered Injury caused by the Smoothing Kit: photographs, videos, and/or supporting declarations from witnesses who verify Claimants' injury caused by the Smoothing Kit.

**4(B)(iii).** The following forms of supporting evidence shall be received by the Settlement Administrator in support of a claim for expenses incurred to redress a Covered Injury caused by the Smoothing Kit, payable under Benefit Option B: receipts and/or declarations supplied by, for example, a medical provider or hairdresser confirming the amount spent to redress a Covered Injury.

**4(B)(iv).** The supporting evidence described above is not intended to provide an exclusive list of the supporting evidence that may be submitted in support of a Claim. The Settlement Administrator and Special Master shall have discretion to accept forms of evidence in addition to or in place of the examples set forth above.

**4(B)(v).** __Benefit Option A – Reimbursement of Expenses Without Receipts.__ Settlement Class Members who suffered a Covered Injury, and incurred expenses to redress those injuries after use of the Smoothing Kit, but do not have receipts for such expenses, may make a claim against the Injury Fund for reimbursement of expenses in an amount not to exceed $40 per Claimant. Settlement Class Members may also request reimbursement of the purchase price of the Smoothing Kit up to $10 on the same claim form, and submit Purchase Evidence with that form as well. To be eligible for a payment under Option A, a Claimant must submit to the Settlement Administrator:

     **a.**  A completed "Injury Claim Form – Benefit Option A" signed by the Settlement Class Member under penalty of perjury, in the form attached as Exhibit 3 to this Settlement Agreement;

     **b.**  A declaration signed by the Claimant under penalty of perjury that includes the date or approximate date that the Claimant used the Smoothing Kit, the cost or approximate cost of the Smoothing Kit, a description of the injuries suffered by the Claimant and the expenses incurred to redress those injuries; and

     **c.**  Supporting evidence that the Claimant purchased or otherwise received the Smoothing Kit, including a receipt, credit card statement, product packaging, supporting declarations, or other evidence acceptable to the Settlement Administrator.

     **4(B)(vi).**  <u>**Benefit Option B – Reimbursement of Expenses with Receipts**</u>. Settlement Class Members who suffered a Covered Injury, and incurred expenses to redress that injury for which they have proof in the form of receipts, may make a claim against the Injury Fund for the amount spent to redress the Covered Injury during the period after the date of use (including amounts spent for medical expenses). Verified reimbursement claims may be made under Benefit Option B for up to $800 per Claimant. Additional verified expenses in excess of $800 may be submitted for evaluation under Option C set forth below. Settlement Class Members who are submitting claims for a Covered Injury may also request reimbursement of the purchase price of the Smoothing Kit, for up to $10. To be eligible for a payment under Option B, a Claimant must submit to the Settlement Administrator:

        **a.**     A completed "Injury Claim Form – Benefit Option B" signed by the Claimant under penalty of perjury, in the form attached as Exhibit 4 to this Settlement Agreement;

        **b.**     A declaration signed by the Claimant under penalty of perjury that includes the date or approximate date that the Claimant used the Smoothing Kit, the cost or approximate cost of the Smoothing Kit, and a description of the injuries suffered by the Claimant; and

        **c.**     Proof that the Claimant purchased or otherwise received the Smoothing Kit, including a receipt, credit card statement, product packaging, supporting declarations, or other evidence acceptable to the Settlement Administrator**.**

        **d.**     Proof of expenses incurred to redress the injury, including receipts or other documentation (see, e.g. 4B(iii)) identifying all expenses for which the Claimant seeks reimbursement.

        **C.**     <u>**Injury Fund – Option C**</u>.  Settlement Class Members who have suffered significant Covered Injuries may make a claim against the Injury Fund to recover damages for those Covered Injuries, up to a maximum amount per Claimant of $25,000.  Claimants who have submitted Claims for reimbursement of expenses under Benefit Options A or B may also submit Claims for payment under Option C.   Expenses for Covered Injuries that exceed the amounts covered by Benefit Options A and B may be submitted for payment under Option C.

        **4(C)(i).**  The Parties have selected jointly, and therefore agree, subject to Court approval, to the appointment of the Hon. Nan R. Nolan (Ret.) of JAMS as Special Master to evaluate and make a final determination of claims submitted to the Injury Fund – Option C, and to review the Settlement Administrator's denial of claims made for Benefit Options A or B.

The Special Master shall determine amounts to be awarded to Claimants who submit claims under Option C, in accordance with the Guidelines attached to this Agreement as Exhibit 5, and shall transmit to the Settlement Administrator a list that includes the names of the Claimants, and records the amount of any awards to each Claimant for Benefit Option C.

**4(C)(ii).** Before the Special Master evaluates any claim, Unilever reserves the right to submit to the Special Master any additional factual material it possesses from the records maintained in the ordinary course of its business with respect to any Claimant. Any such submission shall be factual in nature, shall be made in writing, and shall be delivered to the Settlement Administrator with a copy to Class Counsel. Class Counsel may respond or assist the Class Member in responding to any such factual material. The Settlement Administrator shall not provide the Special Master with any supplemental factual material until the file is complete and the Claimant has had an opportunity to respond to any supplemental material provided by Unilever.

**4(C)(iii).** Payments resulting from any awards shall be made by the Settlement Administrator, subject to and in accordance with the provisions of Pars. 4(D) and 6 below.

**4(C)(iv).** To be eligible for a payment under the Injury Fund – Option C, a Claimant must submit the following to the Settlement Administrator, who will forward the information to the Special Master when it is complete:

**a.** A completed "Injury Claim Form – Option C" signed by the Claimant under penalty of perjury, in the form attached to this Settlement Agreement as Exhibit 6;

12

        **b.**     A declaration signed by the Claimant under penalty of perjury that includes the date or approximate date that the Claimant used the Smoothing Kit and a description of the injuries suffered by the Claimant;

        **c.**     Supporting evidence of the injuries suffered by the Claimant, such as photographs, videos, medical records, information provided to Unilever's consumer services line, and/or other evidence acceptable to the Special Master regarding the injury suffered at or near the time of the application of the Smoothing Kit; and

        **d.**     Supporting evidence that the Claimant purchased or otherwise received the Smoothing Kit, including a receipt, credit card statement, product packaging, supporting declarations, or other evidence acceptable to the Settlement Administrator.

     **4(D).**  **Reversion of Injury Fund.**  If the claims made by the Special Master against the Injury Fund collectively exceed the total amount of that Fund, then the Settlement Administrator shall distribute the funds *pro rata,* in accordance with a formula to be established by the Special Master and approved by the Court, so that the full proceeds of the Fund are paid to all Claimants who submitted valid claims to the Injury Fund.  If there are amounts remaining in the Injury Fund after the payment of all Determined Claims (defined to be all Option C claims that the Special Master has determined to be valid, together with all Option A and B claims that the Settlement Administrator has determined to be valid), then the remaining amounts (including any remaining amounts from the Reimbursement Fund that were added to the Injury Fund pursuant to Paragraph 4(A) (iii) of this Agreement) and any accumulated interest shall revert to Unilever.

5.     **Payments to Named Plaintiffs.**   Subject to approval by the Court, the parties agree that the Named Plaintiffs shall each receive an additional payment of $7,500, except Named Plaintiff Sidney Reid, who shall receive an additional payment of $10,000. These payments are incentive payments intended to compensate the putative class representatives for bringing the Smoothing Kit Lawsuits, and in consideration of the time and effort they expended in prosecuting these class actions.  The parties agree that the Named Plaintiffs may submit claims as Settlement Class Members under the terms and provisions of this Settlement Agreement and the award of an incentive payment for service as a putative class representative shall not in any way bar or limit their entitlement to seek recovery under this Settlement. Subject to Court approval, the incentive payments shall be paid by Unilever within five (5) days of the Effective Date.  Payments shall be made by check, payable to the Named Plaintiffs, and sent by first-class mail to Class Counsel.

6.     **Timing of Payments**.   No payments shall be made to any Settlement Class Member until after the Effective Date defined in Par. 23 below.   Payments from the Reimbursement Fund shall be made after the Effective Date, no later than ten days after all Claims have been received and approved for payment.  The Settlement Administrator shall determine appropriate payment on a pro rata basis if the number of claims paid in full would exceed the amount available in the Reimbursement Fund.  Payments from the Injury Fund shall not be made until the Settlement Administrator and the Special Master have determined the appropriate amount to pay for each valid claim, as specified above (the "Decision Date"), so that a determination can be made as to whether any amounts will need to be adjusted *pro rata*. Payments to Settlement Class Members shall be paid by check from the Settlement Accounts administered by the Settlement Administrator, and shall sent by first-class mail.  All checks

14

issued to Settlement Class Members on Claims submitted pursuant to this Agreement shall state that they must be cashed within 120 days from the date issued. The Settlement Administrator will make its best efforts to contact any Settlement Class Member who has not cashed a Claim check within 120 days from the date issued, or whose check has been returned as undeliverable, and will have the power to void, reissue and re-mail checks as appropriate. To the extent that any amount awarded and sent to a Settlement Class Member remains unclaimed after an additional 120 days from the date that the original check expired, the Settlement Administrator will report to the parties the name, address and amount of any such unpaid funds and the parties will jointly request that the Court order the appropriate disposition of those unclaimed funds.

7. **Preliminary Approval Order**. As set forth in Par. 2 above, within 10 days of the execution of this Settlement Agreement, the Parties shall jointly move the Court in the Reid Lawsuit for entry of an order (the "Preliminary Approval Order") not materially different from Exhibit 1 to this Agreement.

8. **Notice To The Settlement Class**. With the motion for preliminary approval, counsel for the Parties shall jointly submit to the Court a proposed form of notice and notice plan, identifying the Notice Provider who will be providing notice to the Settlement Class (the "Class Notice") and describing the plan for dissemination of the Class Notice ("Notice Plan"). The parties agree and expect that the Notice Plan will include the following, subject to the approval of the Court:

8(A). **Mailed and Electronic Mail Notice**. The Settlement Administrator shall provide notice by United States mail, first-class postage pre-paid, to the last known address for each Settlement Class Member whose name and address is in the database maintained by Unilever's consumer services group as a result of a call concerning the use of a Smoothing Kit,

15

and shall provide notice by electronic mail to each Settlement Class member whose email address is in the database maintained by Unilever's consumer services group as a result of a call concerning the use of a Smoothing Kit. The text of the Mailed and Electronic Mail Notice shall be approved by the Parties and submitted to the Court for advance review and approval.

        **8(B).**   **Website Notice**. Within three (3) business days after the Court approves the Notice Plan, Unilever will activate a link on the front page of the Suave website, for purposes of directing potential Settlement Class members to a website that shall be maintained by the Settlement Administrator (the "Class Website"), as described in Paragraph 11(B) below. Unilever will maintain that active link for the duration of the Claim Period as defined in Paragraph 13 below. The text of the Website Notice shall be approved by the Parties and submitted to the Court for review and approval prior to its publication. At the time of this posting, Unilever will remove any other references to the Smoothing Kit from its publicly accessible websites, and will include on the Suave website only a link to the Class Website.

        **8(C).**   **Publication Notice**. Notice will also be provided by advertisements in appropriate print and electronic media of national circulation, including reference to the URLs for the Class Website and the Website Notice, in accordance with the approved Notice Plan. The text of the Publication Notice shall be approved by the Parties and submitted to the Court for advance review and approval.

        **9.**     **Notice Period And Opt-Out Procedures**.

        **9(A).**   **Notice Date**. The Settlement Administrator will provide notice in accordance with the approved Notice Plan. The Notice Date shall be the first date the Website Notice appears through the Unilever link to the Class Website, in accordance with Par. 8(B) above.

**9(B).** **Notice Period and Final Approval Hearing**. The Notice Period shall be 100 days from the Notice Date. The Parties will request that the Court schedule a Final Approval Hearing no sooner than 30 days after the expiration of the Notice Period, following the submission of any responses by the Parties to any objections, in accordance with Par. 10 below. At the Final Approval Hearing, the Parties will request entry of a Final Approval Order substantially in the form of Exhibit 7 to this Agreement.

**9(C).** **Opt-Out Procedures.** Any potential member of the Settlement Class who wishes to be excluded from the Settlement and the Settlement Class may submit a written request to opt out of the Settlement Class. Any such request must be prepared in the manner directed in the Class Notice, must be postmarked no later than 100 days after the Notice Date, and must be mailed to the Settlement Administrator at the address specified in the Notice. Requests for exclusion must be exercised individually by a potential Settlement Class Member, not as or on behalf of a group, class or subclass, and must be signed by the Class Member. The Settlement Administrator shall promptly log each request for exclusion received and provide copies of the log and all requests for exclusion to Unilever and Class Counsel within five (5) business days of receiving the request for exclusion.

**9(D).** **Effect of Not Opting Out.** All potential Settlement Class Members who do not timely and properly exclude themselves from the Settlement Class shall be bound by this Settlement Agreement, and all their claims shall be dismissed with prejudice and released as provided for in this Agreement. The Named Plaintiffs shall not elect or seek to opt out or exclude themselves from the Settlement Class.

**10.** **Objections**. Settlement Class Members who do not submit a timely request for exclusion from the Settlement Class and who wish to object to the fairness, reasonableness, or

adequacy of this Agreement or the proposed settlement, including the award of attorneys' fees, may do so if they comply with the procedures set forth in this Settlement Agreement.

**10(A).** In order to be effective, any objection must be in writing, and must contain the following information (the "Written Notice of Objection"): (1) a heading referring to the Reid Lawsuit and identification of any litigation in which the Class Member is a named party; (2) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and if through counsel, information identifying that counsel by name, address, bar number, and telephone number; (3) a statement of the legal and factual bases for the objection; (4) a description of any and all evidence the objecting Settlement Class Members may offer at the Final Approval Hearing, including but not limited to the names and expected testimony of any witnesses, and copies of any exhibits; and 5) the signature of the Class Member.

**10(B).** Settlement Class Members who are represented by counsel must file an appearance and the Written Notice of Objection with the Clerk of the Court for the United States District Court for the Northern District of Illinois within 100 days after the Notice Date. These materials must also be served upon the Settlement Administrator by first class mail, postmarked no later than 100 days after the Notice Date.

**10(C).** Settlement Class Members who are not represented by counsel and wish to object shall serve their Written Notice of Objection upon the Settlement Administrator by first class mail, postmarked no later than 100 days after the Notice Date. The Settlement Administrator shall promptly provide copies to the Court and to counsel for the Parties.

**10(D).** The right to object to the proposed settlement must be exercised individually by a Settlement Class Member or his or her attorney, and not as a member of a

18

group, class or subclass. The objection must be signed by the Class Member and his or her counsel; an objection signed by counsel alone shall not be sufficient.

10(E). Failure to comply timely and fully with these procedures shall result in the invalidity and dismissal of any objection. Class Members who fail to file and serve timely written objections in accordance with this Settlement Agreement shall be deemed to have waived any objections, shall not be heard at the Final Approval Hearing, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement. Unilever and Class Counsel shall file any response to the objections with the Court no later than five (5) days before the Final Approval Hearing.

11. **Settlement Administration**. The parties have selected Dahl, Inc., an experienced Settlement Administrator, to perform the services described in this Settlement Agreement, subject to the approval of the Court. The Parties shall enter into an agreement with the Settlement Administrator regarding settlement administration. Among its other duties, the Settlement Administrator shall:

A. Mail notice of this Settlement Agreement to the state attorneys general and the United States Attorney General, in accordance with the Class Action Fairness Act, within ten days of the date on which this Settlement Agreement is filed with the Court in the Reid Lawsuit;

B. Maintain the Class Website for this settlement, which will include copies of the operative Class Action Complaints, this Settlement Agreement (including exhibits), the Class Notice, the Preliminary Approval Order, the Claim Form, the Final Approval Order, and other information as appropriate during the course of the administration of this settlement, as agreed by the Parties and ordered by the Court;

19

**C.** Provide Class Notice in accordance with the Notice Plan submitted by the parties and approved by the Court.

**D.** Maintain a toll-free VRU telephone system containing recorded answers to frequently asked questions, along with an option permitting callers to leave messages in a voicemail box and receive a return call from a live operator;

**E.** Respond, as necessary, to inquiries from Settlement Class Members and potential Settlement Class Members;

**F.** Receive and provide to counsel for the Parties, within five (5) business days of receipt, copies of all requests for exclusion from the Settlement Class;

**G.** At the request of counsel for the Parties, provide copies of Claim Forms and supporting materials submitted by Settlement Class Members;

**H.** Evaluate, and determine the validity of, Claims submitted to the Reimbursement Fund and Claims submitted to the Injury Fund for Benefit Options A and B;

**I.** Provide to the Special Master and counsel for the Parties, at their request, all forms and supporting materials submitted by Claimants for Benefit Option C.

**J.** Seasonably report to the Court and counsel for the Parties regarding the number of Claims submitted to the Settlement Administrator, the number of Claims determined by the Settlement Administrator to be valid, and the dollar amounts of such valid Claims;

**K.** At the request of the Parties, prepare and provide to the Court and counsel for the Parties a list or lists of all persons who timely request exclusion from the Settlement Class and any necessary affidavit or declaration of the Settlement Administrator concerning such list or lists;

**L.** Maintain the Settlement Funds safely and securely;

        **M.**     Make the payments to claimants as specified in this Settlement Agreement, including all necessary reporting and/or withholding as required under Medicare, Medicaid and similar programs;

        **N.**     Have the right to audit and test any of the Claims submitted, and any supporting factual material, and to obtain such additional information from the claimants as the Special Master may request.

        **12.**     **Special Master**. The Parties shall enter into an agreement with the Honorable Nan R. Nolan (Ret.) of JAMS, subject to the approval of the Court in the <u>Reid</u> Lawsuit, to perform the duties of the Special Master as described in Paragraph 4(C) of this Settlement Agreement.

        **13.**     **Claim Forms and Time Period.** Commencing with the Notice Date, Settlement Class Members shall have 220 days to submit their claims for the Benefits described above, using the forms set forth in the Exhibits to this Settlement Agreement. The claim forms set forth in Exhibits 2, 3, 4 and 6 to this Settlement Agreement (collectively, the "Claim Forms") shall be displayed on the Class Website maintained by the Settlement Administrator. Settlement Class Members may obtain the Claim Form online from the Class Website, or by calling a 1-800 telephone number maintained by the Settlement Administrator, or by writing to the Settlement Administrator. To be eligible to receive the relief described in this Settlement Agreement, a Settlement Class Member must submit his or her signed, completed Claim Form to the Settlement Administrator no later than two hundred and twenty (220) days after the Notice Date. That submission may occur in one of three ways: 1) by email in signed, PDF form, sent no later than the 220th day after the Notice Date, or 2) by U.S. postal delivery that is mailed and

postmarked no later than the 220th day after the Notice Date, or 3) by hand or courier delivery that is received by the Settlement Administrator no later than the 220th day after the Notice Date.

      14.   **Releases**.   The Parties agree as follows with respect to Releases from the Named Plaintiffs and members of the Settlement Class who do not exclude themselves from the Class:

      14(A). **Timing and Scope**.   As of the Effective Date of this Agreement, the Named Plaintiffs and all other members of the Settlement Class who do not exclude themselves from the Class fully and finally release and discharge the Released Parties of and from all Released Claims.

      14(B). **The Released Parties**.   The Released Parties shall include Unilever United States, Inc., Conopco, Inc., Unilever N.V., Unilever PLC, their successors, assigns, agents, employees, consultants, independent contractors, direct and indirect retailer customers and brokers, insurers, parents, subsidiaries or other corporate affiliates, together with Les Emballages Knowlton, Inc. and its successors, assigns, parents, subsidiaries or other corporate affiliates (collectively, the "Released Parties").

      14(C). **Released Claims**.   For purposes of this Settlement Agreement, "Released Claims" means any and all claims arising out of or in any manner related to any purchase or use of the Smoothing Kit by any Settlement Class Member, including any effects or consequences of said purchase or use, regardless of whether any such claim is known or unknown, asserted or as yet unasserted, and including but not limited to all claims that were or could have been raised in the Smoothing Kit Lawsuits.

      14(D). **No Further Right to Sue Released Parties for the Released Claims**. The Named Plaintiffs and other Settlement Class Members who have not been excluded from the Settlement Class expressly agree that they shall not now or hereafter initiate, maintain, or

assert against the Released Parties any causes of action, claims, rights or demands arising out of or related in any way to the Released Claims, whether based on federal, state, or local law, statute, ordinance, regulation, tort, contract, common law, or any other sources.

**14(E). <u>Confirmation of Release of Attorneys' Fees and Expenses</u>.** Without in any way limiting the scope of the Releases, they cover any and all claims for attorneys' fees, costs or disbursements incurred by Class Counsel or any other counsel representing the Named Plaintiffs or any member of the Settlement Class, in connection with or related in any manner to the Smoothing Kit Lawsuits, the settlement of the Smoothing Kit Lawsuits, the administration of such settlement and/or the Released Claims, except to the extent otherwise specified in the Agreement.

**14(F). <u>Release under All Applicable Statutes</u>.** As of the Effective Date of the Settlement, each Class Member hereby fully, finally and forever releases and surrenders any and all Released Claims against the Released Parties. The Named Plaintiffs, both individually and on behalf of the Settlement Class, expressly understand, have been advised, and have had the opportunity to consult with counsel regarding potentially applicable legal principles and codes, such as Section 1542 of the Civil Code of the State of California. In giving the Releases granted by this Settlement Agreement, the Named Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class also expressly waive all rights under Section 1542 of the Civil Code of the State of California, realizing and understand that Section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Named Plaintiffs and the Settlement Class Members hereby agree that they knowingly and voluntarily waive and relinquish the provisions of Section 1542 and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction which may apply, to the fullest extent permitted by law. The Named Plaintiffs and the Settlement Class hereby agree and acknowledge that this is an essential term of this Release. In connection with this Release, the Named Plaintiffs and the Settlement Class acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Named Plaintiffs and the Settlement Class in executing this Release fully, finally and forever to settle, resolve and release all of their Released Claims against the Released Parties.

      **14(G). Carve-Out from Release.** Nothing in this Release shall preclude: 1) any action to enforce the terms of this Settlement Agreement; or 2) any action to recover damages from a retailer for a Covered Injury incurred after the Notice Period if the retailer disregards Unilever's recall instructions and sells a Smoothing Kit after the Notice Period. Unilever represents that it has provided written notice of the recall to retailers and brokers that previously received the Smoothing Kit from Unilever.

      **14(H). <u>Release, Dismissal and Bar Order</u>**. Within 30 days of the Effective Date, Class Counsel shall file motions to dismiss with prejudice the Naiser and Wells Lawsuits. As part of the Final Order and Judgment, the parties shall seek an Order from this Court barring any and all pending or future claims or lawsuits by any and all Class Members who do not opt out against the Released Parties for Released Claims. Subject to Court approval, all members of the

Settlement Class who do not exclude themselves shall be bound by this Settlement Agreement, and all of their claims shall be dismissed with prejudice and released.

      15.    **Medicare/Medicaid Obligations.**   In the process of issuing checks to the Settlement Class Members for awards under Benefit Options B or C, the Settlement Administrator shall be responsible for compliance with any Medicare, Medicaid and state reporting and/or withholding requirements, and shall obtain appropriate guidance, assistance and indemnity, at Unilever's expense, from an experienced service provider who is acceptable to the parties, the Settlement Administrator and the Court, in order to identify and fulfill those requirements. Any Settlement Class Member who receives a payment for bodily injury under the terms of this Settlement Agreement shall be solely responsible for (a) all future medical care and costs associated in any way with the use of the Smoothing Kit; (b) any expense or consequences of any action by Medicare/Medicaid seeking payment of past, current, or future medical expenses for the Settlement Class Member due to use of the Smoothing Kit; and c) any and all adverse consequences if any payment made in accordance with this Settlement Agreement results in the loss of any right to any Social Security, Medicare/Medicaid or other benefits. In providing any payment to a Settlement Class Member from the Injury Fund for Options B or C, the Settlement Administrator shall provide a reminder letter stating 1) that the Settlement Class Member has the right to seek assistance from legal counsel of his/her choosing at his or her own expense, or directly from the Social Security Administration or other governmental agencies, regarding the impact any payment for bodily injury may have on that Settlement Class Member's current or future entitlement to Social Security or other government benefits; and 2) that the receipt of settlement funds may affect that Class Member's right to other governmental benefits, disability or pension benefits. The Settlement Administrator shall

be entitled to obtain, from each Settlement Class Member who is entitled to obtain a payment under Options B or C, all information necessary for compliance with any Medicare or Medicaid reporting and/or withholding requirements, including but not limited to the Claimant's date of birth, social security number, and an affidavit regarding Medicare or Medicaid eligibility.

16. **Administrative Costs and Expenses**. Unilever shall pay all reasonable costs associated with the implementation of the proposed settlement, including (a) the reasonable fees and costs incurred by the Settlement Administrator, (b) the reasonable fees and costs incurred by the Special Master, and (c) the reasonable cost of providing notice of the proposed settlement to the members of the Settlement Class in accordance with the Notice Plan approved by the Court, provided it imposes no greater requirements than set forth in Paragraph 8 above.

17. **Attorneys' Fees and Costs.** Unilever and Class Counsel reached agreement upon all substantive terms of this Settlement Agreement before discussing payment for attorneys' fees and costs. The Named Plaintiffs and Class Counsel do not condition their willingness to enter into, or perform under, this Agreement on any agreement or accord regarding the attorneys' fees or costs of Class Counsel. Unilever shall pay Class Counsel the amount of attorneys' fees and costs approved by the Court after the Court's consideration of a fee petition for the work performed on behalf of the Named Plaintiffs and Settlement Class. The fee petition shall seek attorney's fees for work performed by Plaintiffs' counsel in the Reid, Naiser and Wells actions. Counsel for the parties will meet and confer about the proposed fee petition before it is submitted to the Court.

18. **Dismissal of Naiser and Wells Lawsuits**. Within 10 days after the granting of Preliminary Approval of this Settlement, (a) the parties to the Naiser Lawsuit shall request that the Kentucky Court stay the Naiser Lawsuit, or dismiss it without prejudice, pending Final

26

Approval of this Settlement; (b) Named Plaintiffs Wells and Reny shall request that the California Court stay the Wells Lawsuit, or dismiss it without prejudice, pending Final Approval of the Settlement, and (c) the Parties shall submit this Settlement Agreement to the Court as the stipulation and agreement of Defendants to (1) agree to the tolling of the statute of limitation for all claims arising out of the purchase or use of the Smoothing Kit from the date in 2011 that the Smoothing Kit was first made available to the public up to and including the Execution Date, or, if the Settlement is not finally approved, until 30 days after Termination of the Settlement, and (2) the modification, for settlement purposes, of the putative class alleged in the Reid Lawsuit, in order to encompass a nationwide class.

19. **Reservation of Right Not to Be Bound**.   Unilever reserves the right not to be bound to this Settlement Agreement, at Unilever's option, if one of the following occurs:

A.     If any state Attorney General or the United States Attorney General objects in any material way.

B.     If one or more overlapping classes are certified in other cases at any time before a settlement in this case becomes final.

C.     If there are more than a specified number of opt-outs.   Unilever and counsel for Plaintiffs have reached a confidential agreement on that number, and jointly shall ask leave of Court to submit that information under seal simultaneously with this Settlement Agreement, and to maintain that information under seal thereafter; or

D.     If the Court or a reviewing court determines that it cannot approve the fairness of this settlement, or reverses or modifies it in any material respect.

20. **Final Judgment**. If none of the events described in Paragraph 19 occurs, and this Settlement Agreement (including any modification to this Settlement Agreement made with the

written consent of all Parties) is approved by the Court following the Final Approval Hearing scheduled by the Court, the Parties shall request that the Court enter the Order Granting Final Approval of Class Action Settlement and Final Judgment (the "Final Order and Judgment"), in substantially the form attached to this Agreement as Exhibit 7.

21.  **Execution of Documents**. The Parties to this Settlement Agreement shall execute all documents and perform all acts necessary and proper to effectuate its terms.  The execution of documents must take place prior to the date scheduled for the Final Approval Hearing.

22.  **Jurisdiction.** The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and the Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement terms reflected in this Settlement Agreement.

23.  **Effective Date.** The "Effective Date" of this Agreement shall be the date when each and all of the following conditions have occurred: (a) This Settlement Agreement has been fully executed by the Parties and their counsel; ( b) Orders have been entered by the Court granting preliminary approval of this Settlement Agreement and approving the Notice Plan and a Class Notice, as provided above; (c) The Website Notice has been duly posted as ordered by the Court and Notice Plan has been executed; (d) The Court has entered a Final Order and Judgment approving this Settlement Agreement, as provided above; and (e) The Final Order and Judgment is no longer subject to review by any court, and has not been reversed or modified in any material respect.

24.  **Communications With The Settlement Class.**  The Class Notice shall list the addresses, telephone numbers, e-mail addresses, websites, and other contact information of Class

Counsel and the Settlement Administrator. Other than as provided in this Settlement Agreement, communications with Settlement Class Members relating to the Action or this settlement, after preliminary certification of the class, shall be handled through Class Counsel and the Settlement Administrator; provided, however, that nothing in this Agreement shall be construed: (a) to prevent Unilever from communicating orally, electronically, or in writing with potential Settlement Class Members in the ordinary course of business on matters unrelated to the Smoothing Kit ( including confirmation that a Product is not the Smoothing Kit and/or is not the subject of the Smoothing Kit Lawsuits or the Settlement Agreement); or (b) to prevent Unilever from communicating with Settlement Class Members regarding the Smoothing Kit in direct response to a consumer call, email or post (in which case Unilever will only provide hair treatment or care advice to a consumer who used the Smoothing Kit, or direct a Settlement Class Member to the Settlement Administrator or the Class Website). Nothing in this Settlement Agreement precludes Class Counsel or Defendants from providing truthful and accurate public and private statements regarding the Smoothing Kit and this Settlement Agreement, including statements in response to inquiries made by other counsel or the media.

25.  **Resolution of Other Issues**. In the event that there are any developments in the effectuation and administration of this Agreement that are not addressed by the terms of this Agreement, then such matters shall be addressed as agreed upon by counsel for the Parties, and, failing agreement, as shall be ordered by the Court.

26.  **Entire Agreement**. This Settlement Agreement, together with the confidential agreement of the parties regarding the number of opt-outs that will trigger Unilever's reservation of the right not to be bound by this Settlement Agreement in accordance with Par. 19(D) above, constitutes the entire agreement between and among the Parties with respect to the settlement of

the Lawsuits. The Exhibits to this Settlement Agreement are an integral part of the Settlement and are hereby incorporated and made part of this Settlement Agreement. This Settlement Agreement supersedes all prior negotiations and agreements and may not be modified or amended except by a writing signed by Counsel for Unilever and by Class Counsel.

27. **Choice of Law**. This Settlement Agreement shall be governed by the law of the State of Illinois. The terms of the Settlement Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations resulting in the Settlement Agreement, both Parties have contributed substantially and materially to the preparation of the Settlement Agreement.

28. **Dispute Resolution.** Any dispute arising from or related in any way to this Settlement Agreement shall be resolved solely and exclusively before the United States District Court for the Northern District of Illinois.

29. **Execution in Counterparts.** This Settlement Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

30. **Notices and Dates**. With respect to dates, the parties agree that if the last day of any period mentioned in this Settlement falls on a weekend or legal holiday, that period shall include the next business day.

DATED:        February 7, 2014

**Counsel for Plaintiffs and the Putative Class**

By:_____
**Miller Law LLC**
115 S. LaSalle Street

30

Chicago, Illinois 60603
Telephone: (312) 332-3400
Facsimile: (312) 676-2676


By:_____
**Morgan & Morgan, P.C.**
28 W. 44th St., Suite 2001
New York, NY  10036
Telephone: (212) 564-1637
Facsimile: (212) 564-1807


By:_____
**Morgan & Morgan, P.A.**
One Tampa City Center
201 N. Franklin St., 7th Fl.
Tampa, FL 33602
Telephone: (813) 314-6484


By: _____
**Law Office of Jana Eisinger, PLLC**
11 West Prospect Avenue
Mount Vernon, New York 10550
Telephone: 914-418-4111
Facsimile: 914-455-0213
jeisinger@eisingerlawfirm.com


**Counsel for Unilever United States, Inc. and
Conopco, Inc.**

_____
Paula J. Morency
Sondra A. Hemeryck
Schiff Hardin LLP
233 S. Wacker Drive
Chicago, IL 60606
(312) 258-5549
]

Defendant Unilever United States, Inc.

By: _____

Title:_____

Defendant Conopco, Inc.

By: _____

Title: _____

33

Exhibit 1 – Preliminary Approval Order Form (per Par. 2)

Exhibit 2 - Reimbursement Claim Form (per Par. 4(A)(1))

Exhibit 3 - Injury Claim Form – Benefit Option A" (per Par. 4(B)(i)(a))

Exhibit 4 - Injury Claim Form – Benefit Option B (per Par. 4(B)(ii)(a))

Exhibit 5 – Guidelines (per Par. 4(C))

Exhibit 6 - Injury Claim Form – Option C (per Par. 4(C))

Exhibit 7 – Final Approval Order and Judgment (per Pars. 9(B) and 20)