UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIDNEY REID, ALISHA BARNETT, DAWN DAMROW and FRAN PENNEL, on Behalf of Themselves and all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., LEK, INC., and CONOPCO, INC. d/b/a UNILEVER HOME AND PERSONAL CARE USA,<br><br>Defendants. | 1:12-cv-06058<br><br>Judge Ruben Castillo |

## JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF AN AWARD OF ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION COSTS AND EXPENSES

We, Jana Eisinger and Christopher S. Polaszek declare under penalty of perjury as follows:

1. We make this Declaration in Support of Class Counsel's forthcoming Motion for an Award of Attorney's Fees, Reimbursement of Litigation Costs and Expenses (the "Motion") in connection with our service as Class Counsel in this case. We have personal knowledge of the facts stated in this Declaration and if called as a witness, we could and would testify competently to them.

2. We have investigated and successfully prosecuted this matter for more than two years against strong and experienced opposition and have been appointed by this Court to serve as Class Counsel for the Class in the above-captioned action.[1] (Dkt. #96, para. 9).

---

[1] Unilever was zealously represented in this matter (and the 2 other related actions) by the national law firm Schiff Hardin LLP, which spared no effort in the defense of their client in this matter.

3.  This is a complex class action where recovery was never guaranteed. Further, this matter was brought on a fully contingent basis. Indeed, compensation for the legal services rendered in this matter was wholly contingent on the successful prosecution and resolution of this matter, and was always at risk. As such, from the inception of this litigation, Class Counsel was aware that they might not recover any of their time, costs, or expenses incurred in connection with the prosecution of this litigation.

4.  Plaintiffs brought this class action to seek redress for themselves and all other Class Members who purchased and/or used the Suave Professionals Keratin Infusion 30-Day Smoothing Kit (the "Kit" or "Product"). (Dkt.#1). However, as detailed in prior submissions to the Court, in order to preserve and protect the interests of all class members nationwide, two additional cases (described below) were filed in other jurisdictions. Ultimately, a global settlement was reached that is designed to resolve all three cases filed by Class Counsel, and which provides certain and immediate recovery to Class Members.

5.  Specifically, a nationwide settlement class of all purchasers and users of the Kit has been granted preliminary approval by this Court (the "Settlement"). (Dkt. #96). The Settlement provides substantial recovery for Class Members and calls for the establishment of two funds totaling $10,250,000.00 to be allocated solely toward reimbursement and injury claims submitted by Class Members (collectively the "Settlement Fund"). Under the Settlement that has been preliminarily approved by this Court, Defendants agreed to separately pay the award of attorneys' fees and reimbursement of expenses ordered by this Court.

6. As such, the Attorneys' fees and litigation costs and expenses sought by Class Counsel *will not* be paid out of the fund of $10,250,000.00 established for the Settlement Class; these payments are required to be made by Defendant Unilever *in addition* to the funds specifically set aside for payment of Class members' claims. Therefore, the Class will receive the full benefit of the cash settlement achieved in this matter. Specifically, there will no reduction in any settlement proceeds paid to any Class Member as a result of any payment of attorney's fees, costs or expenses made by Defendant Unilever.

7. This Court shall hold a hearing to consider Final Approval of the Settlement on July 9, 2014. (Dkt. #96, para. 27).

8. This Declaration is therefore being filed within the timeframe for members of the Class to object or exercise their right to opt out of the Settlement and serves to notify the Class that Class Counsel intends to seek reimbursement of its reasonable litigation costs and expenses and an award of attorney's fees from Defendant Unilever not to exceed one-third of the Settlement Fund.

9. Class Counsel will supplement this Declaration to include the additional time and expenses incurred between now and the Final Approval Hearing. Plaintiffs request that the Court consider Class Counsel's request for attorneys' fees and reimbursement of costs and expenses at the Final Approval Hearing.[2]

---

[2] Class Counsel has met and conferred with Unilever's counsel regarding this Declaration, and will continue to negotiate with Unilever's counsel with respect to Class Counsel's request for reimbursement of reasonable litigation costs and expenses and a payment of attorneys' fees. Class Counsel anticipates reaching agreement on a briefing schedule, and will advise the Court in this regard and also on the progress of the Parties negotiations prior to the Final Approval Hearing on July 9, 2014..

## THE HISTORY OF THE LITIGATION

### The *Reid* Lawsuit

10. Plaintiff Sidney Reid and former named Plaintiff Angel Lake initially filed the instant lawsuit against Unilever United States, Inc. ("Unilever") on behalf of themselves and a putative nationwide class on August 1, 2012 and the matter was assigned to the Honorable Ruben Castillo (hereinafter, the "Court") (DE #1). The Complaint filed by Reid and Lake asserted claims against Unilever for breach of warranty, violation of consumer fraud and deceptive trade practices statutes, and unjust enrichment, all arising out of the manufacture, advertising and sale of the Product.

11. Prior to filing the Complaint, Plaintiffs' counsel comprehensively investigated the factual and legal basis for asserting the claims, including analysis of the Product and its chemical composition. Plaintiffs' counsel conferred with experts and reviewed and analyzed the legal precedents and numerous state laws to determine the appropriate claims. The Reid lawsuit was the first action brought anywhere in the country, by any firm, in conjunction with the sale, recall, or alleged harm caused by the Product.

12. On September 10, 2012, Defendants filed a Motion to Dismiss the Complaint. (Dkt. #23). Plaintiffs researched and vigorously opposed this motion, (Dkt. #34) and on November 8, 2012, Plaintiffs filed a Motion to Limit or Supervise Defendants' Communications with Absent Class Members. (Dkt. #30). Defendants opposed Plaintiffs' Motion to Limit Communications, (Dkt. #35), and Plaintiffs filed a Reply in Further Support of the Motion shortly thereafter. (Dkt.

#36). On February 22, 2013, Plaintiffs filed a Motion for Approval to Serve Discovery, which contained comprehensive proposed discovery requests. (Dkt. #41).

13. On August 7, 2013, the Court denied, in part, Unilever's Motion to Dismiss the Complaint and Motion to Limit or Supervise Defendant's Communications with Absent Class Members, and granted, in part, Plaintiffs' Motion for Approval to Serve Discovery. (Dkt. #52). Specifically, the Court: (a) denied Unilever's motion to dismiss claims for breach of warranty and consumer fraud to the extent those claims were grounded in an alleged failure to disclose or warn; (b) granted Unilever's motion to the extent the consumer fraud claims were based on the same alleged affirmative misrepresentations that formed the basis of claims asserting breach of warranty; (c) dismissed the Plaintiffs' claims alleging violations of the Illinois and Alabama deceptive trade practices acts; (d) dismissed the unjust enrichment claim of Plaintiff Lake but not of Plaintiff Reid; and (e) approved a majority of Plaintiffs' discovery requests. *Id.*

14. On August 13, 2013, Lake voluntarily dismissed her claims. (Dkt. #53). On September 23, 2013, Named Plaintiffs Reid, Barnett, Damrow and Pennell filed the First Amended Complaint. (Dkt. #60). The Amended Complaint added LEK, Inc., and Conopco, Inc. d/b/a Unilever Home and Personal Care USA ("Conopco" and collectively, the "Defendants") and replaced the previous proposed nationwide class with four proposed single-state classes consisting of all residents of Alabama, Illinois, Nevada and Wisconsin who purchased the Smoothing Kit. *Id.* In preparing the Amended Complaint, Plaintiffs' counsel

conducted further investigation into the manufacture, recall and marketing of the Product and as a result, added additional parties and causes of action. The Amended Complaint asserts claims for breach of warranty, violation of consumer fraud and deceptive trade practices statutes, negligence and/or gross negligence, strict liability and unjust enrichment. *Id.* Following the filing of the First Amended Complaint, Unilever filed a motion to dismiss for lack of jurisdiction, (Dkt. #70), and Defendants Unilever and Conopco filed Answers denying liability and raising a number of additional defenses. (Dkt. #73, 74).

### The *Naiser* Lawsuit

15. On February 22, 2013, Plaintiffs' counsel filed an action in the Jefferson Circuit Court of Kentucky against Unilever, Conopco and LEK, Inc. ("LEK") on behalf of Terri Naiser and Jonnie Phillips and a putative Kentucky class of purchasers of the Product (*Naiser et al. v. Unilever United States, Inc., et al.*, Case No. 13 CV 0395, hereinafter the "*Naiser* Lawsuit").

16. On March 14, 2013, without having served the initial complaint, Plaintiffs Naiser and Phillips filed a first amended complaint in the Jefferson Circuit Court. The first amended complaint asserts claims for breach of warranty, violation of the Kentucky Consumer Protection Act, negligence and/or gross negligence, strict liability and unjust enrichment, all arising out of the manufacture, advertising and sale of the Kit. On April 11, 2013, Unilever and Conopco removed the *Naiser* Lawsuit to the United States District Court for the Western District of Kentucky (the "Kentucky Court").

17. On April 18, 2013, Unilever and Conopco moved to dismiss the amended

complaint.

18. On May 13, 2013, Plaintiffs filed a comprehensive opposition to the then-pending motions to dismiss, which Unilever and Conopco then replied to on May 30, 2013.

19. On September 13, 2013, Plaintiffs sought leave to file a supplemental memorandum of law in further opposition to the motions to dismiss, which Defendants responded to on September 23, 2013.

20. On September 30, 2013, the court denied Defendants' motion to dismiss the first amended complaint. Following the court's denial of their motions to dismiss, defendants Unilever and Conopco filed answers to the first amended complaint denying liability and raising a number of additional defenses.

21. On November 20, 2013, the parties filed a Joint Motion to Stay Proceedings for Purposes of Mediation.

**The *Wells* Lawsuit**

22. On October 11, 2013, Named Plaintiffs Josephine Wells and Catherine Reny filed an initial complaint against Unilever, Conopco and LEK in the United States District Court for the Northern District of California (the "California Court"). The complaint proposed: (a) a multistate class of all persons within the United States who purchased the Smoothing Kit for personal or household use, other than those persons who reside in Alabama, Illinois, Kentucky, Nevada or Wisconsin; and (b) an alternative class of California residents.

23. The complaint in the *Wells* Lawsuit asserts claims for breach of warranty, violation of the Song-Beverly Consumer Warranty Act, violation of various state

consumer protection and deceptive advertising statutes, negligence and/or gross negligence, strict liability and unjust enrichment, all arising out of the manufacture, advertising and sale of the Kit. None of the Defendants in the *Wells* lawsuit have responded to the complaint in action. Rather, on November 26, 2013 (following the submission of a joint stay of proceedings for purposes of mediation), the court stayed the *Wells* lawsuit while the parties worked to negotiate a global settlement of all three federal lawsuits.

**EFFORTS OF CLASS COUNSEL – INVESTIGATION, DISCOVERY, AND SUCCESSFUL PROSECUTION OF THIS MATTER**

24. Class Counsel conducted a thorough and time-consuming legal and factual investigation of Plaintiffs' claims, which began well before the *Reid* lawsuit was filed.

25. In addition to testing and evaluating the chemical composition of the Kit, in consultation with our consultants and experts we: (i) propounded FOIA requests to investigate the ingredients of other similar hair care products and the reported adverse effects of these products; (ii) studied the use and impact of a formaldehyde releaser in the Kit; (iii) reviewed Unilever's corporate filings and numerous published scientific materials and journals; (iv) consulted with chemistry and medical experts to evaluate the impact of certain ingredients of the Kit on the scalp and human hair; (v) obtained publicly available information from the FDA and other sources regarding Unilever's decision to recall the Kit; (vi) spoke with more than 150 class members throughout the United States from whom we collected detailed information regarding the application, use and impact

of the Product on class members; and (vii) deposed a principal scientist employed by Unilever who was responsible for product research, development and testing.

26. On February 22, 2013, Plaintiffs sought permission from this Court to serve Defendant Unilever with 89 separate written discovery requests. (Dkt. #41). As referenced earlier, on August 7, 2013, the Court issued an order, which permitted Plaintiffs to serve Defendant Unilever with a majority of their discovery requests. (Dkt. #51). In response, Defendant Unilever produced thousands of pages of material, consisting of: extensive customer complaint call logs, spreadsheets, voice messages and call transcriptions, customer complaint forms, internal company material (including communications and correspondence) relating to the development of the product at issue, and scientific articles. The manner in which Defendant Unilever provided the material required an extensive and time-consuming review. For instance, the customer call logs contained some 10,000 entries in fine print, and many of the approximately 4600 voice recordings that were produced exceeded 10 minutes in length.

27. Plaintiffs met and conferred with Defendants repeatedly regarding the scope of Defendants' discovery and regarding Defendants' objections to the discovery that had been propounded.

28. Along the way, the parties vigorously negotiated a protocol, format, and electronic search terms related to the production of electronic discovery. The ESI protocol and Agreed Confidentiality Order were entered by this Court on October 2, 2013. (Dkt. #64). After the *Wells* court denied Unilever's motion to dismiss, Class Counsel also met and conferred with Defendants' counsel

regarding discovery in that Action, which had not been consolidated with the *Reid* lawsuit and was proceeding on a separate track.

29. On August 27, 2013, Unilever served Plaintiffs with both its first request for the production of documents and interrogatories. Plaintiffs responded to these requests, interviewed and collected responsive documents from class representatives, and met and conferred with Defendants' counsel regarding the scope of discovery to be produced by Plaintiffs.

**SETTLEMENT EFFORTS AND GLOBAL RESOLUTION OF THE LITIGATION**

30. A successful resolution of this matter was never guaranteed. The parties engaged in hard fought and arm's length settlement negotiations for over a year. The parties first participated in a mediation conference conducted by the Hon. Wayne R. Andersen (Ret.) on October 31, 2012 in Chicago under the auspice of JAMS. Prior to the first mediation session, a comprehensive mediation brief was prepared and submitted to Judge Andersen on behalf of the Plaintiffs. Unable to reach a mutually acceptable agreement at the initial mediation conference, the Parties continued their zealous prosecution and defense of the claims described above. While the *Reid* case continued, and as the *Naiser* and *Wells* lawsuits were filed and prosecuted, the parties also continued to work extensively with Judge Andersen in an attempt to reach a global resolution of the litigation.

31. From its inception, this litigation was vigorously contested and its outcome was by no means certain. After denying Unilever's motion to dismiss, this Court set a tight schedule for the completion of discovery and class certification briefing and Plaintiffs' counsel moved forward zealously to meet these deadlines. It

appeared to Plaintiffs' counsel by the fall of 2013 that settlement discussions had stalled. In order to move the case forward expeditiously because it appeared settlement negotiations would not be successful, Plaintiffs' counsel filed a motion opposing Unilever's request to extend an August 2013 date for a status conference. Plaintiffs' counsel reported to the Court the lack of success in resolving the cases. Discovery moved forward in earnest and we began to prepare for the class certification battle we believed would soon be approaching. Unilever continued to mount serious opposition to our cases. Indeed, immediately before the parties agreed to a second formal mediation session with Judge Andersen, Unilever filed several motions in the *Reid* case.

32. After nearly 18 months of hard-fought litigation in three federal courts, and multiple comprehensive negotiation sessions guided by Judge Andersen, the parties reconvened on November 22, 2013 in Chicago in order to mediate again with Judge Andersen. The mediation session, which began early in the morning, continued well into the evening. Ultimately, the parties reached an agreement in principle to settle all claims on a nationwide basis for $10.25 million.

33. Although the parties reached an agreement in principle on the monetary settlement on November 22, 2013, multiple follow-up sessions with Judge Andersen and extensive direct negotiations by the parties were necessary to finalize the Settlement that this Court has preliminarily approved. The parties intensely negotiated the selection of the Special Master and the scope of her authority, the selection of the Claims Administrator who would also serve as the notice provider, and the language of the Settlement Agreement, notice, and claim

forms. Specifically, even after the Settlement Agreement was prepared, the notice plan, the form of notices, and the claim forms remained vigorously disputed. The contents of these critical documents were contested and heavily negotiated until the day they were filed along with the Motion for Preliminary Approval.

34. After reviewing the Joint Motion for Preliminary Approval of Settlement (Dkt. #90), and holding a preliminary fairness hearing on February 12, 2014, this Court made a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms. (Dkt. #95). The Settlement provides significant relief to Class Members and requires Unilever to contribute more than $10 million for the establishment of two separate Settlement Funds, consisting of a "Reimbursement Fund" ($250,000.00) and an "Injury Fund" ($10,000,000.00). (Settlement, Par. 4.) Payments from those funds will provide significant and immediate relief to members of the Settlement Class. The Reimbursement Fund will be available to any member of the Settlement Class who purchased a Smoothing Kit, allowing a one-time refund of up to $10.00 for the past purchase of a Kit. The Injury Fund will provide relief to members of the Settlement Class who suffered bodily injury to his or her hair or scalp as a result of using the Smoothing Kit, defined as a "Covered Injury." People who suffered significant bodily injury to their hair or scalp will be eligible for awards of up to $25,000.00 per Claimant, as determined by the Special Master (former Magistrate Judge Nan R. Nolan (Ret.)). In terms of reimbursement of expenses related to their injuries, Class members who incurred expenses for hair treatment but no longer have receipts for their

expenditures are eligible to receive up to $40.00 per claimant for those expenses, under Benefit Option A, and Class members who incurred such expenses but do have receipts, such as hairdresser or medical bills, are eligible to receive up to $800.00 per claimant for their expenses, under Benefit Option B. Any funds that remain after all Reimbursement and Injury claims have been determined and paid by the Claims Administrator, are to revert to Unilever.

**THE NOTICE PLAN AND REACTION OF THE CLASS**

35. In order to provide adequate notice of the Settlement to the Class, the parties agreed to the retention of Dahl Administration, LLC ("Dahl"), a well-recognized class action administration and notice provider. Dahl assisted in developing the forms of notice and preparing a comprehensive notice plan designed to provide notice to the vast majority of the Class, whose members reside in all states and U.S. Territories. The Declaration of Jeff Dahl, the principal and founder of Dahl Administration, was previously filed as part of the motion for preliminary approval of the settlement. The Notice Plan was approved by this Court pursuant to this Court's order granting preliminary approval of the settlement. As provided by the Court's schedule, the Claims Administrator will submit a declaration to accompany the Motion for Final Approval, attesting to the actions taken to comply with the Notice Plan and the results of such notice.

36. To date, there have been no objections to the Settlement and 42 opt-out requests have been filed. All but two of the opt-out requests were made by clients of the law firm of Christiansen Davis, LLC (hereafter the "Davis Firm"). On April 29, 2014, after briefing and oral argument, the Court denied the Davis Firm's request

for relief from the current injunction prohibiting litigation against Defendants, and expedited review of her clients' submissions seeking to opt out of the Class Settlement. (Dkt. #105).

37. Since this Court granted preliminary approval of the Settlement, Class Counsel have engaged in extensive efforts to ensure that the Notice Plan was fully and appropriately implemented, and to assist as many Class members as possible in properly compiling and submitting their claims. Class Counsel also met with Judge Nolan and the individuals responsible for administering the Settlement to ensure that Class members' claims are promptly and properly administered and reviewed. The parties have also conducted weekly calls to discuss details relating to the Notice Plan and to receive updates regarding claim submissions.

38. To date, there have been in excess of two thousand claims that have been submitted, including more than 400 Injury claims. In addition, more than twelve thousand claim forms have been down-loaded from the settlement website. Class members have until September 25, 2014 to submit their claims; the claims period is not yet at the half-way mark. With their motion for Final Approval, Class Counsel will submit updated information regarding the number of objections, opt-outs and claims filed.

**ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

39. To date, the five law firms that have served as Plaintiffs' counsel in the three cases that comprise this Settlement have devoted more than 3500 hours to the prosecution of this matter for an aggregate lodestar approaching $2.0 million. Plaintiffs request that this Court award Class Counsel attorneys' fees up to

one-third of the $10.250 million Class Settlement Fund achieved for the benefit of the Class, which calculates to $3,416,632.50, an amount which represents a modest multiplier of approximately 1.70 of the aggregate lodestar incurred by Plaintiffs' counsel to achieve the total cash benefits available for the Class.[3]

40. Each law firm was requested by Class Counsel to submit detailed information indicating the work performed on the three lawsuits comprising this settlement, the amount of time spent, and the lodestar value of the efforts incurred during the course of these cases. Those detailed time and work entries are available for submission to the Court for review.

41. Class Counsel dedicated significant time and effort to prosecuting the three federal court cases that comprise this Settlement. Indeed, Class Counsel devoted approximately 3500 hours to successfully resolve this matter while at all times being at risk of no recovery. As outlined above, *see supra* paragraphs 24-29, among the tasks performed for the benefit of the Class, the stated hours were incurred for, among other things, investigating the claims against Defendants, speaking to reviewing and analyzing documents, preparing the complaints and amended complaints, conducting necessary legal research and briefing, engaging in mediation and extensive settlement negotiations, preparing all Settlement documents, and responding to the Davis Firm's motion.

42. Class Counsel also incurred reasonable and necessary out-of-pocket litigation costs and expenses in connection with the successful prosecution of the three

---

[3] Class Counsel continues to allocate significant time to the Settlement, and expect that it will be necessary that they continue to do so. Class Counsel intends to make a supplemental submission setting forth updated information regarding counsel's time and expenses in conjunction with its Motion for Final Approval.

separate lawsuits and issue and the global resolution of these matters. To date, these litigation costs and expenses total $29,829.66. Because additional necessary costs and expenses may be incurred prior to the Final Approval hearing, Class Counsel intends to submit a detailed expense report in conjunction with its Motion for Final Approval.

Pursuant to the laws of the United States and under the penalties of perjury, we declare the foregoing is true and this Joint Declaration is Executed this 14th day of May, 2014.

DATED: May 14, 2014

Respectfully submitted,

By: _____
Christopher S. Polaszek

**Morgan & Morgan, P.A.**
One Tampa City Center
201 N. Franklin St., 7th Fl.
Tampa, FL 33602
Telephone: (813) 314-6484

By: _____
Jana Eisinger

**Law Office of Jana Eisinger, PLLC**
11 West Prospect Avenue
Mount Vernon, New York 10550
Telephone: (914) 418-4111
Facsimile: (914) 455-0213

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Marvin A. Miller
Marvin A. Miller