IN THE UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| Sidney Reid, Alisha Barnett, Dawn Damrow And Fran Penell, On Behalf Of Themselves And All Others Similarly Situated,<br>    Plaintiffs,<br><br>V.<br><br>Unilever United States, Inc., LEK, Inc., And Conopco, Inc. D/B/A Unilever Home And Personal Care USA,<br>    Defendants | CASE NO. 12 CV 6058<br>HON. RUBEN CASTILLO |

**OBJECTIONS REGARDING PROPOSED SETTLEMENT**

To The Honorable District Judge:

Yolanda Loyd Reed, ("Objector"), files these Objections to the Proposed Settlement, Objections to Class Certification, Objections to Attorneys' Fees, Objections to Incentive Award, Notice of Intent to Appear, and Request to Speak at the Hearing, and would show as follows:

## I. Objector

Objector is a member of the settlement class, as shown by Objector's attached declaration. Objector's address, telephone number and signature is included in the attached declaration, which is incorporated herein by reference. Objector, through counsel, intends to appear at the hearing. Objector requests that Objector's counsel be allowed to appear at the final approval hearing to talk about these objections and to otherwise participate in the final approval hearing.

## II. Objections to Class Certification

Objector objects to class certification because the class representatives were not adequate.

Rule 23 and due process permit class certification only when the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23 (a)(4)(permitting certification "only if … the representative parties will fairly and adequately protect the interests of the class"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)("the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members"). The MANUAL FOR COMPLEX LITIGATION 4th explains that the requirement means that the class representative and Class Counsel must represent the interests of *all* members of the class, which includes their interests vis-à-vis each other:

1

> Divergent interests must be taken into account and fairly accommodated before the parties negotiate a final settlement. Consider whether the counsel who have negotiated the settlement have fairly represented the interests of *all* class members.

MANUAL FOR COMPLEX LITIGATION 4th § 21.612, p. 314 (emphasis added).

Rule 23(a)'s adequacy of representation requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26.

The MANUAL FOR COMPLEX LITIGATION also says that if significant differences in interests exist between different groups within the class, the certification must create subclasses, with separate representatives and class counsel for each subclass. MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272. The Supreme Court addressed the adequacy requirement in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), where it mandated separate class representatives *and counsel* for subgroups within the class, even in the settlement context:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency. In another asbestos class action, the Second Circuit spoke precisely to this point: "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." In re Joint Eastern and Southern Dist. Asbestos Litigation, 982 F.2d 721, 742-743 (1992), modified on reh'g sub nom. In re Findley, 993 F.2d 7 (1993).

*Amchem Prods., Inc. v. Windsor,* 521 U.S. at 742.

The Supreme Court reiterated this rule in *Ortiz*:

> [I]t is obvious after *Amchem* that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel. See *Amchem*, 521 U.S., at 627, 117 S.Ct. 2231 (class settlements must provide "structural assurance of fair and adequate representation for the diverse

2

> groups and individuals affected"); cf. 5 J. Moore, T. Chorvat, D. Feinberg, R. Marmer, & J. Solovy, Moore's Federal Practice § 23.25[5][e], p. 23-149 (3d ed. 1998) (an attorney who represents another class against the same defendant may not serve as class counsel). FN31
>
> FN31. ... In Amchem, we concentrated on the adequacy of named plaintiffs, but we recognized that the adequacy of representation enquiry is also concerned with the "competency and conflicts of class counsel." Id., at 626, n. 20, 117 S.Ct. 2231 ... ; see also 5 Moore's Federal Practice § 23.25[3][a] (adequacy of representation concerns named plaintiff and class counsel).

*Ortiz*, 527 U.S. at 856.

And if the underlying *litigation* class cannot be certified, then the class representatives cannot adequately represent the interests of a settlement class:

> The nationwide class plaintiffs thus entered negotiations in what the *Amchem* court describes as a "disarmed" state, unable to "use the threat of litigation to press for a better offer," *Amchem*, 521 U.S. at 621, 117 S.Ct. 2231-not a good position from which to represent the interests of parties that do wield such a threat.

*Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir.2004). The representative parties here were similarly disarmed and, therefore, could not adequately represent the interests of the class.

For several reasons the class representatives were not adequate, in violation of Rule 23 and due process.

### 1. The inherent conflict between class members with and without injuries

First, the class representatives were not adequate because there is a conflict of interest within the class. Just as there were two groups in *Amchem* and *Ortiz*, one group that had suffered personal injuries and one that had not, there are two distinct groups in the settlement class, one group that had suffered personal injuries and one that has not. First, there are class members who were injured, those who may collect from the settlement Injury Fund, (referred to herein as "the Injury subclass"). Second, there are class members who were not injured, those who may collect only from the settlement Reimbursement Fund (referred to herein as "the Reimbursement subclass"). The Reimbursement subclass seeks only a refund of the money they paid for the defective product. The primary interest of the Injury subclass, on the other hand, is to recover personal injury damages, because those damages are exponentially greater than their reimbursement claim damages.

Every class representative is a member of the Injury subclass, and none is a member of the Reimbursement subclass. Thus, the goal of the class representatives was to maximize the relief to the Injury subclass. But they faced a significant hurdle because it would be impossible to obtain certification of any class – national or single state – for those personal injury claims. Personal injury claims, with the need to prove individual causation and damages, may not be

3

brought in a class action. Thus, the named Plaintiffs needed something to offer to force a class settlement for their personal injury claims, and they found that in the Reimbursement subclass claims. By selling out those claims, they could obtain a class settlement of their personal injury claims. And that is exactly what they did.

The settlement itself further proves the conflict between the Reimbursement subclass and the Injury subclass. The settlement caps recovery of the Reimbursement subclass at $250,000, a mere 2% of the total recovery, with $10 million to the Injury subclass. Moreover, leftover monies in the Reimbursement Fund go to the Injury Fund, *but not vice versa*. It is clear that the class representatives were not adequate class representatives for the Reimbursement subclass.

### 2. Certification is not appropriate because the injury claims could not be certified in a litigation class

Second, the class representatives were not adequate because they could not certify a litigation class for personal injury damages. As the Seventh Circuit has held, if the underlying *litigation* class cannot be certified, then the class representatives cannot adequately represent the interests of a settlement class. *Smith v. Sprint Communications Co.*, 387 F.3d at 614. Here it is clear that the class representatives could not certify *any class*, be it national or for a single state, for their personal injury claims. Those claims require individual proof of both causation and damages. Thus, they lacked the threat to be adequate class representatives, which explains why they then included the Reimbursement subclass so as to use those claims to leverage the class settlement of the personal injury claims. In any event, their lack of ability to certify a litigation class for personal injury damages renders them inadequate class representatives.

### 3. Certification is not appropriate because the non-injury claims could not be certified in a national litigation class

Third, not only could the Plaintiffs not certify a litigation class for the personal injury claims, they could not certify a national class for the Reimbursement subclass claims. Separate class representatives must be appointed, even in a settlement class, when the laws of the states differ regarding the underlying claim. *Smith v. Sprint Communications Co.*, 387 F.3d at 614-15. The underlying claims here are based on state law. Courts have held that the law of the state where each class member resides and purchased the relevant product should apply, so separate representatives should have been appointed for class members from different states

Another Illinois district court provided a thorough and well-reasoned explanation for denying class certification to nationwide claims like the ones here. *In re General Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. 305, 315 (S.D. Ill. 2007). The Court there denied certification of the nationwide class due to the vast differences in states' laws:

> It appears that a large number of states in the proposed class, possibly a majority, hold that reliance is not an element of an express warranty claim. … However, it appears also that a significant number of other states in the proposed class require specific reliance on a seller's statements as a condition of recovery … Finally, it appears that a small minority of the states in the class, including Illinois, follow a

4

third approach to reliance, holding that a seller's affirmations and promises relating to goods create a rebuttable presumption of reliance by a buyer.

*Id.* at 319-320. Based on those differences, the court found that certification was not appropriate. *Id.*

Given the substantial differences between class members from different states in this case, the court should have appointed separate representatives for the varying groups with conflicting interests. MANUAL FOR COMPLEX LITIGATION 4th, §21.23, p. 272. In addition, since the class representatives could not certify a national class for the reimbursement claims, they were disarmed and were not adequate representatives of the class.

### 4. Settlement does not cure the problems

The adequacy requirement applies even in the settlement context. *Smith v. Sprint Communications Co.,* 387 F.3d at 614-15. As the Supreme Court has said, settlement is not a cure-all:

> [The] other specifications of [Rule 23]-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context.

*Amchem Prods., Inc. v. Windsor,* 521 U.S. at 620. These requirements include the requirement that the class representatives' claims be typical of those of the class and that the representatives will adequately protect the class's interests. FED. R. CIV. P. 23(a)(3), (4). Where there are significant differences among subgroups within the class, "the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *Amchem Prods., Inc. v. Windsor,* 521 U.S. at 627.

*Amchem* clearly stated that the fact that the parties are settling does not erase the need to have separate representatives for all the subgroups in the class:

> The settling parties, in sum, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. Although the named parties alleged a range of complaints, each served generally as representative for the whole, not for a separate constituency. In another asbestos class action, the Second Circuit spoke precisely to this point: "[W]here differences among members of a class are such that subclasses must be established, we know of no authority that permits a court to approve a settlement without creating subclasses on the basis of consents by members of a unitary class, some of whom happen to be members of the distinct subgroups. The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." *In re Joint Eastern*

5

*and Southern Dist. Asbestos Litigation*, 982 F.2d 721, 742-743 (1992), modified on reh'g sub nom. *In re Findley*, 993 F.2d 7 (1993).

*Id.* Similarly here, the substantial differences in the underlying claims "require that the members of each subgroup cannot be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups." The parties erred in failing to appoint separate representatives and counsel for subgroups based on state laws and based on whether they had a personal injury claim.

### III. Objections to the Settlement

A district court may approve a settlement only if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Settlements that take place prior to formal class certification, as was the case here, require a higher standard of fairness:

> Several circuits have held that settlement approval that takes place prior to formal class certification requires a higher standard of fairness. The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e). This is the position adopted by the Third Circuit in *GM Pick-Up Litig.,* 55 F.3d at 805 ("We affirm the need for courts to be even more scrupulous than usual in approving settlements where no class has yet been formally certified."); the Second Circuit in *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) ("district judges who decide to employ such a procedure are bound to scrutinize the fairness of the settlement agreement with even more than the usual care"); and the Seventh Circuit in *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust,* 834 F.2d 677, 681 (7th Cir.1987) ("*Simer* and *Weinberger* emphasize ... that when class certification is deferred, a more careful scrutiny of the fairness of the settlement is required. We agree...."). *See also Manual for Complex Litigation* § 30.45 (3rd. ed. 1995) ("Approval under Rule 23(e) of settlements involving settlement classes ... requires closer judicial scrutiny than approval of settlements where class certification has been litigated."). No circuit has held to the contrary. Because settlement class actions present unique due process concerns for absent class members, we agree with our sister circuits and adopt this standard as our own.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Third Circuit agrees:

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously." We have explained that this "heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."

*In re Pet Food Products Liability Litigation*, 629 F.3d 333, 350 (3rd Cir. 2010) (citations omitted).

The settlement is not fair, reasonable, or adequate, and Objector objects to the settlement, for the following reasons.

### A. There is inadequate compensation to Reimbursement subclass members

The class representatives could not achieve a class settlement for the injury claims alone. Thus, they were forced to use the Reimbursement subclass claims as the incentive to get the Defendants to settle the injury claims. But that was only an incentive if the Plaintiffs were willing to undervalue the Reimbursement subclass claims. The purpose of ensuring adequate representation is to insure that one subgroups' claims are not undervalued to benefit another subgroup. In this case, however, the lack of adequate representation for the Reimbursement subclass resulted in a settlement that understates the value of the Reimbursement subclass claims. Common sense provides that the class representatives, who had no viable class claim for injuries, could only induce the Defendants to settle the injury claims if they sold out the Reimbursement subclass claims. The lack of representation of the Reimbursement subclass, therefore, clearly resulted in inadequate compensation for the release of their claims.

The structure of the settlement and class representatives shows that $10 is insufficient.

### B. The amount of the requested incentive award is evidence that the settlement is not fair, reasonable, or adequate.

Just as the amount of the proposed attorneys' fees is an integral element in determining whether the settlement is fair, reasonable, and adequate, Manual For Complex Litigation 4th § 21.7, p. 335, so too is the amount of the incentive awards. The incentive award is also a good indication of whether the class representative has put his or her interests ahead of the interests of the class. In this case, the settlement provides incentive awards of $10,000 and $7500. Even at an excessive rate of $25 an hour that would mean the class representatives spent 400 or 300 hours on the case. There is no evidence to substantiate those excessive amounts. Instead, the excessive amount indicates that the class representatives accepted the settlement not based on whether it benefitted the class, but based on the windfall they would receive.

### C. The claims process violates due process

The claims process violates due process because it gives the power of final determination for claims to a third party:

> The Settlement Administrator identified in paragraph 4 of this Agreement shall have the full and final authority to determine the validity of any claims submitted against the Reimbursement Fund.

Settlement Agreement p. 7. Appointing a third party to make the final determination on claims, without any appeal right to the Court, would deny class members' due process rights. *Smith v. Sprint Communications Co.*, 387 F.3d 612, 614 (7th Cir.2004)(overturning a class action settlement that provided that law professors would make determinations regarding claims); *In re*

7

*Agent Orange Prod. Liab. Litig.,* 818 F.2d 179, 185 (2nd Cir.1987) (disallowing the administration of class funds by independent foundation without judicial oversight).

## IV. Objections to an Award of Attorneys' fees

Objector objects to Class Counsel's fee request, if one is filed, for the following reasons.

### A. No attorneys' fee should be awarded on amounts that revert to Defendant

The U.S. Supreme Court has distinguished between a "common fund" case and a "claims made" case, like this one:

> Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims. Thus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 481, n. 5 (1980). In a "claims made" case like this, Class Counsel's fees should be based on the benefits actually paid to class members. No fee should be awarded on amounts that Defendants never actually pay. Allowing Class Counsel to base their fees on hypothetical claims rather than actual benefits to class members leads to many "troubling consequences:"

> Under the terms of the settlement, the portion of the fund not claimed by class members and not paid to respondents in attorney's fees and expenses was to revert to petitioners. ... We had no occasion in *Boeing* [*Co. v. Van Gemert,* 444 U.S. 472 (1980)] to address whether there must at least be some rational connection between the fee award and the amount of the actual distribution to the class. The approval of attorney's fees absent any such inquiry could have several troubling consequences. Arrangements such as that at issue here decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery. They potentially undermine the underlying purposes of class actions by providing defendants with a powerful means to enticing class counsel to settle lawsuits in a manner detrimental to the class. And they could encourage the filing of needless lawsuits where, because the value of each class member's individual claim is small compared to the transaction costs in obtaining recovery, the actual distribution to the class will inevitably be minimal.

*International Precious Metals Corp. v. Waters*, 530 U.S. 1223 (2000)(Statement of Justice O'CONNOR respecting the denial of the petition for a writ of certiorari.). This settlement creates the same problems identified by Justice O'Connor, so the fee should be based on a reasonable percentage of the funds actually distributed to the class.

The Court should delay the decision on the fee request until the claim deadline. The Court should not award a fee that exceeds a reasonable percentage of the claims that will actually be paid to class members under the settlement.

### V. Objections to an Incentive Award

Incentive awards must not give special treatment to named Plaintiffs; they are intended solely to compensate them for the time and risk they incur in bringing a lawsuit on behalf of the class. Here there is no showing that the proposed incentive awards are even close to a reasonable compensation for the time and risk the Plaintiffs incurred. Thus, objector objects to the proposed incentive awards.

### VI. Prayer

Regarding the proposed class settlement, the Court is limited to a single decision: approve or disapprove the settlement. *Evans v. Jeff D.*, 475 U.S. 717, 726-727 (1986). The Court may not amend the settlement. *Id.* Thus, Objector prays that the Court disapprove the settlement and deny the motion to certify. If the Court nevertheless approves the settlement, Objector prays that the Court deny the requested fees to Class Counsel and the request for incentive awards. Objector further prays that the Court grant Objector such other and further relief as to which Objector may be entitled.

/s Todd Carcelli

Todd Carcelli
Todd D. Carcelli, Esq.
55 West Monroe
Suite 920
Chicago, IL 60603
Attorney #6244396

Jeffrey Weinstein, *subject to admission pro hac vice*
TX State Bar No. 21096450
WEINSTEIN LAW
518 East Tyler Street
Athens, TX 75751
903/677-5333
903/677-3657 – facsimile

**ATTORNEYS FOR OBJECTOR**

## Certificate of Service

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by electric mail by the Clerk of the Court via the CM/ECF system on May 28, 2014, plus the following:

Settlement Administrator at Smoothing Kit Objections
c/o Dahl Administration
P.O. Box 3614
Minneapolis, MN 55403-0614

/s Todd Carcelli
Todd Carcelli

**FOR NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| Sidney Reid, Alisha Barnett, Dawn Damrow And Fran Penell, On Behalf Of Themselves And All Others Similarly Situated,<br>    Plaintiffs,<br><br>V.<br><br>Unilever United States, Inc., LEK, Inc., And Conopco, Inc. D/B/A Unilever Home And Personal Care USA,<br>    Defendants | CASE NO. 12 CV 6058<br>HON. RUBEN CASTILLO |

## DECLARATION OF YOLANDA LOYD REED

1. My name is Yolanda Loyd Reed. I am capable of making this Declaration. The facts stated herein are within my personal knowledge and are true and correct.

2. I am an individual who purchased or used the Suave® Professionals Keratin Infusion 30-Day Smoothing Kit (the "Smoothing Kit") in the United States before February 17, 2014. I did not suffer any personal injury from the use of the Smoothing Kit.

3. I am not (a) a person who purchased the Smoothing Kit for resale (I purchased it for personal or household use), (b) a person who signed a release of any Defendant in exchange for consideration, (c) an officer, director or employee, or immediate family member of the officers, directors, or employees, of any Defendant or any entity in which a Defendant has a controlling interest, (d) a legal counsel or employee of legal counsel for any Defendant, or (e) any of the presiding judges in the Smoothing Kit Lawsuits or their immediate family members.

4. My address is 810 Ward, Athens, Texas 75751. My telephone number is 903-292-1497, but I request that any communications be made through my counsel.

5. I do not believe the proposed settlement is fair, reasonable, or adequate and I believe that approval of the settlement is not in the best interests of the class. My objections are set out in the Objections document to which this declaration is attached.

6. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 28th, 2014 in Athens, Texas.

_____
YOLANDA LOYD REED

11