**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (SBN 175650)
ron@consumersadvocates.com
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Tina Martin, Objector | |
| ----------------------------------------------- | |
| SIDNEY REID, ALISHA BARNETT, DAWN DAMROW and FRAN PENNEL, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs, v. UNILEVER UNITED STATES, INC., LEK, INC. and CONOPCO, INC. d/b/a UNILEVER HOME AND PERSONAL CARE, USA, Defendants. | 1:12-cv-06058 Judge Ruben Castillo |

**OBJECTION OF TINA MARTIN TO APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

II. PROCEDURAL HISTORY .................................................................... 3

III. THE PROPOSED SETTLEMENT AGREEMENT ............................................ 4

IV. OBJECTIONS TO FINAL APPROVAL OF THE SETTLEMENT ................... 4

    A.   The Settlement consideration is inadequate given the strength and value of Plaintiffs' claims. ........................................................................................ 4

         *1.  Reimbursement for the price of products purchased would be limited to a fraction of the total sales of the Product.......................................... 6*

         *2.  Reimbursement for efforts to repair damaged hair and for medical treatment would be limited.............................................................. 7*

         *3. The Settlement did not account for the likelihood of punitive damages. .. 8*

    B.   This Settlement is an inappropriate vehicle for the resolution of tort and personal injury claims. ........................................................................................ 8

    C.   The settlement does not provide injunctive relief. ................................. 11

         *1. No injunction against Defendants' continued use of corrosive thioglycolic acid in future hair products. ................................................................. 11*

         *2.  No requirement for Defendant to verify or enforce their recall of hazardous Product............................................................................... 11*

         *3.  No relief from coercive releases. ........................................... 12*

    D.   Fees are objectionable due to uncertainty and lack of information...................... 13

V. OTHER REQUIRED INFORMATION ................................................ 14

VI. CONCLUSION ...................................................................... 14

Class member Tina Martin, through her counsel of record ("Class Objector"), hereby files her objections to the proposed class action Settlement Agreement between Plaintiffs Sidney Reid, Alisha Barnett, Dawn Damrow, Fran Pennell, Terri Naiser, Jonnie Phillips, Josephine Wells and Catherine Reny (the "Named Plaintiffs" or "Plaintiffs") and Unilever United States, Inc., and Conopco, Inc. d/b/a Unilever Home and Personal Care USA (collectively, "Unilever" or "Defendants"), and request that the Court deny final approval.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

The proposed settlement cannot be approved. The allegations here are serious, asserting that defendants produced a product for use on the hair and scalp that had dangerous concentrations of a caustic chemical. The proposed Settlement herein purports to provide a total of $10,250,000 to fully settle and release claims of all persons who purchased and/or used the Suave Professionals Keratin Infusion 30-Day Smoothing Kit (the "Smoothing Kit" or "Product" hereinafter).

Class Objector opposes final approval of this settlement on the grounds that the settling parties have not and cannot establish that it is fair, reasonable, or adequate to the provisional settlement class. The settlement locks in all customers on all possible theories of liability and releases all claims, including individualized claims for personal injury resulting from the use of the product, for a fixed payment that is inadequate under any analysis.

First, the Settlement's relief is inadequate and inequitable given the strong bases for liability in this case. Plaintiffs, in their First Amended Complaint ("Reid FAC") alleged that Defendants failed to warn consumers that the Smoothing Kit contained dangerous levels of thioglycolic acid. "Thioglycolic acid is so corrosive, that if left on too long, it will inevitably continue to dissolve the bonds holding a strand of hair together until the strand is seemingly transformed into a jelly-like substance that can be easily wiped away." Reid FAC ¶1. The Product caused serious personal injuries to many members of the provisional class, including chemical burns and bald spots requiring costly remediation treatments.

1

Defendants claimed to have "recalled" the Smoothing Kit from retailers in May 2012, but Plaintiffs alleged that Defendants' did not make diligent efforts to enforce the recall or verify that stocks of Product had been returned or destroyed, with the result that Product continued to be sold, causing additional injuries to unsuspecting consumers.  Reid FAC at ¶42-49.

Plaintiffs also alleged that Defendants had pressured members of the putative class to sign unconscionable releases of claims without representation by counsel, resulting in the loss of substantial rights by putative class members.  Reid FAC at ¶3.

The relief proposed is inadequate to redress these serious allegations.

The settlement allots only $250,000 for "economic" claims founded on consumer and warranty law violations.  That is patently insufficient considering the potential degree of liability under typical consumer causes of action.  Plaintiffs have made no cogent explanation for why these claims are given so little value in the settlement.   In fact, state consumer and warranty laws provides for full restitution and damages, including exemplary damages.  If plaintiffs proved their allegations, the resulting award just for Californians would likely far exceed the amount offered here.

Even more inexplicable is the settlement's allocation of $10 million for personal injury claims, which presumptively cannot be certified even in a settlement class.  Plaintiffs did not make a showing that the defendants' assets would be insufficient to pay personal injury claims.  Nevertheless, the settling parties have essentially created a bogus limited fund, improperly capping Defendants' liability and imposing an arbitral forum with limited relief.  The settlement is thus unfair, inadequate, and works an unconstitutional denial of due process upon absent class members who will be bound by it.

This settlement is a boon for the defendant.   Though the case was brought to remedy consumer law violations, those claims are released for next to nothing.  Meanwhile, the settlement purports to cram the entire universe of potential personal injury cases against the defendant in a single $10 million payment.

//

//

2

## II.   PROCEDURAL HISTORY

This lawsuit involves claims for breach of warranty, violation of consumer fraud and deceptive trade practices statutes, negligence and/or gross negligence, strict liability and unjust enrichment brought by named plaintiffs Sidney Reid, Alisha Barnett, Dawn Damrow, Fran Pennell, Terri Naiser, Jonnie Phillips, Josephine Wells and Catherine Reny ("Plaintiffs").   The original complaint was filed by Reid in this court on Aug. 1, 2012. Reid was joined by Barnett, Damrow and Pennell in the *Reid* FAC filed Sept. 23, 2013. Defendants filed a motion to dismiss and then answered the *Reid* FAC on October 21, 2013.

Plaintiffs Naiser and Phillips filed Case No. 13-CI-00898 on February 22, 2013 and filed an FAC on March 14, 2013 in Jefferson Circuit Court (Kentucky); the case was removed by Defendants to the United States District Court for the Western District of Kentucky, No. 3:2013-cv-00395; Defendants' motion to dismiss was denied September 30, 2013, after which Defendants answered Naiser and Phillips' FAC**.**

Wells and Reny filed their complaint on October 11, 2013 in the United States District Court for the Northern District of California, No. 4:13-cv-04749.   No responsive pleadings were filed by Defendants, and the case was stayed pending global settlement negotiations.

About 16 weeks after Defendants filed their Answer to the *Reid* FAC, settlement negotiations resulted in a Motion for Preliminary Approval of the proposed Settlement, filed on February 7, 2014, which was granted by the Court on February 12, 2014.   The preliminary approval order set a deadline of May 28, 2014 to object to the Settlement.

Class counsel recently filed (on May 15, 2014) a Joint Declaration of Class Counsel in Support of an Award of Attorneys' Fees ("Declaration") which merely anticipates a future Petition for Attorneys' Fees but which indicates that counsel will request $3.4 million in attorney's fees and expenses.   Plaintiffs' Memorandum in support of their Fee Petition is to be filed no later than June 11, 2014; Defendants' Response is to be filed no later than June 27, 2014. The Final Approval Hearing is scheduled for July 9, 2014.

Class members will have until September 25, 2014 to submit their claims if the proposed Settlement is approved.

## III.  THE PROPOSED SETTLEMENT AGREEMENT

The proposed Settlement establishes a nationwide class of all persons who purchased or used the Smoothing Kit before February 17, 2014.   The Settlement would cause Defendants to fund a Reimbursement Fund of $250,000 and an Injury Fund of $10,000,000.  The Reimbursement Fund would be distributed to class members filing claims with or without proof of purchase, with payouts limited to $10.00 per claimant. *See* Settlement § 4(A) and §§ 4(A)(i-ii) at pp. 6-7.  If the claims made against the Reimbursement Fund exceed the total amount the Fund, the payments to each claimant will be reduced pro rata. *Id.* § 4(A)(iii) at pp. 7-8.

Claims by class members against the Injury Fund are proposed to be determined under three different administrative regimes:

> (1)  Claims without documentation are to be paid by the Settlement Administrator in amounts up to $40.00  under section 4(B)(v)(Benefit Option A – Reimbursement of Expenses Without Receipts at page 9);

> (2)   claims for reimbursement of out-of-pocket expenses with documentation up to $800.00 are also determined by the Administrator under section 4(B)(vi)(Benefit Option B – Reimbursement of Expenses with Receipts at p. 10); and

> (3)   claims for reimbursement and damages due to significant bodily injuries between $800.00 and $25,000.00 are to be determined by a Special Master, as described in sections 4(C)(i–iv)(Section C, Injury Fund – Option C at page 11), a process requiring substantial additional documentation.

Attorneys' fees and reimbursement of expenses for class counsel are to be paid by Defendants' separately and do not affect the amounts available to Class members in the Reimbursement and Injury Funds.  *See* Settlement ¶17 at p. 26.

## IV.  OBJECTIONS TO FINAL APPROVAL OF THE SETTLEMENT

**A.      The Settlement consideration is inadequate given the strength and value of Plaintiffs' claims.**

The Court's role in evaluating class action settlement is like that of a fiduciary with a high duty of care, to "exercise the highest degree of vigilance in scrutinizing proposed settlements . . . ." *Reynolds v. Beneficial Nat'l Bank,* 288 F.3d 277, 279-280 (7th Cir. 2002).

To approve a proposed class action settlement, the Court must find it is "fair, reasonable, and adequate." *Synfuel Techs., Inc. v.DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir., 2007), *citing* Fed. R. Civ. P. 23(e)(1)(C). Several well-recognized factors are used to evaluate a settlement agreement including "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." (7th Cir. 1996).

The court should "insist the parties present evidence that would enable possible outcomes to be estimated" so that the court can at least come up with a "ballpark valuation." *Reynolds,* 288 F.3d at 285.

The Seventh Circuit has made it absolutely clear that, of the factors set forth in *Isby,* the most important is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *In re General Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1132 (7th Cir. 1979)(*citing* the Manual for Complex Litigation § 1.46 at 56 (4th ed. 1977)). In *Synfuel,* the Seventh Circuit reversed approval of a class action settlement because the trial court uncritically accepted class counsel's contentions regarding the value of the settlement, even though those contentions were not supported by sufficient empirical data to make even a rough estimate of the settlement's value. *Synfuels,* 463 F.3d at 654. Moreover, the trial court did not articulate any rationale to support its conclusion that the level of compensation was fair. *Id.*

Here, this court is similarly faced with a lack of data to support Plaintiffs' conclusory contentions that the Settlements funding of $10,250,000 is fair consideration for the claims that the provisional Class will be giving up.

The allegations are serious, involving the inclusion of hair-removing chemical agents (corrosive depilatories) in cosmetic products intended for use on the human scalp. Plaintiffs'

awareness of the strength of their case for damages is demonstrated by the scope of the allegations set forth in the *Reid* FAC and by their inclusion therein of counts for Strict Liability and Gross Negligence, including demands for punitive damages. It appears from the record thus far that Plaintiffs' factual allegations are well-founded, so that the potential financial consequences to the Defendants include a considerable risk of substantial exemplary damages.

Nevertheless, the proposed Settlement establishes an inadequate $10 million "Injury Fund," while even modest levels of claims for refunds would exhaust the $250,000 Reimbursement Fund.

*1. Reimbursement for the price of products purchased would be limited to a fraction of the total sales of the Product.*

The proposed Notice Plan states that while the class size is indeterminate, approximately 225,000 units of Product were sold. Affidavit of Jeffrey D. Dahl, Dkt.#90-14, ¶11 at p. 4. However, Plaintiffs are aware that the Food and Drug Administration (FDA) has posted information on its website indicating that "381,288 kits in commerce nationwide . . . were recalled" around May 2012, that "[r]etailers were advised by Unilever to cease immediately distribution of the Product and were advised to send the Product back to Unilever," but that "some retailers continued to sell the Product after the recall." *Reid* FAC ¶¶43-45.

Therefore, tens of thousands of additional kits were likely to have been sold, even after the recall, some of them through outlets for discontinued merchandise such as Big Lots, as set forth herein.

The *Reid* FAC alleges that four different representative plaintiffs bought Product at prices ranging from $10 to as much as $20 per unit. ¶¶65-72. Therefore, each unit of Product presumably sold for <u>at least </u>$10 per unit, which would exhaust the $250,000 Reimbursement Fund if a mere 25,000 claims were filed, representing only 11.1% of the total units that Defendant is willing to admit were sold. However, because Defendants' 2012 recall of the Smoothing Kits has been ineffective in removing the Product from the market, as discussed herein, the numbers actually sold could be significantly more than 225,000 units, generating an even larger class of purchasers that would exhaust the Reimbursement Fund even sooner.

6

2.  *Reimbursement for efforts to repair damaged hair and for medical treatment would be limited.*

The Settlement proposes a $10,000,000 "Injury Fund."  Most class members would be limited to compensation of either up to $40 ("Option A," without receipts) or up to $800 ("Option B," with receipts).   Plaintiffs allege, however, the number of persons who experienced serious bodily injury to hair or scalp may be quite high.  Plaintiffs have thus far not presented sufficient data to resolve this issue.

In the absence of more precise empirical data regarding the magnitude of out-of-pocket remediation, it can be postulated that 20,000 persons (less than 10% of the likely size of the class, assuming one product purchased by each class member, subject to arguments herein that Defendants' retailers sold additional Product after the ineffective May 2012 "recall") would exhaust the proposed "Injury Fund" if their claims averaged a mere $500 each, while the settlement's structure anticipates that even "non-serious" injuries are anticipated to generate out-of-pocket expenses up to $800.00.  Three of the four representative plaintiffs in the *Reid* FAC allege that they each spent "hundreds of dollars" on remediation efforts. ¶¶69,71,73.

Regardless, it is likely that the Injury Fund would be rapidly depleted by Option A and Option B claims alone, even without invoking the much larger damages involved in the Option C claim, all of which will compete for the same $10 million fund.

The Settlement's proposed process for compensation of serious bodily injuries is unfair and should be modified or eliminated.  The Settlement subjects seriously injured victims to a cumbersome and arbitrary "Option C" process that is limited to payment of $25,000 per claim submitted, with claims determined by a Special Master, after submission of extensive evidence, with a limited and arbitrary right of administrative appeal.  Moreover, the Settlement Agreement releases all claims by class members and allows no further right to sue.  Settlement, § 14(C – D) at p. 20.

Preliminary anecdotal evidence indicates that "many [plaintiffs] have personal injuries for which the $25,000 limit is far too low."  *See* Absent Plaintiffs' Motion for Exedited Consideration of Opt-Out Requests and to Lift Injunction, Note 4. (Dkt. #100 at p. 7). Defendants' are therefore the primary beneficiaries of the option C process, which forces

7

severely injured plaintiffs to choose between two evils, either sacrificing much of the value of their claims under an onerous Option C process (and risking a pro-rata reduction below $25,000 if the limited Injury Fund is over-subscribed) or opting-out and submitting to the vagaries of time-consuming individual litigation.

*3. The Settlement did not account for the likelihood of punitive damages.*

The various complaints filed herein charged Defendant with counts of Negligence, Gross Negligence and requested punitive damages in their respective Prayers for Relief.

Absent complete exoneration, Defendant is liable for the serious bodily injuries sustained by class injuries, because it is indisputable that thioglycolic acid, a corrosive depilatory agent, was included in the Product at sufficiently high concentrations to cause severe hair loss and burns when used according to Defendants instructions. Moreover, Plaintiffs have alleged facts tending to prove that Defendant knowing and intentionally concealed the dangers of the Product and continued to sell the Product to class members, resulting in serious hair loss and scalp injuries. *See, e.g., Reid* FAC ¶49. If proven at trial, such reckless behavior by a defendant provides ample grounds for punitive damages.

In *Exxon Shipping Co. v. Baker* the Supreme Court set 1:1 as a reasonable ratio of punitive to compensatory damages. 128 S. Ct. 2605 (2008). Accordingly, the value of Plaintiffs' case could be doubled, and the amounts proposed to be provided by Defendants to pay claims are even more unreasonable in view of the likelihood that punitive damages would have been awarded at trial.

The overall undervaluing of the prospective Class' claims, along with Plaintiffs' failure to provide any survey data to estimate out-of-pocket remediation costs incurred by the prospective Class must be added to other evidence herein that Class counsel have provided inadequate representation, and that the settlement should not be approved.

**B.** **This Settlement is an inappropriate vehicle for the resolution of tort and personal injury claims.**

In *Ortiz v. Fibreboard Corp.,*

8

the Supreme Court emphasized that although settlement is relevant to class certification, the requirements of Rule 23 must still be satisfied. Thus, a district court may not abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes, for which (as this court has put it), the district court must act almost as a fiduciary of the class when approving settlements.

527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed. 2d 715 (1999); *UHL et al. v. Thoroughbred Technology and Telecommunications, Inc*. 309 F.3d 978 (7th Cir. 2002), *Reynolds,* 288 F.3d at 279-80.

Ordinarily, personal injury cases present too many individualized issues of law and fact for class treatment under Rule 23. There are invariably individual factual circumstances surrounding the use of the product leading to harm, and the types and degree of harms that result vary among individuals. Moreover, the variant state laws applicable to such a case normally preclude certification, for lack of commonality and superiority. See *In Re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("[S]tate laws about theories such as those presented by our plaintiffs differ, and such differences have led us to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes.").

One exception exists where the defendant faces claims that exceed an available "limited fund" such that the court must take jurisdiction over the fund to ensure its just distribution among claimants or to prevent inconsistent adjudications. *E.g., Simer v. Rios*, 661 F.2d 655, 668 n.24 (7th Cir. 1981)(noting "limited fund" theory). But the parties have neither argued nor established that this case falls within that exception.

It is no answer that resolving all potential claims in a single forum is convenient or efficient.

Differences across states may be costly for courts and litigants alike, but they are a fundamental aspect of our federal republic and must not be overridden in a quest to clear the queue in court. [*Citations omitted.*] Tempting as it is to alter doctrine in order to facilitate class treatment, judges must resist so that all parties' legal rights may be respected.

*In Re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1020-1021 (7th Cir. 2002) citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613,117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

9

There is no good explanation for presumptively capping total personal injury liability claims at $10 million, forcing individuals with personal injuries to opt out if they want to avoid the risk that their claim will be reduced by the claims of others. That is particularly true in this case, which relied upon publication notice rather than individualized notice. Here, it is very possible that individuals with severe, disfiguring injuries will lose their claims without ever actually being aware they were being adjudicated. Consequently, approval of this settlement is likely to foment difficult satellite litigation over whether its release of claims is actually validly obtained in compliance with due process. *Spano v. The Boeing Company*, 633 F.3d 574, 586-87 (7th Cir. 2011) (absent class members are not bound by the result where representation is conflicted or inadequate).

Here, Plaintiffs discuss certain discovery efforts prior to settlement negotiations; they do not, however, describe any evidence of Defendants' ability to pay personal injury claims. *See* Memo ISO Mot. Prelim. App. at p. 10 ( Dkt. #90). Plaintiffs dispose of the Rule 23(b)(3) superiority requirement in a conclusory manner that makes no mention of whether Defendants have the ability to pay more the $10 million in personal injury claims. *Id* at p. 16.

Similarly, class counsel's recent Joint Declaration in support of an anticipated petition for fees describes investigation and discovery without mentioning any inquiry whatsoever into the liquid assets, net worth or product liability insurance coverage of Defendants. *See* Jnt. Decl., ¶¶25-29 at pp. 8-10 ( Dkt.#106). The Joint Declaration also describes Plaintiffs' Motion for Approval to Serve Their First Request for Production of Documents (Dkt. #41), wherein Plaintiffs' sought to serve Defendant Unilever with 89 separate discovery requests. *Id* ¶26 at p. 9. A single request addressed Unilver's ability to pay claims:

"82. All insurance policies, indemnification agreements or hold harmless agreements that may provide coverage to You, or relating to coverage or defense/indemnity obligations that You may have, for any of the claims or causes of action asserted in this action, ...." Dkt. #41 at p. 19.

The Court's order of August 7, 2013, granted most of those requests, including Request No. 82. *See* Memorandum Opinion and Order (Dkt. #51) at p. 62. Even though Plaintiffs were

10

granted discovery regarding Unilever's claims reimbursement insurance, Plaintiffs either did not receive that information, or neglected to review it, or chose not to use it in their Motion for Preliminary Approval.

Moreover, there is no indication whatever that Plaintiffs inquired or made any effort to determine Defendants' liquidity or net worth in for the purpose of ascertaining whether defendant could pay more in a judgment. There is therefore no support for the assertion that $10 million is adequate compensation for the release of all claims against the defendants.

### C. The settlement does not provide injunctive relief.

The Proposed Order and Final Judgment includes no provisions for injunctive relief. *See* Settlement, Ex. 7. That alone would not preclude approval: the primary goal of the case is financial compensation. However, this case presents unique circumstances in which the omission of injunctive relief highlights the inadequacy of the relief offered.

*1. No injunction against Defendants' continued use of corrosive thioglycolic acid in future hair products.*

The Settlement fails to put a stop to Defendant's sales of hair treatments containing thioglycolic acid, a corrosive depilatory that is likely responsible for the scalp burns and permanent hair loss suffered by many members of the provisional Class.

Plaintiffs were well aware that Defendants had used thioglycolic acid and closely related hazardous chemicals in hair treatments, and that Defendants would likely do so again in the future. Plaintiffs obtained discovery pursuant to item 24 of their court- approved Request to Serve Discovery ( Dkt. No. 41) of: "[a]ll documents sufficient to identify all [Defendants'] products that contain thioglycolates, Ammonium Thioglycolate, Diammonium Dithiodiglycolate, Thioglycolic Acid, or their salts or esters[.]"

Notwithstanding Plaintiffs presumably obtaining this discovery, Class counsel failed to negotiate any provisions in the Settlement to prevent Defendants' continuing to use these corrosive depilatories in products designed for application to the human scalp.

*2. No requirement for Defendant to verify or enforce their recall of hazardous Product.*

11

Although the Settlement allows class members to sue retailers who do not remove the Product from their shelves, it does not order Defendants to exercise any due diligence in verifying that the Product is in fact taken out of the stream of commerce. Settlement ¶14(G).  In fact, Defendants' recall was <u>not</u> effective in removing Product from retailers' shelves as evidenced by facts alleged by individuals opting-out of the settlement, who were severely injured by Product purchased as late as 2014, well after Defendants' recall.  *See* Decl. of Lori Daniels, Ex. B of Absent Plaintiffs' Motion For Expedited Consideration Of Opt Out Requests And To Lift Injunction ("Mot. Exped. Consid.")(Ms. Daniels was injured by a Smoothing Kit on March 1 or 2, 2014, which had been purchased at a Big Lots store earlier in 2014.).

Plaintiffs' awareness of Defendants' mismanagement of their 2012 recall is demonstrated by explicit allegations, filed on Sept. 23, 2013, in the *Reid* FAC, *i.e.,* that "[t]he Product is still available despite Unilever's so-called May 2012 'recall' of the Product."  ¶1.  Disturbingly, the Settlement merely states that "Unilever represents that it has provided written notice of the recall to retailers and brokers that previously received the Smoothing Kit from Unilever."  Instead, Class counsel should have demanded an injunction requiring Defendants' to obtain certifications from retailers that they have returned or destroyed unused products.  This lack of meaningful enforcement of Defendants' purported recall weighs heavily against approval of the proposed Settlement.

   *3. No relief from coercive releases.*

The proposed Settlement provides no relief for class members who were coerced and/or fraudulently induced to sign unconscionable releases in return for inadequate consideration without representation of counsel.  The Settlement excludes any person who previously signed a release of claims for consideration, notwithstanding Defendant's misconduct committed in the course of obtaining those releases.

Plaintiffs have alleged that "[i]n its continuing efforts to conceal the dangers and serious harm attendant to use of the Product, Unilever has also engaged in a campaign designed to obtain unconscionable and unenforceable releases from consumers injured by use of the Product."

12

FAC, ¶ 3.  Nevertheless, the proposed Settlement unfairly preserves these "unconscionable and unenforceable releases."

In the course of the litigation, Plaintiffs failed in their efforts to obtain the Court's order to vacate settlement releases obtained by Unilever.  *See* Memorandum and Order, Dkt. #52, at pp. 45-56.  Therefore, Plaintiffs were aware, going into settlement negotiations with Defendants, of the injustice worked by these releases, yet failed to extract from Defendants' any relief for the persons who signed away valuable claims.

### D.  Fees are objectionable due to uncertainty and lack of information.

As discussed above, the proposed Settlement cannot be approved as written, for its intrinsic inadequacy.  Therefore, any claim for attorneys' fees is premature.  Nevertheless, even if the Settlement were approvable, there are substantial problems in class counsel's incipient bid for fees.  Class members are not provided with even basic information regarding the work done by Class Counsel in order to form an informed opinion or objection of whether the $3.4 million in fees are justified.

Plaintiffs' counsel has only recently filed (on May 15, 2014) a Joint Declaration of Class Counsel in Support of an Award of Attorney's Fees ("Declaration," Dkt. #106) which merely anticipates a future Petition for Attorneys' Fees.  Nevertheless, on May 23, 2014 the Court granted Plaintiffs' request to confirm that posting the Declaration on the Settlement website constitutes sufficient notice to class members who might object to it.

The Declaration states a lodestar of around $2.0 million and indicates that class counsel will petition for over $3.4 million in in total fees.  Declaration, ¶39 at pp. 14-15.  Class counsel have, to date, filed no detailed records in support of their billing. *Id*, ¶40 at p. 15.

These circumstances combine to deny class members information needed to evaluate the fairness of the attorneys' fees requested in this matter and attorneys' fees should not be awarded unless Objectors are given opportunity to review Class counsels detailed billings and respond. *See* Fed. R. Civ. P. 23(h); *see also In Re Mercury Interactive Corp,* No. 08-17372 (9th Cir. 2010) ("The plain text of the rule requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed.").

13

Plaintiffs' Memorandum in support of their Fee Petition is to be filed no later than June 11, 2014. Minute entry, May 23, 2014 (Dkt. #110). Accordingly, Objectors request leave to submit further analysis and argument regarding Class counsel's fee petition after Plaintiffs' Memorandum is filed.

## V. OTHER REQUIRED INFORMATION

Pursuant to paragraph 22 of the Court's February 12, 2014 Order Granting Preliminary Approval of Class Action Settlement, Objector is filing herewith a declaration that states full name, current address, and facts establishing her status as Class members. In Objector's and Objector's counsel's opinion, the Settlement is unfair, unreasonable, inadequate, and further requests unlawful relief, and should not be approved.

## VI. CONCLUSION

The overall value of the proposed Settlement is inadequate and unfair to the prospective class in view of the strength of Plaintiffs' case, the gravity of Defendants' conduct and the likelihood that punitive damages would be awarded had the lawsuit been litigated. The Reimbursement and Injury Funds provided for in the proposed Settlement are inadequate and likely to be quickly exhausted, resulting in inequitable pro-rata fractional payouts to provisional class members.

The proposed Settlement's lack of injunctive relief will permit Defendants to continue marketing similar products to consumers containing the same hazardous ingredients, fails to establish any means of verifying that Defendant has actually removed the hazardous Product from retail outlets, and fails to provide relief for persons improperly induced to sign unconscionable releases.

The size of the $10 million Injury Fund is not supported by evidence that Defendants' ability to pay is limited, and therefore violates absent class members Seventh Amendment and due process rights pursuant to the limited-fund doctrine. In fact, the proposed Settlement primarily benefits Defendants, who would resolve high-value claims at a discount, and Class counsel, who would attempt to justify rich fees thereby.

14

The settlement proposed by Plaintiffs is neither adequate, nor reasonable, nor fair to the provisional class. It should not be approved.

Dated: May 28, 2014                    Respectfully Submitted,

                                       /s *Ronald A. Marron*

                                       **LAW OFFICES OF RONALD A. MARRON**
                                       RONALD A. MARRON (CA Bar. #175650)
                                       ron@consumersadvocates.com
                                       651 Arroyo Drive
                                       San Diego, CA 92103
                                       Telephone: (619) 696-9006
                                       Facsimile:  (619) 564-6665

                                       ***Counsel for Objector Tina Martin***

15