AGS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SIDNEY REID, ALISHA BARNETT, <br> DAWN DAMROW and FRAN PENNEL, <br> on Behalf of Themselves and all Others <br> Similarly Situated, <br><br>      Plaintiffs, <br><br>      v. <br><br> UNILEVER UNITED STATES, INC., <br> LEK, INC., and CONOPCO, INC. d/b/a <br> UNILEVER HOME AND PERSONAL <br> CARE USA, <br><br>      Defendants. | No. 12 C 6058 <br><br> Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Sidney Reid, Alisha Barnett, Dawn Damrow, and Fran Pennel (collectively,

"Plaintiffs") brought this class action lawsuit against Defendants Unilever United States, Inc.

("Unilever"), LEK, Inc. ("LEK"), and Conopco, Inc. d/b/a Unilever Home and Personal Care

USA ("Conopco") (collectively, "Defendants") alleging violations of the Magnuson-Moss

Warranty Act (the "MMA"), 15 U.S.C. § 2301 *et. seq.*, the Illinois Consumer Fraud and

Deceptive Business Practices Act (the "ICFA"), 815 Ill. Comp. Stat. 505/1 *et. seq.*, and

substantially similar laws of Alabama, Wisconsin, and Nevada, as well as state common law

claims for breach of express warranty, breach of implied warranty, negligence and/or gross

negligence, strict liability, and unjust enrichment. (R. 60, Am. Compl.) The parties

subsequently agreed to a settlement, and the Court entered an order granting final approval of the

settlement shortly thereafter. (R. 143, Order.) Presently before the Court is Plaintiffs' motion

for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 23(h). (R. 121, Mot. Att'ys' Fees.) For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiff Sidney Reid, along with Angel Lake,[1] originally filed this lawsuit against Unilever on August 1, 2012. (R. 1, Compl.) The above-named Plaintiffs filed an amended seven-count class action complaint against Defendants on September 23, 2013. (R. 60, Am. Compl.) Plaintiffs alleged that a hair care product marketed and sold by Defendants, Suave® Professionals Keratin Infusion 30 Day Smoothing Kit (the "Treatment"), caused Class members hair loss and other injuries. (*Id.* ¶¶ 1-2.) In Count I of the amended complaint, Plaintiffs alleged that Unilever breached an express warranty by making false statements about the Treatment in advertisements and product packaging. (*Id.* ¶¶ 89-95.) In Count II, Plaintiffs alleged that Defendants breached an implied warranty by selling Plaintiffs a product that was not reasonably fit for the purposes for which it was used. (*Id.* ¶¶ 96-101.) In Count III, Plaintiffs alleged that Unilever violated the ICFA, and similar laws of other states, by using "unconscionable commercial practices, deception, fraud, false promise and misrepresentation in connection with the marketing of" the Treatment. (*Id.* ¶¶ 102-17.) In Count IV, Plaintiffs alleged that Unilever violated the MMA by breaching an express warranty that "the [Treatment] was of merchantable quality and fit for the ordinary purposes for which smoothing kits are used." (*Id.* ¶¶ 118-27.) In Count V, Plaintiffs alleged that Defendants were negligent and/or grossly negligent by failing to exercise due care in relation to the Treatment. (*Id.* ¶¶ 128-35.) In Count VI, Plaintiffs alleged that Defendants were strictly liable for the Treatment's adverse effects as "producers, manufacturers, marketers and/or distributors" of the Treatment. (*Id.* ¶¶ 136-44.) In Count VII,

---

[1] On August 13, 2013, the Court entered an order dismissing Angel Lake from the lawsuit pursuant to her notice of voluntary dismissal. (R. 54, Order.)

Plaintiffs alleged that Defendants were unjustly enriched "in retaining revenues derived from" Plaintiffs' purchases of the defective Treatment. (*Id.* ¶¶ 145-49.)

Unilever subsequently moved to dismiss Count III of the amended complaint for lack of jurisdiction and failure to state a claim. (R. 70, Defs.' Mot. to Dismiss.) On May 23, 2014, the Court denied Unilever's motion without prejudice as moot, because the Court had approved a preliminary settlement agreement submitted by the parties while the motion was pending. (R. 110, Min. Entry; R. 96, Order.)

After more than a year-and-a-half of negotiations, including extensive discussions and formal mediation sessions conducted by former United States District Judge Wayne Andersen, the parties reached a settlement agreement (the "Agreement") on February 7, 2014.[2] (R. 126, Pls.' Mem. at 49; R. 143, Ex. 1, Agreement at 11-12.) The Court entered an order granting final approval of the settlement on July 29, 2014. (R. 143, Order.) The settlement terms directed Unilever to "provide $10,250,000 to the Settlement Administrator for the establishment of two" settlement funds: a "Reimbursement Fund" of $250,000 and an "Injury Fund" of $10 million. (R. 143, Ex.1, Agreement at 16.) The Reimbursement Fund was established to satisfy the claims of members of the Settlement Class[3] (the "Class") who purchased the Treatment but "did not suffer bodily injury to his or her hair or scalp as a result of using the [Treatment]." (*Id.*) Those members were eligible to submit a claim against the Reimbursement Fund for a one-time payment of $10 per claimant. (*Id.* at 16-17.)

---

[2] The Agreement settled three putative class actions against Defendants in the United States District Court for the Northern District of Illinois, the United States District Court for the Western District of Kentucky, and the United States District Court for the Northern District of California. (R. 143, Ex. 1, Agreement at 11.)

[3] The Court certified the Settlement Class for purposes of the Agreement only, pursuant to Federal Rule of Civil Procedure 23(b)(3). (R. 143, Order at 3.)

The Injury Fund was established to satisfy the claims of members of the Class who "suffered bodily injury to his or her hair or scalp" as a result of using the Treatment. (*Id.* at 18.) Those members were eligible to submit a claim against the Injury Fund for "reimbursement of amounts spent to redress such injuries" under one of three options: Option A, Option B, or Option C. (*Id.*) Option A applied to claimants who did not have receipts for the expenses incurred in redressing their injuries; Option A claimants were eligible to receive up to $40 per claimant. (*Id.* at 19.) Option B applied to claimants who did have receipts for the expenses incurred in redressing their injuries; Option B claimants were eligible to receive up to $800 per claimant. (*Id.* at 20.) Finally, Option C applied to claimants who suffered "significant" injuries as a result of using the Treatment; Option C claimants were eligible to receive up to $25,000 per claimant. (*Id.* at 21.) The Agreement required all claims to be submitted by September 25, 2014, and provided that any amounts remaining in either Fund after that date would revert to Unilever. (*Id.* at 23, 31.) As of September 30, 2014, 5,076 class members had submitted claims against the two Funds. (R. 194, Pls.' Reply at 9.)

On June 11, 2014, Plaintiffs filed a motion for attorneys' fees and costs, (R. 121, Mot. Att'ys' Fees), and a supporting memorandum, (R. 126, Pls.' Mem.). Plaintiffs seek attorneys' fees in the amount of $3,416,632.50, and costs and expenses in the amount of $30,000.81. (R. 126, Pls.' Mem. at 58.) On August 8, 2014, Defendants filed a response to Plaintiffs' motion for attorneys' fees. (R. 147, Defs.' Resp.) Defendants request that the Court award fees and costs to Plaintiffs in an amount not exceeding $1.1 million. (*Id.* at 24.) Plaintiffs replied on August 25, 2014. (R. 159, Pls.' Reply.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(h) provides that, in addition to any judgment awarded, plaintiffs may recover reasonable attorneys' fees and nontaxable costs authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). The MMA contains a fee-shifting provision that authorizes the court to award attorneys' fees and costs to the prevailing party. 15 U.S.C. § 2310(d)(2).

To calculate an appropriate fee award, courts start with the "lodestar" amount, determined by "multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under this approach, the party seeking fees bears the burden of proving the reasonableness of the hours worked and rates claimed. *Hensley*, 461 U.S. at 437. A good faith effort must be made to exclude excessive, redundant, or unnecessary hours. *Id.* at 434. The court, for its part, must exclude hours it deems inadequately documented or not reasonably expended on the litigation. *Id.* at 433-34; *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). There is a "strong presumption" that the lodestar method yields a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011).

Once the lodestar amount has been determined, the court may adjust the award based on a number of factors, including "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856-57 (7th Cir. 2009); *see also Hensley*, 461 U.S. at 430 n.3 (listing "the novelty and difficulty of the questions" and "the skill requisite to perform the legal service properly" as two of the factors used in determining a fee award). "The standard

is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case."
*Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010) (quoting *Connolly v. Nat'l Sch. Bus
Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)). The court may increase the award by applying a
"multiplier" to the lodestar amount if satisfied that a multiplier is appropriate under the
circumstances. *See Harmon v. Lymphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991). When
making adjustments to the determined lodestar amount, a court must provide a "concise but clear
explanation of its reasons" for any adjustment. *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 409
(7th Cir. 1999) (citation omitted).

## ANALYSIS

Plaintiffs request an award of attorneys' fees in the amount of $3,416,632.50, and costs
and expenses in the amount of $36,069.52.[4] (R. 126, Pls.' Mem. at 58; R. 122, Mehdi Decl.; R.
154, Miller Decl.; R. 155, Eisinger Decl.; R. 156, Polaszek Decl.; R. 157, Getty Decl.)
Defendants request that the Court award fees to Plaintiffs in an amount not to exceed $1.1
million. (R. 147, Defs.' Resp. at 24.)

## I.     Local Rule 54.3

Local Rule 54.3 sets forth the procedures that must be followed in connection with fee
applications filed in this District. The rule imposes on counsel for the parties the obligation to
"confer and attempt in good faith to agree on the amount of fees or related nontaxable expenses
that should be awarded," and to exchange certain specified information. N.D. Ill. L.R. 54.3(d).
"[Local Rule 54.3] aims to promote amicable resolution by encouraging the parties to define
their areas of actual disagreement regarding fee awards." *Tenner v. Zurek*, 168 F.3d 328, 331

---

[4] Plaintiffs requested $30,000.81 in costs and expenses on June 11, 2014, (R. 126, Pls.' Mem. at
58), but updated the amount of costs and expenses requested in declarations submitted on August
22, 2014, (R. 154, Miller Decl.; R. 155, Eisinger Decl.; R. 156, Polaszek Decl.; R. 157, Getty
Decl.).

(7th Cir. 1998) (internal quotation marks omitted). If a compromise cannot be reached, the party seeking fees may file a motion, attaching a joint statement prepared by both parties. N.D. Ill. L.R. 54.3(e). The joint statement must specify the total amount of fees and related expenses sought, the total amount that the responding party believes should be awarded, and "a brief description of each specific dispute remaining between the parties as to the fees or expenses." *Id.* "[Local] Rule 54.3 was adopted by the district court as a means of reducing the time spent on fee disputes." *Sears, Roebuck & Co. v. Menard, Inc.*, No. 01 C 9843, 2004 WL 2423964, at *1 (N.D. Ill. Sept. 23, 2004). The rule compels the parties to focus on specifics, and should result in the presentation of "discrete objections to specific items in the fee petition that can be ruled upon with relative despatch." *Id.* However, "district courts have discretion in interpreting and applying their local rules." *Sonii v. Gen. Elec.*, No. 95 C 5370, 2003 WL 21541039, at *3 (N.D. Ill. June 11, 2003) (quoting *Tenner*, 168 F.3d at 331).

The parties in this case failed to reach a compromise on attorneys' fees. (*See* R. 143, Ex. 1, Agreement at 36.) The parties also failed to submit a joint statement as required by Local Rule 54.3(e), and instead submitted numerous scattered and imprecise briefs and declarations related to their remaining disputes as to fees and expenses. (*See* R. 126, Pls.' Mem.; R. 121-4, Ex. 4, Eisinger Decl.; R. 122, Mehdi Decl.; R. 123, Polaszek Decl.; R. 124, Getty Decl.; R. 125, Miller Decl.; R. 154, Miller Decl.; R. 155, Eisinger Decl.; R. 156, Polaszek Decl.; R. 157, Getty Decl.; R. 147, Defs.' Resp.; R. 148, Morency Decl.; R. 159, Pls.' Reply.)

Similarly, in *Sonii*, the parties failed to submit a joint statement in compliance with Local Rule 54.3(e), but "[b]ecause the parties [] sufficiently narrowed the areas of dispute through their briefs," the court considered the merits of both parties' claims. 2003 WL 21541039, at *3; *see also Angelilli v. Bd. of Educ. of the City of Chi.*, No. 00 C 1670, 2001 WL 708922, at *2 (N.D.

Ill. June 13, 2001) ("Although defendant did not adequately contribute to the joint statement, the present briefs of the parties adequately serve the purpose of setting forth the parties' disagreements."); *Perez v. Z. Frank Oldsmobile, Inc.*, No. 97 C 8950, 2000 WL 222632, at *1 (N.D. Ill. Feb. 18, 2000) (finding that in spite of the absence of a required joint statement of disputed issues, "[t]he response-reply approach by the parties [] sufficiently defined the dispute"). Here, despite the parties' failure to submit a joint statement as required by Local Rule 54.3(e), the parties' briefs and declarations are adequately detailed to define the remaining disputes—including specific rates, time entries, amounts claimed, and objections. (*See* R. 126, Pls.' Mem.; R. 121-4, Ex. 4, Eisinger Decl.; R. 122, Mehdi Decl.; R. 123, Polaszek Decl.; R. 124, Getty Decl.; R. 125, Miller Decl.; R. 154, Miller Decl.; R. 155, Eisinger Decl.; R. 156, Polaszek Decl.; R. 157, Getty Decl.; R. 147, Defs.' Resp.; R. 148, Morency Decl.; R. 159, Pls.' Reply.) Thus, the "response-reply approach" taken by the parties here has "sufficiently defined the dispute[.]" *Perez*, 2000 WL 222632, at *1. Accordingly, based on the parties' briefs and declarations, the Court proceeds to consider an appropriate fee award for Plaintiffs.

## II.    Whether the percentage-of-the-fund approach or the lodestar method applies

The Court first addresses the method of calculating attorneys' fees that should be applied in this case. Plaintiffs argue that the $10.25 million settlement amount created a "common fund" and that the Court should apply the "percentage-of-the-fund" approach in determining an appropriate fee award. (R. 126, Pls.' Mem. at 50.) Plaintiffs request an attorneys' fee award equal to one-third of the settlement fund, totaling $3,416,632.50. (*Id.* at 51-52.) Defendants argue that the Court should apply the lodestar method because the settlement fund does not constitute a common fund and thus common fund principles do not apply. (R. 147, Defs.' Resp. at 7-10.)

8

Two exceptions to the traditional rule that litigants must bear their own expenses authorize courts to award attorneys' fees in class action cases: (1) statutory fee-shifting and (2) the common fund doctrine. *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988). Statutory fee-shifting is authorized when a party brings an action under a statute containing a fee-shifting provision. *Id.* In that case, a prevailing plaintiff recovers attorneys' fees directly from the defendant. *Id.* In contrast, the common fund doctrine applies where an action "results in the creation of a common fund for the benefit of a plaintiff class." *Id.* (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-58 (1975)). There, the attorneys' fee award is taken from the fund itself, "thereby diminishing the sum ultimately retained by the plaintiff class." *Id.* Thus, common fund principles apply only if "the fee award . . . is ultimately charged against the plaintiffs' fund, rather than directly against the defendant." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564 (7th Cir. 1994).

In a statutory fee-shifting case, the court determines a reasonable amount of attorneys' fees by applying the lodestar method. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *see also Pickett*, 664 F.3d at 639. In a case where common fund principles apply, a district court may apply either the percentage approach or the lodestar method. *Florin*, 34 F.3d at 566.

Here, Plaintiffs brought a class action against Defendants under the MMA. (R. 60, Am. Compl. ¶¶ 118-27.) The MMA contains a fee-shifting provision providing that the court may allow the prevailing party to recover "a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff[.]" 15 U.S.C. § 2310(d)(2). To qualify as a "prevailing party" for the purposes of a federal fee-shifting statute, a plaintiff "must obtain at least some relief on the merits of his claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *see also Hensley,*

461 U.S. at 433 ("plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit" (citation omitted)). In this case, Plaintiffs achieved a settlement directing Defendants to pay $10.25 million for the benefit of the Class. (R. 143, Ex. 1, Agreement at 16.) Thus, Plaintiffs qualify as the "prevailing party" for purposes of the MMA fee-shifting provision.

The Seventh Circuit has determined that when an action is brought under a fee-shifting statute but settles with the creation of a fund for the benefit of the class, "the statute must control and the [common fund] doctrine must be deemed abrogated to the extent necessary to give full effect to the statute." *Florin*, 34 F.3d at 563 (quoting *Cnty. of Suffolk v. Long Island Lighting Co.*, 90 F.2d 1295, 1327 (2d Cir. 1990)). In *Skelton*, the parties settled an action brought under the MMA with the creation of a common fund. 860 F.2d at 251. The settlement agreement, however, provided that defendants were relieved from potential liability for statutory attorneys' fees and that class counsel could instead petition the court for an award of fees from the settlement fund. *Id.* The court therefore held that common fund principles controlled due to those provisions of the agreement, stating, "when a settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorney's fees, equitable fund principles must govern the court's award of attorney's fees." *Id.* at 256. Similarly, in *Florin*, the parties settled an action brought under ERISA, which contains a fee-shifting provision, by agreeing that defendants would create a settlement fund for the benefit of the class and that plaintiffs would seek attorneys' fees from that fund. 34 F.3d at 562. Citing *Skelton*, the court again held that common fund principles applied. *Id.* at 563-64.

10

In *Watson v. Sheahan* the district court distinguished *Skelton* and *Florin*. No. 94 C 6891, 1998 WL 708803, at *1 (N.D. Ill. Sept. 30, 1998). In that case, the parties to an action brought pursuant to 42 U.S.C. § 1983 settled with the creation of a settlement fund for the benefit of the plaintiff class. *Id*. The plaintiffs argued that because the parties' agreement created a settlement fund for the benefit of the class, common fund principles applied rather than the fee-shifting provision contained in the statute. *Id*. The court, however, disagreed with plaintiffs. The court distinguished *Skelton* and *Florin* by noting that in those cases, the settlement agreement specifically provided that the defendants were relieved from potential liability for statutory attorneys' fees and that class counsel would instead petition the court for a fee award from the common fund. *Id*. (citing *Florin*, 34 F.3d at 564; *Skelton*, 860 F.2d at 251). The parties in *Watson*, in contrast, had not agreed that defendants were relieved from liability for statutory attorneys' fees or that class counsel's fee award would come out of a common fund. *Id*. Therefore, the court held that the fee-shifting provision controlled. *Id*.; *see also O'Brien v. Panino's, Inc.*, No. 10 C 2991, 2011 WL 3610076, at *1 (N.D. Ill. Aug. 16, 2011) (holding that because *Florin* involved an agreement between the parties that the plaintiff would seek fees from a common fund, *Florin* had no application where the parties agreed that the defendants would pay fees directly).

Here, the terms of the settlement agreement directed Defendants to pay $10.25 million for the establishment of two settlement funds for the benefit of the Class. (R. 143, Ex. 1, Agreement at 16.) As to attorneys' fees and costs, the Agreement provides only that Unilever will pay the fees awarded by the Court for the "work performed" by class counsel. (*Id*. at 36.) The parties' subsequent briefs make it clear that the parties have agreed that Unilever will pay Plaintiffs' attorneys' fees directly and separately from the Fund. (R. 126, Pls.' Mem. at 49; R.

147, Defs.' Resp. at 8.) Specifically, Plaintiffs state that "any award of attorney's fees (and reimbursement of litigation costs and expenses) rendered by this Court will be paid by Unilever and is separate and distinct from the $10,250,000.00 Settlement funds created to compensate Class members for their claimed damages." (R. 126, Pls.' Mem. at 50.) Further, no provision of the Agreement or any assertion in the parties' briefs provides that Defendants are relieved from liability for statutory attorneys' fees or that Plaintiffs will petition the Court for a fee award from the Fund. Thus, like in *Watson*, the parties here did not agree to waive liability for attorney's fees under the fee-shifting statute and instead apply common fund principles. *See* 1998 WL 708803, at *1-*2. In fact, the Agreement and subsequent briefs indicate that the parties essentially agreed that the statutory fee-shifting provision contained in the MMA would control, and the Court will defer to their agreement.[5] Therefore, the Court will determine the appropriate amount of attorneys' fees pursuant to the parties' Agreement and the fee-shifting provision of the MMA. As stated above, in a statutory fee-shifting case common fund principles do not apply, and courts determine a reasonable amount of attorneys' fees by applying the lodestar method. *See City of Burlington*, 505 U.S. at 562.

Accordingly, the Court finds that the lodestar method applies to Plaintiffs' petition for attorneys' fees, and proceeds to consider an appropriate fee award for Plaintiffs.

## III.    Lodestar Amount

Determination of an appropriate award begins with the lodestar, which results from multiplying the number of hours expended by a reasonable hourly rate. *Small*, 264 F.3d at 707. As the party seeking the award of attorneys' fees, Plaintiffs bear the burden of establishing the

---

[5] Rule 23(h) provides that a court may award attorneys' fees that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Here, the Court's award of attorneys' fees is authorized both by the parties' Agreement and by the MMA. *See* 15 U.S.C. § 2310(d)(2).

reasonableness of the time expended and hourly rates charged by their attorneys. *See Hensley*, 461 U.S. at 437; *Spellan v. Bd. of Educ. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995).

Plaintiffs request an award of attorneys' fees in the amount of $3,416,632.60. (R. 126, Pls.' Mem. at 58.) Plaintiffs claim to have expended 4,072.05 hours litigating the action as of August 22, 2014, with a purported lodestar value of $2,251,396.50.[6] (R. 122, Mehdi Decl.; R. 154, Miller Decl.; R. 155, Eisinger Decl.; R. 156, Polaszek Decl.; R. 157, Getty Decl.) The Plaintiffs' purported lodestar value is calculated as follows:

| Firm | Attorney | Hourly Rate | Hours | Total per attorney |
|---|---|---|---|---|
| The Law Office of Jana Eisinger | Jana Eisinger (Principal) | $550 | 1,605 | $882,750 |
| Miller Law LLC | Marvin Miller (Attorney) | $815 | 46.80 | $38,142 |
| Miller Law LLC | Matthew Van Tine (Attorney) | $685 | 1 | $685 |
| Miller Law LLC | Lori Fanning (Attorney) | $600 | 61.30 | $36,780 |
| Miller Law LLC | Andrew Szot (Attorney) | $600 | 0.40 | $240 |
| Miller Law LLC | Anne Jewell (Paralegal) | $250 | 27.20 | $6,800 |
| Miller Law LLC | Jorge Ramirez (Law Clerk) | $220 | 58.10 | $12,782 |
| Miller Law LLC | Dena Robinson (Paralegal) | $250 | 2 | $500 |
| Morgan & Morgan, P.A. | Peter Safirstein (Partner) | $700 | 478.25 | $334,775 |
| Morgan & Morgan, P.A. | Chris Polaszek (Partner) | $650 | 1060.05 | $689,032.50 |
| Morgan & Morgan, P.A. | Elizabeth Metcalf (Attorney) | $400 | 149.50 | $59,800 |
| Morgan & Morgan, P.A. | Roger Sachar (Attorney) | $350 | 29.75 | $10,412.50 |

---

[6] Plaintiffs calculated the purported lodestar value of the hours spent litigating this action as $2,087,643.00 on June 11, 2014, (R. 126, Pls.' Mem. at 55), but updated the amount of hours expended in declarations submitted on August 22, 2014, (R. 154, Miller Decl.; R. 155, Eisinger Decl.; R. 156, Polaszek Decl.; R. 157, Getty Decl.).

| | | | | |
|---|---|---|---|---|
| Morgan & Morgan, P.A. | Sheila Feerick (Support Staff) | $275 | 272 | $74,800 |
| Morgan & Morgan, P.A. | David Sclafani (Support Staff) | $250 | 18.75 | $4,687.50 |
| Morgan & Morgan, P.A. | Jennifer Post (Support Staff) | $150 | 14.25 | $2,137.50 |
| The Getty Law Group, PLLC | Richard A. Getty (Principal) | $475 | 45 | $21,375 |
| The Getty Law Group, PLLC | Danielle H. Brown (Of Counsel) | $325 | 28.30 | $9,197.50 |
| The Getty Law Group, PLLC | Danielle H. Brown (Of Counsel) | $375 | 48.50 | $18,187.50 |
| The Getty Law Group, PLLC | Kristopher D. Collman (Associate) | $230 | 16.20 | $3,726 |
| The Getty Law Group, PLLC | Matthew W. English (Associate) | $240 | 2.60 | $624 |
| The Getty Law Group, PLLC | Matthew W. English (Associate) | $275 | 3.50 | $962.50 |
| The Getty Law Group, PLLC | Evan M. Rice (Law Clerk) | $175 | 1.50 | $262.50 |
| The Getty Law Group, PLLC | Ann M. Stith (Paralegal) | $150 | 35.60 | $5,340 |
| The Mehdi Firm, PC | Azra Z. Mehdi (Principal) | $775 | 41.25 | $31,968.75 |
| The Mehdi Firm, PC | Gabriela Hamilton (Paralegal) | $215 | 25.25 | $5,428.75 |
| | | **TOTALS** | 4,072.05 | $2,251,396.50 |

(R. 122, Mehdi Decl.; R. 154, Miller Decl.; R. 155, Eisinger Decl., R. 156, Polaszek Decl.; R. 157, Getty Decl.)

A.    **Whether Plaintiffs' attorneys' hours were reasonably expended**

The Court first addresses the hours Plaintiffs' attorneys "reasonably expended" litigating this case. *See Hensley*, 461 U.S. at 434. The Supreme Court has directed that "[c]ounsel for the

prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* Accordingly, if the prevailing party fails to exercise the proper billing judgment, the court should exclude from the fee calculation "hours that were not 'reasonably expended.'" *Id.* (citation omitted).

Here, Defendants challenge several aspects of Plaintiffs' counsel time entries, raising the following issues: (1) whether certain redacted time entries are compensable; (2) whether hours expended communicating with the media are compensable; (3) whether certain time expended by Plaintiffs' counsel is clerical in nature, or otherwise unrecoverable; (4) whether certain time expended by Plaintiffs' counsel is excessive, redundant, or otherwise unnecessary; and (5) whether the time Plaintiffs' counsel spent preparing a motion to limit or supervise Unilever's communications with absent class members is compensable. (R. 147, Defs.' Resp. at 11-16; R. 148, Morency Decl. at 6-11.) The Court will address each of Defendants' arguments in turn.

### 1.    Whether certain redacted time entries are compensable

Defendants first argue that 484 time entries contained in Plaintiffs' records are so redacted that Plaintiffs fail to meet their burden of justifying their reasonableness. (R. 147, Defs.' Resp. at 11.) Defendants highlighted these entries in blue in the records submitted to the Court. (R. 148-1, Ex. A, Pls.' Time Records.) The time entries highlighted in blue represent a total of 957.15 hours with a purported value of $496,357.50. (R. 147, Defs.' Resp. at 11.) Plaintiffs contend that these entries should be considered by the Court because Unilever's counsel has produced some time records that are similarly redacted. (R. 159, Pls.' Reply at 15.)

Where attorneys' time entries are so redacted that it is "difficult if not impossible" for a court to sufficiently evaluate the services rendered and fees charged, and results in "the exclusion

of basic material information which undermines the integrity of the entire petition," the court may disallow those entries. *Vitug v. Multistate Tax Comm'n*, 883 F. Supp. 215, 223-24 (N.D. Ill. 1995); *see also Rynd v. Nat'l Mut. Fire Ins. Co.*, No. 8:09-CV-1556-T-27TGW, 2012 WL 939387, at *11-*13 (M.D. Fla. Jan. 25, 2012) (subtracting time entries from attorney's fee award because they were so heavily redacted that their activities could not be discerned); *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009) ("Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended."). Further, "when a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000). In short, the relevant inquiry is whether the time entries are "sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation." *Gibson v. City of Chi.*, 873 F. Supp. 2d 975, 986 (N.D. Ill. 2012) (Castillo, J.) (quoting *Crispin R., Jr. v. Bd. of Educ. of the City of Chi., Dist. 299*, No. 09-CV-3993, 2010 WL 3701328, at *6 (N.D. Ill. Sept. 10, 2010)); *see also Tomazzoli v. Sheedy*, 804 F.2d 93, 97-98 (7th Cir. 1986) (affirming district court's fee reduction where records referred to "research" without stating what was researched); *Warfield v. City of Chi.*, 733 F. Supp. 2d 950, 959 (N.D. Ill. 2010) (Castillo, J.) (deducting hours where the attorneys' "entries simply reflect[ed] hours billed for 'trial' or unidentified 'witness prep'").

The Court has thoroughly reviewed the disputed time entries highlighted in blue on Plaintiffs' records, and concludes that because they are in their entirety so redacted, the Court cannot determine whether the hours expended were reasonable and necessary to the conduct of

16

the litigation. Further, Plaintiffs have not provided the Court with un-redacted entries and thus the redacted entries are all that is available for the Court to review. The entries identify only tasks such as "email," "factual investigation," "calls," and "research," without identifying the subject or content of the activity. (*See* R. 148-1, Ex. A, Pls.' Time Records.)

Plaintiffs contend that many of Defendants' time entries for hours expended on this case are similarly redacted, and thus Plaintiffs' redacted time entries should be permitted. (R. 159, Pls.' Reply at 15.) To support this assertion, Plaintiffs submitted certain of Defendants' time entries to the Court. (R. 159-5, Ex. E, Defs.' Time Records.) The Court has reviewed these entries, and the vast majority of them are completely un-redacted. (*Id.*) In fact, only five of Defendants' entries are so redacted that the Court cannot determine whether the hours expended were reasonable. (*Id.* at 8-10, 13-14.) The remainder of Defendants' records sufficiently identifies the subject and content of the billed work. (*Id.*)

Accordingly, the Court strikes the entirety of the blue-highlighted redacted time entries. (R. 148-1, Ex. A, Pls.' Time Records.) This results in the following reductions: a 641.75-hour reduction of Eisinger's time; a 4.10-hour reduction of Miller's time; a 2.40-hour reduction of Fanning's time; an 8.25-hour reduction of Safirstein's time; a 113-hour reduction of Polaszek's time; a 37-hour reduction of Metcalf's time; a 9.75-hour reduction of Sachar's time; an 88-hour reduction of Feerick's time; a 1-hour reduction of Sclafani's time; a 13.70-hour reduction of Getty's time; an 11.60-hour reduction of Brown's time; a 15.20-hour reduction of Collman's time; a 0.50-hour reduction of English's time; a 1.50-hour reduction of Rice's time; a 7.90-hour reduction of Stith's time; and a 1.50-hour reduction of Mehdi's time. (*Id.*) Thus, the Court strikes a total of 957.15 hours.

## 2. Whether hours expended communicating with the media are compensable

Defendants next argue that 28 time entries in Plaintiffs' records related to media communications should be subtracted from the total hours expended because time spent communicating with the media is not compensable. (R. 147, Defs.' Resp. at 12.) Defendants highlighted these entries in yellow in the records submitted to the Court. (R. 148-1, Ex. A, Pls.' Time Records.) The time entries highlighted in yellow represent a total of 49.75 hours with a purported value of $22,287.50. (R. 147, Defs.' Resp. at 12.) Plaintiffs do not specifically respond to this argument in their reply brief.

Courts in this District have held that attorneys are not entitled to a fee award for time spent communicating with the media. *See Wells v. City of Chi.*, 925 F. Supp. 2d 1036, 1046 (N.D. Ill. 2013) (finding that hours spent in connection with media appearance are not compensable); *Gilfand v. Planey*, No. 07 C 2566, 2012 WL 5845530, at *14 (N.D. Ill. Nov. 19, 2012) (striking hours spent on telephone calls with the media); *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1021-22 (N.D. Ill. 2009) (concluding that hours spent on out-of-court activities such as media efforts are non-compensable).

The Court has carefully reviewed the disputed time entries highlighted in yellow on Plaintiffs' records, and finds that each entry relates to media communications. (R. 148-1, Ex. A, Pls.' Time Records at 8, 22-24, 30-31, 57, 60, 78-79, 81, 129-30.) The entries include descriptions such as "Finalizing press release and releasing," "answering calls/emails from press release," and "calls and emails with [redacted] re: . . . inquiries from Inside Edition and GMA[.]" (*Id.* at 78-79, 130.) Accordingly, the Court strikes the entirety of the yellow-highlighted time entries related to media communications. This results in a 19-hour reduction of Eisinger's time; a 2-hour reduction of Safirstein's time; a 0.25-hour reduction of Metcalf's time; a 23.50-hour

reduction of Feerick's time; and a 5-hour reduction of Mehdi's time, for a total reduction of 49.75 hours.

### 3. Whether certain time expended by Plaintiffs' counsel is clerical in nature, or otherwise unrecoverable

Defendants next argue that 96 time entries in Plaintiffs' records billing for clerical tasks, including entries for time spent submitting *pro hac vice* motions, should be disallowed. (R. 147, Defs.' Resp. at 12-13.) Defendants highlighted these entries in purple and pink in the records submitted to the Court. (R. 148-1, Ex. A, Pls.' Time Records.) The time entries highlighted in purple and pink represent a total of 117.10 hours with a purported value of $31,537.00. (R. 147, Defs.' Resp. at 13.) Plaintiffs argue that clerical tasks are compensable, and cite to a memorandum of law drafted in 2007 in which Unilever's counsel, Schiff Hardin LLP, took an opposite position claiming that paralegal time, travel expenses, and the like are compensable. (R. 159, Pls.' Reply at 14.) Plaintiffs further respond that Unilever's counsel is charging Unilever for many clerical tasks, including "updating internal case files," and "scanning documents." (*Id.*)

In determining the number of hours "reasonably expended," courts should "disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d at 553 (citation and internal quotation marks omitted). Thus, courts should not permit recovery for administrative or clerical tasks, such as organizing file folders, preparing documents, and copying documents. *Id.* Further, courts should disallow recovery for such tasks whether an attorney or paralegal performed them. *Id.* The relevant inquiry for recovering paralegal fees is "whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder." *People Who Care v.*

*Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1315 (7th Cir. 1996). Further, courts in this District have held that preparing and filing form legal documents, such as applications to proceed in forma pauperis, are considered non-compensable "clerical or administrative tasks." *Trump v. Colvin*, No. 12 C 6194, 2015 WL 970111, at *4 (N.D. Ill. March 2, 2015); *see also Maki v. Astrue*, No. 07-C-282, 2008 WL 4830085, at *3 (E.D. Wis. Oct. 29, 2008) (deducting "the time counsel spent filing forms and documents with the court and drafting routine filings which generally are prepared by support staff").

Plaintiffs, in support of their argument that time spent on clerical tasks is compensable, cite to a 2007 memorandum prepared by Schiff Hardin attorneys in which they argue that similar tasks are compensable. (R. 159, Pls.' Reply at 14.) However, the court in that case, *Days Inn Worldwide, Inc. v. Lincoln Park Hotels, Inc.*, 500 F. Supp. 2d 770 (N.D. Ill 2007), never decided that issue, and thus the Court finds that the cited material in the memorandum is unpersuasive.

The Court has reviewed the disputed time entries highlighted in purple and pink in Plaintiffs' records, and concludes that the tasks described by the entries are correctly characterized as clerical in nature and thus are not compensable. The entries include tasks such as "shipping box to Chicago," "Reschedule meeting," and "updating retainer files." (R. 148-1, Ex. A, Pls.' Time Records at 62, 67.) Plaintiffs also filed five *pro hac vice* motions; each motion was a form document obtained from the Court, which required Plaintiffs' attorneys to fill in information including their names, addresses, and bar admissions, and check boxes related to their good standing in the bars of other courts. (R. 7, Safirstein Mot.; R. 9, Metcalf Mot.; R. 10, Eisinger Mot.; R. 12, Polaszek Mot.; R. 14 Safirstein Amend. Mot.) This requires little effort, and thus the Court finds that these motions qualify as "routine filings" that are non-compensable. *See Maki*, 2008 WL 4830085, at *3.

Accordingly, the Court strikes the entirety of the purple and pink highlighted time entries relating to clerical tasks and preparation and filing of *pro hac vice* motions. This results in the following reductions: a 3-hour reduction of Eisinger's time; a 0.10-hour reduction of Fanning's time; a 17.70-hour reduction of Jewell's time; a 50.60-hour reduction of Ramirez's time; a 1.50-hour reduction of Safirstein's time; a 2-hour reduction of Polaszek's time; a 10.75-hour reduction of Sachar's time, a 26-hour reduction of Feerick's time; a 0.75-hour reduction of Sclafani's time; a 0.50-hour reduction of Getty's time; a 1.40-hour reduction of Brown's time; a 1.50-hour reduction of English's time; and a 1.30-hour reduction of Stith's time. Thus, the Court strikes a total of 117.10 hours.[7]

### 4. Whether certain time expended by Plaintiffs' counsel is excessive, redundant, or otherwise unnecessary

Defendants next object to 91 time entries in Plaintiffs' records that Defendants argue represent excessive hours not reasonably necessary or appropriate for the litigation. (R. 147, Defs.' Resp. at 13-15.) Defendants highlighted these entries in orange in the records submitted to the Court. (R. 148-1, Ex. A, Pls.' Time Records.) The time entries highlighted in orange represent a total of 462 hours with a purported value of $280,270.00. (R. 147, Defs.' Resp. at 15.) Defendants contend that Plaintiffs assigned multiple attorneys to single tasks unreasonably, because one attorney could have performed those tasks. (*Id.* at 13-14.) Defendants also argue that certain time entries reflect excessive charges for tasks performed, including duplicative charges. (R. 148, Morency Decl. at 9.) Defendants further argue that it was unreasonable for Plaintiffs to assign partners to more than ninety percent of the work involved in this case, because much of the work did not require attorneys of a high experience level. (R. 147, Defs.'

---

[7] The total of 117.10 hours is calculated by adding together the hours spent on clerical tasks (109.65) and the hours spent preparing *pro hac vice* motions (7.45). (R. 147-1, Ex. B, Charts at 2.)

Resp. at 20.) Plaintiffs respond that the disputed time entries are reasonable and not excessive. (R. 159, Pls.' Reply at 16.) In support, Plaintiffs note that Defendants' billing records are similar to Plaintiffs' records. (*Id.*) Specifically, Plaintiffs contend that "there were only 2 lawyers who billed for the drafting of Unilever's reply in further support of its motion to dismiss the complaint in the *Reid* matter – Schiff Hardin partners Morency and Hemeryck." (*Id.*)

The Supreme Court has directed that "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434. The Seventh Circuit has cautioned that "the tendency of law firms to overstaff a case should cause the trial court to scrutinize a fees petition carefully for duplicative time[.]" *Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989) (internal citations omitted); *see also Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009) (courts are "encouraged to scrutinize fee petitions for duplicative billings when multiple lawyers seek fees"). Nonetheless, the mere fact that two lawyers have billed for the same task does not mean that the hours should be deducted. *Gibson*, 873 F. Supp. 2d at 989; *see also Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008) ("The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone."). Thus, the relevant inquiry remains whether the time was "reasonably expended." *Hensley*, 461 U.S. at 444. Finally, attorneys can only apply their rates "to work that reasonably requires counsel of that experience." *O'Brien*, 2011 WL 3610076, at *2.

Defendants object to numerous time entries, including time Plaintiffs' counsel spent amending their class action complaint for the Kentucky lawsuit and the California lawsuit,

drafting a mediation statement, preparing for the mediation session, and attending the mediation session. (R. 148, Morency Decl. at 9-10.) Of the 91 entries objected to, Defendants attribute 45 to Eisinger, 38 to Polaszek, three to Safirstein, one to Sclafani, three to Mehdi, and one to Hamilton. (R. 148-1, Ex. A, Pls.' Time Records.) The Court will consider Defendants' objections to each attorney's time entries in turn.

Defendants first object to a total of 45 entries contained in Eisinger's time records. (*Id.* at 8-46.) The majority of the entries relate to time spent adapting the *Reid* complaint for filing in California and Kentucky, reviewing and revising the complaints, reviewing and revising the settlement agreement, and communicating with counsel in other states regarding the three putative class actions. (*Id.* at 8, 10-12, 16, 18, 20-22, 24-25, 28-30, 35-38, 42-43, 44, 46.) Specifically, Defendants point to 46 hours that Eisinger spent drafting and revising the California complaint; they object to 30 of these hours as excessive. (R. 147, Defs.' Resp. at 14; R. 148-1, Ex. A, Pls.' Time Records at 21-22, 28-30.) Defendants also object to these hours due to the fact that in addition to the hours Eisinger spent on the California complaint, Mehdi and her paralegal Hamilton spent roughly 25 hours, and Polaszek and Safirstein spent around 11 hours reviewing and revising the same complaint. (R. 147, Defs.' Resp. at 14.) As a practical matter, the Court does not consider it unreasonable that Eisinger spent 46 hours drafting and revising the California complaint. The Court also does not consider it unreasonable that Eisinger, Mehdi, Hamilton, Polaszek, and Safirstein cumulatively spent roughly 80 hours drafting and reviewing the California complaint. The complexity of the class action lawsuit here, the difficulties involved in adapting the class action to other states, and the further difficulties involved in coordinating litigation efforts between multiple attorneys in different states, leads the Court to conclude that these hours were "reasonably expended" and not excessive. *Hensley*, 461 U.S. at

444. Further, Eisinger is the principal of the Law Office of Jana Eisinger, and is apparently the only attorney employed at the Office. (R. 155, Eisinger Decl. at 1.) Thus, the work performed by Eisinger "reasonably require[d] counsel of that experience" by default as she was the only counsel available to perform the work. *O'Brien*, 2011 WL 3610076, at *2. Accordingly, the Court will not subtract these hours from Plaintiffs' fee petition.

Defendants also challenge five of Eisinger's entries for 22.5 hours of work performed drafting and revising the fee petition and fee declaration. (R. 148-1, Ex. A, Pls.' Time Records at 44.) While time spent preparing a fee petition is compensable, the Seventh Circuit has observed that lawyers often "litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). Accordingly, one factor considered in determining the reasonableness of time spent preparing a fee petition is a "comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon*, 175 F.3d at 554. Where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition. *Id.* In *Ustrak*, for example, the prevailing party's attorney spent fifteen minutes preparing the fee petition for every hour spent litigating the merits. 851 F.2d at 988. There, the Seventh Circuit reduced the requested time by two-thirds. *Id.*; *see also Uphoff*, 176 F.3d at 411 (affirming district court's reduction of attorney's time spent preparing the attorney's fee motion from 9.9 hours to 1.6 hours where the attorney spent just under 100 hours litigating the merits of the case).

Here, according to Eisinger's billing records, she spent 22.5 hours preparing the fee petition and declaration. (R. 148-1, Ex. A, Pls.' Time Records at 44.) In comparison, she spent 1,582.5 hours litigating the merits of the case, meaning that she spent roughly one minute

24

preparing the petition and declaration for every hour on the merits. This amount is considerably less than the amount in *Ustrak*, and the Court concludes that it is not excessive. *See Ustrak*, 851 F.2d at 988. Accordingly, the Court declines to subtract or reduce these hours.

Defendants next object to 42 entries in the records of Morgan & Morgan, P.A. attributed to Chris Polaszek (38), Peter Safirstein (three), and David Sclafani (one). (R. 148-1, Ex. A, Pls.' Time Records at 47-95.) These entries relate to work performed in drafting motions, drafting mediation statements, preparing for the mediation conference, drafting discovery requests, attending hearings, cite-checking memoranda, and preparing the fee petition. (*Id.* at 50-51, 61-63, 66-67, 73-74, 81, 84, 90, 93.) Specifically, Defendants point out that after spending 7.5 hours drafting the mediation statement, Polaszek and Safirstein spent an additional 66 hours revising the statement and preparing for the one day session; Defendants object to the additional 66 hours as excessive. (R. 147, Defs.' Resp. at 15.) The Court does not consider the 66 hours Polaszek and Safirstein spent revising the statement and preparing for mediation to be excessive given the complexity of settling three putative class actions. The Court therefore declines to strike these hours.

Additionally, the Court does not consider the other tasks performed by Polaszek, Safirstein, and Sclafani to be unreasonable in light of the complexity of the case and the work involved in litigating it. Drafting motions, statements, and discovery requests, as well as attending hearings, are routine tasks that attorneys must perform to litigate a case; these tasks become more complicated in the context of a class action involving many different parties and attorneys. Further, it is unclear to the Court why Defendants presume these hours were not "reasonably expended" or why Defendants claim that these tasks did not require the expertise of Polaszek and Safirstein. Local Rule 54.3 requires "clarity and specificity in objections to fee

petitions[,]" and does not "allow for the shifting to the court of the objector's responsibility to particularly delineate those fees with which it takes issue and to meaningfully explain why each item claimed to be unreasonable or otherwise noncompensable should be disallowed." *Nilssen v. Gen. Elec. Co.*, No. 06 C 04155, 2011 WL 633414, at *10 (N.D. Ill. Feb. 11, 2011); *see also RK Co. v. See*, 622 F.3d 846, 854 (7th Cir. 2010) (district court did not abuse its discretion in awarding fee applicant the full amount of fees requested when challenger failed to offer detailed objections); *Sears*, 2004 WL 2423964, at *1 ("parties [must] come to grips with specific objections to specific aspects of the movant's claim for fees, as opposed to simply jousting in generalities"). Accordingly, the Court will not subtract these hours from Plaintiffs' fee petition.

Defendants also object to three entries relating to 33 hours that Polaszek spent preparing the fee petition. (R. 148-1, Ex. A, Pls.' Time Records at 93.) As explained above, where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition. *Spegon*, 175 F.3d at 554. Here, Polaszek and his firm spent 1,989.55 hours litigating the merits of the case, and 33 hours preparing the fee petition. (R. 156, Polaszek Decl. at 3.) The Court does not consider this unreasonable, and declines to subtract these hours.

Defendants next object to three of Mehdi's entries, and one of her paralegal Hamilton's entries, totaling 20.75 hours. (R. 148-1, Ex. A, Pls.' Time Records at 129-130, 133.) These four entries relate to work performed reviewing and drafting complaints and venue declarations. (*Id.*) The Court does not consider the time spent on these routine attorney tasks to be unreasonable. Also, as explained above, the Court does not find the hours Mehdi and Hamilton worked on the California complaint to be excessive. Further, Mehdi is the principal of The Mehdi Firm, PC, and she is apparently the only attorney employed there. (R. 122, Mehdi Decl. at 1.) Thus, the

work performed by Mehdi "reasonably require[d] counsel of that experience" by default as she was the only counsel available to perform the work. *O'Brien*, 2011 WL 3610076, at *2. Accordingly, the Court will not subtract these hours from Plaintiffs' fee petition.

Finally, in their response Defendants argue that all of the orange-highlighted entries should be stricken because they generally reflect hours detailing tasks in which multiple attorneys participated. (R. 147, Defs.' Resp. at 13-14.) However, Defendants do not specify which entries pertain to tasks completed by multiple attorneys. As discussed above, Local Rule 54.3 does not allow the objecting party to shift to the court the objector's responsibility to particularly identify the fees objected to and explain why each item should be disallowed. *Nilssen*, 2011 WL 633414, at *10. Further, the Court considers it reasonable for multiple attorneys to be involved in tasks related to a class action, where, as here, multiple law firms and attorneys may be working and coordinating with one another to accomplish a favorable result for the class. Accordingly, the Court declines to subtract the orange-highlighted entries from Plaintiffs' lodestar.

### 5. Whether the time Plaintiffs' counsel spent preparing the motion to limit or supervise Unilever's communications with absent class members is compensable

Defendants next challenge 20 time entries relating to Plaintiffs' motion to limit or supervise Unilever's communications with consumers who were not yet part of the certified class. (R. 147, Defs.' Resp. at 15.) Defendants highlighted these entries in green in the records submitted to the Court. (R. 148-1, Ex. A, Pls.' Time Records.) The time entries represent a total of 27.7 hours with a purported value of $17,752.50. (R. 147, Defs.' Resp. at 15.) Defendants contend that the motion was "unsuccessful," "unfounded," and had "no basis," and thus time spent preparing it should be deducted from Plaintiffs' compensable hours. (*Id.* at 16.) Plaintiffs

argue that the motion was not unfounded, and that they "prepared and filed the motion as part of [Class counsel's] zealous representation of the Class to address a business practice that it believed was designed to pick off as many Class Members as possible for paltry sums and via an unconscionable release." (R. 159, Pls.' Reply at 15.) Plaintiffs also note that the Court granted part of the relief requested in the motion. (*Id.* at 16.)

A court in this District has held that "it is appropriate to deny fees for work on unsuccessful motions that did not otherwise advance the case and that was work that would not have been necessary if the party had pursued successful avenues." *Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 973 (N.D. Ill. 2000). Here, the Court granted Plaintiffs' motion in part. (R. 52, Mem. Op. & Order at 63.) Specifically, the Court granted the motion "to the extent that Plaintiffs seek an order requiring Unilever to produce copies of its communications and purported releases with putative class members since the filing of the instant action." (*Id.*) Thus, Defendants are incorrect in characterizing Plaintiffs' motion as unsuccessful. Accordingly, the Court declines to subtract these hours.

### B.     Whether Plaintiffs' attorneys' hourly rates are reasonable

The Court next addresses the reasonableness of the hourly rates sought by Plaintiffs' attorneys. A "reasonable" hourly rate is "one that is derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (internal quotation marks and citation omitted). Thus, an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Id.* If an attorney uses contingent fee arrangements, the "next best evidence" of the attorney's market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon*, 175 F.3d at 555. The Seventh Circuit has expressed "a preference for third party affidavits that

28

attest to the billing rates of comparable attorneys." *Pickett*, 664 F.3d at 640. The party seeking

fees "bears the burden of producing satisfactory evidence—in addition to the attorney's own

affidavits—that the requested rates are in line with those prevailing in the community." *Id.*

(internal quotation marks and citation omitted). If that burden is satisfied, the burden shifts to

the other party to offer evidence that sets forth a "good reason" why a lower rate should be

awarded. *People Who Care*, 90 F.3d at 1313 (internal quotation marks and citations omitted). If

the party seeking fees fails to carry its burden, the Court may properly "make its own

determination of a reasonable rate." *Pickett*, 664 F.3d at 640.

### 1. Jana Eisinger's rate

Plaintiffs seek an hourly rate of $550 for Eisinger, the principal of the Law Office of Jana

Eisinger, PLLC, who has more than 20 years of litigation experience. (R. 155, Eisinger Decl. at

4.) In support of this rate, Plaintiffs have submitted a declaration by Eisinger that includes her

biography, as well as an unofficial version of the *Laffey* Matrix that differs significantly from the

official U.S. Department of Justice version.[8] (R. 121-4, Ex. 4, Eisinger Decl.; R. 155, Eisinger

Decl. at 4; R. 159-1, Ex. A, Unofficial Matrix.) Defendants argue that Eisinger's hourly rate

should be reduced to $500 due to her lack of experience in class action litigation, and because

that rate is consistent with the rates charged by Unilever's counsel, who they claim have similar

experience and skill. (R. 147, Defs.' Resp. at 18, 21.) In support, Defendants submitted the

official U.S. Department of Justice version of the 2014-2015 *Laffey* Matrix ("the Matrix") and

---

[8] The *Laffey* Matrix is a chart of hourly rates for attorneys and paralegals in the Washington,
D.C. area that was prepared by the United States Attorney's Office for the District of Columbia
to be used in fee-shifting cases. *Montanez v. Simon*, 755 F.3d 547, 554 (7th Cir. 2014).

the 2010-2011 United States Consumer Law Attorney Fee Survey Report ("the Report").[9]  (R.

147-2, Ex. C, Matrix.; R. 147-3, Ex. D, Report.)

Plaintiffs' evidence in support of Eisinger's requested rate includes Eisinger's declaration

as well as a lengthy biography that details her credentials and experience.  (R. 121-4, Ex. 4,

Eisinger Decl. at 7-8; R. 155, Eisginer Decl.)  Eisinger attests that she specializes in complex

commercial litigation.  (R. 155, Eisinger Decl. at 7.)  Eisinger also attests that she has

considerable class action litigation experience; she "handled commercial and class-action

litigation for numerous Fortune 50 clients" as an associate at Skadden, Arps, Slate, Meagher &

Flom, LLP, and has been involved in a number of other "significant class actions" in

Pennsylvania, Colorado, Nevada, and California federal courts.  (R. 121-4, Ex. 4, Eisinger Decl.

at 7.)  Eisinger further attests that she is currently involved in an antitrust class action in the

Eastern District of Pennsylvania in which she is billing her time at the same rate of $550 per

hour.  (R. 155, Eisinger Decl. at 5.)  The Seventh Circuit has directed that "[t]he attorney's actual

billing rate for comparable work is presumptively appropriate to use as the market rate." *People*

*Who Care*, 90 F.3d at 1310 (citation and internal quotation marks omitted).  However, an

attorney's "actual billing rate" is the rate that fee-paying clients have previously paid, not the rate

that the attorney is billing in a contingent fee class action.  *See Vahidy v. Transworld Sys., Inc.*,

No. 09 C 50067, 2009 WL 2916825, at *5 (N.D. Ill. Sept. 1, 2009).  Here, Eisinger has not

specified whether she is actually billing her client at the rate of $550 per hour in her antitrust

class action, or if it is a contingent fee case.  Additionally, Eisinger's antitrust case is in a

---

[9]  The 2010-2011 United States Consumer Law Attorney Fee Survey Report published the
survey results relating to attorney's fees for attorneys specializing in consumer law for the ten
largest U.S. cities as of the 2010 census: New York, NY, Los Angeles, CA, Chicago, IL,
Houston, TX, Philadelphia, PA, Phoenix, AZ, San Antonio, TX, San Diego, CA, Dallas, TX, and
San Jose, CA.  (R. 147-3, Ex. D, Report at 7.)

different district, and Plaintiffs have offered no evidence to prove that the billing rates in each

district are comparable. Therefore, while the Court will consider this billing rate, it does not find

this evidence particularly persuasive.

Plaintiffs also submit an unofficial version of the *Laffey* Matrix to support Eisinger's rate.

(R. 159-1, Ex. A, Unofficial Matrix.) Because this version of the Matrix is unofficial and differs

significantly from the official version, the Court declines to consider it. Accordingly, the Court

concludes that Plaintiffs have not met their burden of producing satisfactory evidence—in

addition to Eisinger's declaration—that her requested rate of $550 is in line with those prevailing

in the community. *See Pickett*, 644 F.3d at 640. The Court therefore may properly "make its

own determination of a reasonable rate." *Id.*

Defendants offer the Report in support of their requested rate for Eisinger of $500. (R.

147-3, Ex. D, Report.) Courts in this District and others have considered the Report in analyzing

the reasonableness of proposed hourly billing rates. *See Vahidy*, 2009 WL 2916825, at *5

(considering the 2007 Consumer Law Attorney Fee Survey along with other evidence in

determining the reasonableness of an attorney's hourly billing rate); *see also Moore v. Midland*

*Credit Mgmt., Inc.*, No. 3:12-CV-166-TLS, 2012 WL 6217597, at *4 (N.D. Ind. Dec. 12, 2012)

("When corroborated by additional evidence, the Report provides a general range for billing rates

that is useful as one factor in a court's multi-factor analysis."); *Anderson v. Specified Credit*

*Ass'n, Inc.*, No. 11-53-GPM, 2011 WL 2414867, at *4 (S.D. Ill. June 10, 2011) (considering the

2010-2011 Consumer Law Attorney Fee Survey along with the attorneys' profiles in determining

the reasonableness of hourly billing rates); *Moreland v. Dorsey Thornton & Assocs. L.L.C.*, No.

10-CV-867, 2011 WL 1980282, at *3 (E.D. Wis. May 20, 2011) (considering the 2008-2009

Consumer Law Attorney Fee Survey). Thus, although the Court does not consider the Report

determinative, the Court will consider it as one of many factors. The Report states that in 2010-2011, the median attorney rate for all consumer law attorneys surveyed in Chicago was $437, and the average rate was $430. (R. 147-3, Ex. D, Report at 22.) The corresponding median years in practice for these attorneys was 15 years. (*Id.*) The 75% median rate for the attorneys surveyed was $562, and the 95% median rate was $587. (*Id.*)

Defendants also offer the Matrix in support of their requested rate. (R. 147-2, Ex. C, Matrix.) The Seventh Circuit has never formally adopted the Matrix and has stated only that it "can assist the district court with the challenging task of determining a reasonable hourly rate." *Pickett*, 664 F.3d at 648. Courts in this District have relied on the Matrix as one factor in determining a reasonable rate. *See Sandra T.-E. v. Sperlik*, No. 05 C 473, 2012 WL 1107845, at *1 (N.D. Ill. Apr. 1, 2012) (collecting cases). Other courts have given the Matrix little weight because its rates "appear significantly higher than those customarily charged" in this District and it does not consider experience in a specific legal expertise. *Id.* at *1 (citation omitted); *see also Montanez*, 755 F.3d at 554 (expressing skepticism about applying the Matrix outside of Washington, D.C.); *Obrycka v. City of Chi.*, No. 07 C 2372, 2013 WL 1749803, at *3 (N.D. Ill. Apr. 23, 2013) (declining to consider the Matrix because it fails to account for experience in a specific legal expertise); *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *5 (N.D. Ill. Feb. 13, 2012) (noting the significantly higher market rates in Washington, D.C.). Defendants do not address the appropriateness of applying the Matrix in this District given the hourly rate differential. Nonetheless, the Court will consider the Matrix as one factor in its analysis. The Matrix recommends that attorneys with more than 20 years of experience should receive a $520 hourly rate. (R. 147-2, Ex. C, Matrix at 2.)

The Court finds Eisinger's class action litigation experience persuasive, and that experience should place her somewhere in between the Report's median rate of $437 and its 75% median rate of $562. (R. 147-3, Ex. D, Report at 22.) The Matrix's recommendation of $520 is within this range and represents a reasonable compromise between the rates requested by the parties. As stated above, the Matrix rates are higher than rates typically charged in this District. *Sperlik*, 2012 WL 1107845, at *1. However, because the Matrix rate recommended here is supported by the Chicago-specific rates contained in the Report, the Court concludes that it is reasonable.

Accordingly, the Court finds that $520 is a reasonable market rate for Eisinger's services in this case.

### 2. Marvin Miller's rate

Plaintiffs seek an hourly rate of $815 for Miller, an attorney at Miller Law LLC with more than 42 years of commercial and class action litigation experience. (R. 125, Miller Decl. at 16; R. 154, Miller Decl. at 2-3.) In support of this rate, Plaintiffs have submitted a declaration by Miller that includes his biography and credentials. (R. 125, Miller Decl.; R. 154, Miller Decl.) Defendants argue that Miller's hourly rate should be reduced to $576 and submit the Report and the Matrix in support. (R. 147, Defs.' Resp. at 21; R. 147-2, Ex. C, Matrix; R. 147-3, Ex. D, Report.) Defendants contend that they arrived at the $576 hourly rate because it is consistent with "Schiff Hardin partner rates." (R. 147, Defs.' Resp. at 21.)

Plaintiffs' evidence in support of Miller's rate includes Miller's declaration in which he attests that he has "more than 35 years of experience in litigating class actions," and that his firm "handles almost exclusively complex plaintiffs' class actions." (R. 154, Miller Decl. at 2.) Plaintiffs also submitted a description of Miller Law LLC, including Miller's biography. (R.

125, Ex. A, Firm Resume at 5-17.) However, an attorney's own affidavit, viewed as self-

serving, "cannot satisfy the plaintiff's burden of establishing the market rate for that attorney's

services." *Spegon*, 175 F.3d at 556. Plaintiffs do not offer any third-party affidavits or further

evidence in support of their requested rate for Miller. Due to the lack of evidence provided by

Plaintiffs, the Court concludes that Plaintiffs have not met their burden, and therefore the Court

will proceed to make its own determination of a reasonable rate. *See Pickett*, 644 F.3d at 640.

Defendants first offer the Report in support of their requested rate for Miller of $576. (R.

147-3, Ex. D, Report.) The Report states that in 2010-2011, the median attorney rate for all

consumer law attorneys surveyed in Chicago was $437, the 75% median rate was $562, and the

95% median rate was $587. (R. 147-3, Ex. D, Report at 22.) The median years in practice of the

attorneys surveyed was 15. (*Id.*) Defendants also offer the Matrix in support of their requested

rate. (R. 147-2, Ex. C, Matrix.) The Matrix recommends that attorneys with more than 20 years

of experience should receive a $520 hourly rate. (R. 147-2, Ex. C, Matrix at 2.) The Court finds

the Matrix and the Report less persuasive as relating to Miller, considering his more than 35

years of experience in litigating class actions. (R. 154, Miller Decl. at 2.) Further, Defendants'

proposal of compensating Miller at "Schiff Hardin partner rates" is unconvincing. (R. 147,

Defs.' Resp. at 21.) Defendants do not provide any context as to the experience or skill of the

partners referenced, and thus the Court cannot determine if those partners and Miller are of

comparable skill and experience. Considering Miller's more than 35 years of experience in

consumer class actions, it is likely that his time would be compensated at a rate significantly

exceeding the Report's 95% median rate of $587. (R. 147-3, Ex. D, Report at 22.) However,

with no evidence presented by Plaintiffs relating to Miller's past awards or past rates that paying

clients have agreed to, the Court declines to award Miller's requested rate of $815. Thus, the

Court concludes that a reasonable rate for Miller should be lower than Miller's requested rate and higher than Defendants' proposed rate for Miller.

Accordingly, the Court finds that $650 is a reasonable rate for Miller.

### 3. Matthew Van Tine's rate

Plaintiffs seek an hourly rate of $685 for Van Tine, an attorney at Miller Law LLC with more than 20 years of experience. (R. 125, Miller Decl. at 17-18; R. 154, Miller Decl. at 3.) In support, Plaintiffs submit a declaration by Miller that includes Van Tine's biography. (R. 125, Miller Decl. at 17-18.) Defendants do not specifically object to this rate because Van Tine's compensable hours were not included until Miller's second declaration, which Plaintiffs submitted after Defendants had made their objections. (R. 154, Miller Decl. at 3.) However, Defendants suggested generally rates for "local counsel at the partner rate of $558 unless their regular rate is lower," and thus the Court will consider $558 to be Defendants' suggestion for Van Tine's rate. (R. 147, Defs.' Resp. at 21.)

Plaintiffs' evidence to support Van Tine's requested rate consists only of Van Tine's biography. (R. 125, Miller Decl. at 17-18.) Van Tine's biography states that he specializes in antitrust, securities fraud, and consumer protection matters. (*Id.*) It also indicates that he has been involved in many consumer class actions over the past 20 years, and that he previously was affiliated with two other class action boutique law firms. (*Id.*) However, beyond this, Plaintiffs offer no evidence in support of Van Tine's requested rate. Thus, Plaintiffs again fail to carry their burden, and the Court must make its own determination of the reasonable rate for Van Tine. *See Pickett*, 664 F.3d at 640.

As stated above, Defendants have not specifically objected to Van Tine's rate due to the timing of Plaintiffs' submission of Miller's second declaration. (R. 154, Miller Decl.) However,

Defendants generally suggested a rate of $558 for all "local counsel" involved in this case. (R. 147, Defs.' Resp. at 21.) This number is well above the Matrix recommendation of $520, but is below the Report's 95% median rate of $587 for consumer law attorneys in Chicago. (R. 147-2, Ex. C, Matrix; R. 147-3, Ex. D, Report at 22.) Due to Van Tine's experience and credentials, his rate should be reflected at the high end of the Report's suggested rates.

Accordingly, the Court finds that $600 is a reasonable rate for Van Tine.

### 4. Lori Fanning's rate

Plaintiffs seek an hourly rate of $600 for Fanning, an attorney at Miller Law LLC with more than 10 years of experience in class action and consumer protection litigation. (R. 125, Miller Decl. at 17.) In support of the requested rate, Plaintiffs submitted a declaration by Miller, which includes Fanning's biography. (*Id.*) Defendants suggest a rate of $558 for Fanning. (R. 147-1, Ex. B, Charts at 3.) Defendants do not directly state their reasons for this figure.

Plaintiffs submitted Fanning's biography as evidence to support her requested rate of $600. (R. 125, Miller Decl. at 17.) Fanning's biography states that she "concentrates her practice on complex class litigation in a wide range of matters in federal and state court, primarily in the areas of consumer protection, antitrust and securities." (*Id.*) Her biography also cites examples of cases with which she has been involved. (*Id.*) Aside from her biography, however, Plaintiffs submit no other evidence to support Fanning's requested rate. Plaintiffs thus have not met their burden and the Court may make its own determination of a reasonable rate. *See Pickett*, 644 F.3d at 640. Defendants do not offer specific reasons for objecting to Fanning's proposed rate. However, Defendants' suggested rate of $558 is well above Matrix levels, and is just below the Report's 75% median rate for consumer law attorneys with a median of 15 years

experience. (R. 147-2, Ex. C, Matrix; R. 147-3, Ex. D, Report at 22.) For these reasons, the Court finds that Defendants' suggested rate is reasonable.

Accordingly, the Court finds that $558 is a reasonable rate for Fanning.

### 5.    Andrew Szot's rate

Plaintiffs request an hourly rate of $600 for Szot, an attorney at Miller Law LLC with more than 10 years of experience in complex commercial litigation. (R. 125, Miller Decl. at 18.) In support of the requested rate, Plaintiffs submitted a declaration by Miller, which includes Szot's biography. (*Id.*) Defendants suggest a rate of $558 for Szot, without giving specific reasons for the suggested rate. (R. 147-1, Ex. B, Charts at 3.)

Plaintiffs' evidence in support of Szot's rate is once again lacking. Plaintiffs' supporting evidence is limited to a three paragraph biography of Szot explaining that he "handles a wide variety of complex commercial litigation matters[.]" (R. 125, Miller Decl. at 18.) Thus, the Court concludes that Plaintiffs have not met their burden, and the Court must make its own determination of the reasonable rate. *See Pickett*, 644 F.3d at 640. As with Fanning's rate, Defendants' requested rate for Szot of $558 is well above Matrix levels and consistent with Report levels for an attorney of Szot's experience. (R. 147-2, Ex. C, Matrix; R. 147-3, Ex. D, Report at 22.) Accordingly, the Court finds that a rate of $558 is reasonable for Szot.

### 6.    Anne Jewell, Jorge Ramirez, and Dena Robinson's rates

Plaintiffs seek an hourly rate of $250 for Jewell, a paralegal; $220 for Ramirez, a law clerk; and $250 for Robinson, a paralegal. (R. 125, Miller Decl. at 3; R. 154, Miller Decl. at 3.) Jewell, Ramirez, and Robinson are employed at Miller Law LLC. (R. 154, Miller Decl. at 3.) Defendants seek to reduce the rate for all three to $70 per hour. (R. 147, Defs.' Resp. at 21.)

Plaintiffs, in their reply brief, assert that the Matrix suggests an hourly rate of $150 for paralegals. (R. 159, Pls.' Reply at 12.) Plaintiffs further assert that Schiff Hardin billed Unilever for work performed by similar employees at a rate of $245 (paralegal), $265 (support staff analyst), and $190 (librarian). (*Id.*) Plaintiffs' evidence of Matrix levels and Schiff Hardin billing rates is unconvincing. First, the suggested Matrix rate of $150 per hour is lower than the rates Plaintiffs request for Jewell, Ramirez, and Robinson. (R. 125, Miller Decl. at 3; R. 154, Miller Decl. at 3; R.147-2, Ex. C, Matrix at 2.) Further, while evidence of Schiff Hardin's paralegal rates could be relevant in some circumstances, Plaintiffs provide no context as to how and why they are relevant specifically to rates for Jewell, Ramirez, and Robinson. Plaintiffs offer no other evidence to support their requested rates. Thus, the Court concludes that Plaintiffs have not met their burden, and the Court proceeds to make its own determination of the reasonable rates. *See Pickett*, 644 F.3d at 640.

Defendants, in support of their requested rate, cite to cases concluding that an appropriate rate for paralegals is between $75 and $100. (R. 147, Defs.' Resp. at 20 n.5 (citing *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *9 (N.D. Ill. Feb. 13, 2012) (finding that $100 was an appropriate hourly rate for a paralegal with a bachelor's degree); *Goodale v. George S. May Int'l Co.*, No. 09 C 7848, 2010 WL 2774013, at *4 (N.D. Ill. July 14, 2010) (finding that $75 is a reasonably hourly rate for paralegal work))). Defendants also cite to the Report's finding that the average hourly rate for all paralegals in Chicago in 2010-2011 was $123, and the median rate was $112. (*Id.*)

A 2012 opinion from the Northern District of Indiana found that a $100 hourly rate has consistently been awarded to law clerks and paralegals in both the Northern District of Illinois and the Northern District of Indiana. *Chorak v. Astrue*, No. 2:11CV114, 2012 WL 1577448, at

*2 (N.D. Ind. May 4, 2012) (collecting cases); *see also Kasalo v. Trident Asset Mgmt., L.L.C.*,

No. 12 C 2900, 2015 WL 2097605, at *3 (N.D. Ill. May 3, 2015) (finding that $100 is a

reasonable rate for paralegal/law clerk time); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176,

2014 WL 2809016, at *6 (N.D. Ill. June 20, 2014) (finding that $125 is a reasonable hourly rate

for a paralegal); *Embry v. Barnhart*, No. 02 C 3821, 2003 WL 22478769, at *3 (N.D. Ill. Oct. 31,

2003) (finding that $95 is an appropriate hourly rate for law clerks and paralegals in Chicago).

In *Chorak*, the court ultimately awarded a law clerk with 10 years of experience and a law degree

a rate of $125, and a paralegal and law clerk with no law degree a rate of $100. *Id.* Plaintiffs

have submitted no evidence relating to the credentials or experience of Jewell, Ramirez, or

Robinson. Thus, taking into consideration the case law and the rates in the Report, the Court

concludes that $100 is a reasonable rate for Jewell, Ramirez, and Robinson.

### 7. Peter Safirstein's rate

Plaintiffs seek an hourly rate of $700 for Safirstein, a partner at Morgan & Morgan, P.A.

with more than 20 years of experience. (R. 156, Polaszek Decl. at 6.) In support of the

requested rate, Plaintiffs submitted a declaration from Chris Polaszek, a partner at Morgan &

Morgan, P.A., which includes Safirstein's biography. (*Id.* at 11.) Defendants propose an hourly

rate of $576 for Safirstein, to match Schiff Hardin partner rates. (R. 147, Defs.' Resp. at 21.)

Defendants also submitted the Report and the Matrix in support of the proposed rate. (R. 147-2,

Ex. C, Matrix; R. 147-3, Ex. D, Report.)

Plaintiffs' evidence in support of their requested rate for Safirstein is insufficient.

Plaintiffs submit Polaszek's declaration to support the requested rate, but do not submit any

third-party affidavits or any evidence of Safirstein's fee awards in other cases. (R. 156, Polaszek

Decl. at 11.) Safirstein's biography states that he "primarily represents plaintiffs in securities,

antitrust, commodities and consumer class actions[.]" (*Id.*) The biography further states that

Safirstein "played a prominent role" in a number of class actions, two of which produced

settlement amounts of $500 million and $180 million. (*Id.*) Plaintiffs submit no further evidence

to support Safirstein's rate. Therefore, the Court concludes that Plaintiffs have not met their

burden of justifying the reasonableness of the requested rate, and proceeds to make its own

determination of the reasonable rate. *See Pickett*, 644 F.3d at 640.

The Matrix suggests a rate of $520 for an attorney with more than 20 years of experience.

(R. 147-2, Ex. C, Matrix at 2.) However, because the Matrix calculates rates based on general

experience only, and because the Matrix rates are applied to match market rates in Washington,

D.C., and not Chicago, the Court finds the Report more persuasive here. *See Obrycka*, 2013 WL

1749803 at *3; *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *5 (N.D. Ill. Feb.

13, 2012). The Report states that the average rate for all consumer law attorneys with a median

of 15 years experience in Chicago is $430, with a 95% median rate of $587. (R. 147-3, Ex. D,

Report at 22.) Considering the fact that Safirstein concentrates his practice in consumer law, and

specifically in consumer class actions, and that he has more than 20 years of experience, his rate

should be reflected at the high end of the Report's figures. (R. 156, Polaszek Decl. at 11.)

Therefore, the Court finds that a reasonable rate for him should be slightly higher than

Defendants' proposed rate of $576.

Accordingly, the Court finds that $600 is a reasonable rate for Safirstein.

### 8. Chris Polaszek's rate

Plaintiffs seek an hourly rate of $650 for Polaszek, a partner at Morgan & Morgan, P.A.

with nearly 20 years of experience. (R. 156, Polaszek Decl. at 6.) In support of the requested

rate, Plaintiffs submitted a declaration by Polaszek, which includes Polaszek's biography. (*Id.* at

12-13.) Defendants seek to reduce the rate to $558. (R. 147, Defs.' Resp. at 21.) In support, Defendants submitted the Matrix and the Report. (R. 147-2, Ex. C, Matrix; R. 147-3, Ex. D, Report.)

Plaintiffs' evidence in support of their requested rate is again lacking. Polaszek's biography states that he concentrates his practice in class action litigation, and has "served a prominent role in numerous class actions[.]" (R. 156, Polaszek Decl. at 12.) The biography also provides examples of Polaszek's class actions that resulted in settlements of $30.5 million, $7 million, $13.7 million, $15 million, and $8.5 million. (*Id.*) However, Plaintiffs submit only Polaszek's declaration in support of the rate. (R. 156, Polaszek Decl.) Thus, the Court concludes that Plaintiffs have not met their burden, and the Court must determine the reasonable rate. *See Pickett*, 644 F.3d at 640.

It is appropriate for a court to consider evidence of prior fee awards to an attorney in determining the reasonableness of a requested rate. *Spegon*, 175 F.3d at 557 (affirming district court's fee award based on same hourly rate awarded two years earlier); *Gibson*, 873 F. Supp. 2d at 984-85 (considering prior fee award). Defendants offer evidence that less than two years ago the district court for the Southern District of Florida determined that Polaszek's reasonable hourly rate was $500. (R. 147, Defs.' Resp. at 18 (citing *Golf Clubs Away, L.L.C. v. Hostway Corp.*, No. 11- 62326-CIV, 2012 WL 2912709, at *4 (S.D. Fla. July 16, 2012)).) Defendants' proposed rate of $558 for Polaszek exceeds the $500 rate awarded in that case. Defendants' proposed rate falls between the Report's median rate and 75% median rate. (R. 147-3, Ex. D, Report at 22.) Considering the fact that Polaszek concentrates his practice in class actions, and that he has nearly 20 years of experience, the Court concludes that his rate should fall between

41

the Report's 75% median rate and 95% median rate. (R. 156, Polaszek Decl. at 12; R. 147-3, Ex. D, Report at 22.)

Accordingly, the Court finds that $576 is a reasonable rate for Polaszek.

### 9.    Elizabeth Metcalf's rate

Plaintiffs seek a rate of $400 for Metcalf, an associate at Morgan & Morgan, P.A. with six years of experience. (R. 156, Polaszek Decl. at 6, 15.)  In support, Plaintiffs submitted a declaration by Polaszek, which includes Metcalf's biography. (*Id.* at 15.)  Defendants seek to reduce Metcalf's rate to $346.50, without giving specific reasons for the reduction. (R. 147-1, Ex. B, Charts at 3.)

Plaintiffs' evidence in support of the requested rate is insufficient. Metcalf's biography states that she "focuses her practice on antitrust and class action securities litigation," among other areas. (*Id.*)  Plaintiffs submitted only a declaration by Polaszek and Metcalf's biography to support the rate. (R. 156, Polaszek Decl. at 15.)  Thus, the Court concludes that Plaintiffs have not met their burden, and the Court may properly "make its own determination of a reasonable rate." *Pickett*, 644 F.3d at 640.  Considering Metcalf's lack of experience, her rate should be reflected at the low end of the Report's figures. (R. 156, Polaszek Decl. at 15.)  The Report's 25% median rate is $362. (R. 147-3, Ex. D, Report at 22.)  Defendants' requested rate of $346.50 falls below the Report's 25% median rate. (R. 147-1, Ex. B, Charts at 3.)  The Matrix suggests a rate of $300 for attorneys with Metcalf's level of experience. (R. 147-2, Ex. C, Matrix.)  Considering Metcalf's lack of experience, and Plaintiffs' lack of evidence to support their requested rate, the Court finds that Defendants' proposed rate of $346.50 is reasonable.

### 10. Roger Sachar's rate

Plaintiffs seek an hourly rate of $350 for Sachar, an associate at Morgan & Morgan, P.A. with six years of experience. (R. 156, Polaszek Decl. at 6, 16.) In support, Plaintiffs submitted a declaration by Polaszek, which includes Sachar's biography. (*Id.* at 16.) Defendants seek to reduce Sachar's rate to $346.50, without giving specific reasons for the reduction. (R. 147-1, Ex. B, Charts at 3.)

Plaintiffs' evidence in support of Sachar's requested rate is again lacking. Sachar's biography states that he focuses his practice on "class action securities litigation, shareholder derivative litigation, and consumer fraud." (R. 156, Polaszek Decl. at 16.) Because Plaintiffs submitted only a declaration by Polaszek and Sachar's biography in support of the rate, the Court concludes that Plaintiffs have not met their burden and proceeds to make its own determination of a reasonable rate. *See Pickett*, 644 F.3d at 640. Considering Sachar's lack of experience, his rate should fall at the low end of the Report's figures. (R. 147-3, Ex. D, Report at 22.) Because Sachar's credentials are very similar to Metcalf's, and because Defendants' requested rate is nearly identical to Plaintiffs' requested rate, the Court finds that Defendants' proposed rate of $346.50 is reasonable.

### 11. Sheila Feerick, David Sclafani, and Jennifer Post's rates

Plaintiffs seek hourly rates of $275 for Feerick, $250 for Sclafani, and $150 for Post, three "Professional Support Staff" employees at Morgan & Morgan, P.A. (R. 156, Polaszek Decl. at 6.) In support of the requested rates, Plaintiffs submitted a declaration by Polaszek, which includes Feerick's biography but does not include any information relating to Sclafani or Post. (*Id.* at 18.) Defendants seek to reduce the rate for all three to $70 per hour. (R. 147, Defs.' Resp. at 21.)

43

Feerick's biography states that she is the Director of Shareholder Communications, has "nearly ten years of securities litigation experience," and earned an MBA in Finance in 2000. (R. 156, Polaszek Decl. at 18.) In support of their requested rates, Plaintiffs assert that the Matrix suggests an hourly rate of $150 for all paralegals and that Schiff Hardin billed Unilever for work performed by similar employees at rates of $245 (paralegal), $265 (support staff analyst), and $190 (librarian). (R. 159, Pls.' Reply at 12.) Again, Plaintiffs' evidence of Matrix levels and that Schiff Hardin billed Unilever for similar work at similar rates is unconvincing. The suggested Matrix rate of $150 per hour is lower than the rates Plaintiffs request for Feerick, Sclafani, and Post. (R. 125, Miller Decl. at 3; R. 154, Miller Decl. at 3; R.147-2, Ex. C, Matrix at 2.) Further, Plaintiffs provide no context as to how and why Schiff Hardin's paralegal rates are relevant specifically to rates for Feerick, Sclafani, and Post. Thus, the Court concludes that Plaintiffs have not met their burden, and proceeds to make its own determination of the reasonable rates. *See Pickett*, 644 F.3d at 640.

Defendants, in support of their requested rate for these three support staff, again rely on *Blackwell* and *Goodale*, cases where the court concluded that an appropriate rate for paralegals in Chicago is between $75 and $100. (R. 147, Defs.' Resp. at 20 n.5 (citing *Blackwell*, 2012 WL 469962, at *9; *Goodale*, 2010 WL 2774013, at *4)). Defendants also point to the Report's findings that the average hourly rate for all paralegals in Chicago in 2010-2011 was $123, with a median rate of $112. (*Id.*; R. 147-3, Ex. D, Report at 22.)

As explained above, in *Chorak* the court ultimately awarded a law clerk with ten years of experience and a law degree a rate of $125, and a law clerk with no law degree a rate of $100. 2012 WL 157748, at *2. Plaintiffs identify Feerick, Sclafani, and Post as "Professional Support Staff" employees; because Plaintiffs have produced little evidence describing their

responsibilities, the Court will treat them as paralegals or law clerks. (*See* R. 156, Polaszek Decl. at 6, 18.) Based on Plaintiffs' evidence that Feerick has ten years of experience and an MBA, the Court finds that $125 is a reasonable rate for Feerick. Based on Plaintiffs' lack of evidence relating to Sclafani's and Post's experience or credentials, the Court finds that $100 is a reasonable rate for Sclafani and Post.

### 12. Richard Getty's rate

Plaintiffs seek a rate of $475 for Getty, the Principal of The Getty Law Group, PLLC. (R. 157, Ex. A, Summary of Fees at 7.) Defendants do not object to this rate, and the Court concludes that it is reasonable.

### 13. Danielle Brown's rate

Plaintiffs seek an hourly rate of $325 for 28.3 hours, and a rate of $375 for 48.5 additional hours, for Brown, who is of counsel at The Getty Law Group, PLLC. (*Id.*) Defendants propose a rate of $346.50 for the combined 76.8 hours, without offering specific reasons for the proposed rate. (R. 147-1, Ex. B, Charts at 3.)

Plaintiffs do not submit any evidence in support of their requested rate for Brown, and do not offer any justification for the difference between the requested rates for different hours expended. Thus, Plaintiffs have not met their burden, and the Court must make its own determination of a reasonable rate. *Pickett*, 644 F.3d at 640. Because Plaintiffs offer no evidence relating to Brown's level of experience or her credentials, the Matrix and the Report lend little to the analysis of Brown's reasonable rate. Based on the lack of evidence presented by the parties, the Court concludes that the average of the two rates is a reasonable rate for Brown.

Accordingly, the Court finds that $350 is a reasonable rate for Brown.

### 14. Kristopher Collman's rate

Plaintiffs seek a rate of $230 for Collman, an associate at The Getty Law Group, PLLC. (R. 157, Ex. A, Summary of Fees at 7.) Defendants do not object to this rate, and the Court concludes that it is reasonable.

### 15. Matthew English's rate

Plaintiffs seek an hourly rate of $240 for 2.6 hours, and a rate of $275 for 3.5 additional hours, for English, an associate at The Getty Law Group, PLLC. (*Id.*) Defendants propose a rate of $240 for the combined 6.1 hours, without offering specific reasons for the proposed rate. (R. 147-1, Ex. B, Charts at 3.)

Plaintiffs do not submit any evidence in support of their requested rate for English, and do not offer any justification for the difference between the requested rates for different hours expended. Thus, Plaintiffs have not met their burden, and the Court proceeds to make its own determination of a reasonable rate. *Pickett*, 644 F.3d at 640. Because Plaintiffs do not offer any evidence relating to English's level of experience or credentials, the Matrix and the Report cannot provide support in determining English's rate. Based on the lack of evidence provided by the parties, the Court concludes that the average of the two rates is a reasonable rate for English.

Accordingly, the Court finds that $257.50 is a reasonable rate for English.

### 16. Evan Rice's and Ann Stith's rates

Plaintiffs seek an hourly rate of $175 for Rice, a law clerk, and $150 for Stith, a paralegal, both employed at The Getty Law Group, PLLC. (R. 157, Ex. A, Summary of Fees at 7.) Defendants seek to reduce both rates to $70. (R. 147-1, Ex. B, Charts at 3.) Plaintiffs do not offer any evidence relating to Rice's or Stith's experience or credentials. Thus, Plaintiffs have not met their burden, and the Court must make its own determination of a reasonable rate.

Defendants, in support of their requested rate, once again cite the Northern District cases concluding that an appropriate rate for paralegals is between $75 and $100, and the Report's finding that the average hourly rate for all paralegals was $123, with a median rate of $112. (R. 147, Defs.' Resp. at 20 (citing *Blackwell*, 2012 WL 469962, at *9; *Goodale*, 2010 WL 2774013, at *4); R. 147-3, Ex. D, Report at 22.) As explained above, in *Chorak* the court awarded a law clerk with 10 years of experience and a law degree a rate of $125, and a law clerk with no law degree a rate of $100. 2012 WL 157748, at *2. Based on that decision and the lack of evidence provided by Plaintiffs in relation to Rice's and Stith's credentials, the Court finds that $100 is a reasonable rate for both Rice and Stith.

### 17.  Azra Mehdi's rate

Plaintiffs seek a rate of $775 for Mehdi, the principal of The Mehdi Firm, PC, who has 19 years of experience. (R. 122, Mehdi Decl. at 3.) In support of their requested rate, Plaintiffs submitted a declaration by Mehdi that includes her biography. (*Id.* at 5-8.) Defendants suggest a rate of $558 for Mehdi because she is less experienced and seeks a higher rate than Schiff Hardin partners. (R. 147, Defs.' Resp. at 19, 21.)

Plaintiffs' evidence in support of the requested rate is again insufficient. Mehdi's biography states that she specializes in "class action litigation in the securities, consumer fraud and antitrust practice areas, among others." (R. 122, Mehdi Decl. at 5.) Her biography also includes an extensive list of cases that she has litigated. (*Id.* at 5-7.) However, Plaintiffs offer only Mehdi's declaration and her biography in support of her requested rate. (*Id.*) Plaintiffs do

not submit any third-party affidavits or any evidence of Medhi's fee awards in other cases.[10] Thus, the Court concludes that Plaintiffs have not their burden, and proceeds to make its own determination of the reasonable rate for Mehdi. *See Pickett*, 644 F.3d at 640.

The 95% median rate in the Report is $587. (R. 147-3, Ex. D, Report at 22.) Considering Mehdi's 19 years of experience in handling complex plaintiffs' class actions, her rate should fall at the high end of the Report's figures. (R. 122, Mehdi Decl. at 3.) Therefore, the Court concludes that $600 is a reasonable rate for Mehdi.

### 18.    Gabriela Hamilton's rate

Plaintiffs seek a rate of $215 for Hamilton, a paralegal at The Mehdi Firm, PC. (R. 122, Mehdi Decl. at 3.) Defendants seek to reduce the rate to $70. (R. 147-1, Ex. B, Charts at 3.) Plaintiffs do not offer any evidence relating to Hamilton's experience or credentials, or any other evidence to justify their requested rate. Thus, Plaintiffs have not met their burden, and therefore the Court will make its own determination of a reasonable rate. *Pickett*, 644 F.3d at 640.

As explained above, the Court finds that $100 is a reasonable rate for a paralegal, particularly when no information is given regarding his or her credentials. Accordingly, the Court concludes that $100 is a reasonable rate for Hamilton.

---

[10] In their reply brief, Plaintiffs cite to a Central District of California case where they claim the court approved a "class attorney's fee award that result[ed] in Azra Medhi . . . receiving professional fees in the amount of $725[.]" (R. 159, Pls.' Reply at 6 (citing *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-00302 MRP (MANx), 2013 WL 6577020, at *19 (C.D. Cal. Dec. 5, 2013)).) In that case, however, the court granted attorney's fees in the amount of 17 percent of the gross settlement fund. *Me. State Ret. Sys.*, 2013 WL 6577020, at *19. The court did not calculate attorney's fees based on the lodestar method, and therefore there was no discussion of what the reasonable rates were for each attorney. This Court thus finds *Countrywide* irrelevant to its determination of Medhi's reasonable rate.

After considering Plaintiffs' requested rates and Defendants' objections, the lodestar in this case stands at $1,503,285.41 based on the following breakdown of reasonable hourly rates and hours expended:

| Firm | Attorney | Hourly Rate | Hours | Total per attorney |
|---|---|---|---|---|
| The Law Office of Jana Eisinger | Jana Eisinger (Principal) | $520 | 941.25 | $489,450 |
| Miller Law LLC | Marvin Miller (Attorney) | $650 | 42.70 | $27,755 |
| Miller Law LLC | Matthew Van Tine (Attorney) | $600 | 1 | $600 |
| Miller Law LLC | Lori Fanning (Attorney) | $558 | 58.80 | $32,810.40 |
| Miller Law LLC | Andrew Szot (Attorney) | $558 | 0.40 | $223.20 |
| Miller Law LLC | Anne Jewell (Paralegal) | $100 | 9.50 | $950 |
| Miller Law LLC | Jorge Ramirez (Law Clerk) | $100 | 7.50 | $750 |
| Miller Law LLC | Dena Robinson (Paralegal) | $100 | 2 | $200 |
| Morgan & Morgan, P.A. | Peter Safirstein (Partner) | $600 | 466.50 | $279,900 |
| Morgan & Morgan, P.A. | Chris Polaszek (Partner) | $576 | 945.05 | $544,348.80 |
| Morgan & Morgan, P.A. | Elizabeth Metcalf (Attorney) | $346.50 | 112.25 | $38,894.63 |
| Morgan & Morgan, P.A. | Roger Sachar (Attorney) | $346.50 | 9.25 | $3,205.13 |
| Morgan & Morgan, P.A. | Sheila Feerick (Support Staff) | $125 | 134.50 | $16,812.50 |
| Morgan & Morgan, P.A. | David Sclafani (Support Staff) | $100 | 17 | $1,700 |
| Morgan & Morgan, P.A. | Jennifer Post (Support Staff) | $100 | 14.25 | $1,425 |
| The Getty Law Group, PLLC | Richard A. Getty (Principal) | $475 | 30.80 | $14,630 |
| The Getty Law Group, PLLC | Danielle H. Brown (Of Counsel) | $350 | 63.80 | $22,330 |

| The Getty Law Group, PLLC | Kristopher D. Collman (Associate) | $230 | 1 | $230 |
|---|---|---|---|---|
| The Getty Law Group, PLLC | Matthew W. English (Associate) | $257.50 | 4.10 | $1,055.75 |
| The Getty Law Group, PLLC | Evan M. Rice (Law Clerk) | $100 | 0 | $0 |
| The Getty Law Group, PLLC | Ann M. Stith (Paralegal) | $100 | 26.40 | $2,640 |
| The Mehdi Firm, PC | Azra Z. Mehdi (Principal) | $600 | 34.75 | $20,850 |
| The Mehdi Firm, PC | Gabriela Hamilton (Paralegal) | $100 | 25.25 | $2,525 |
| | | **TOTALS** | 2948.05 | $1,503,285.41 |

## IV. Adjustment of the lodestar under *Hensley*

After calculating the lodestar, the Court may, in its discretion, increase or reduce the lodestar amount by considering a variety of factors, including: the time and labor required; whether the attorney's fee is fixed or contingent; the amount involved and the results obtained; and the experience, reputation, and ability of the attorneys. *Hensley*, 461 U.S. at 430 n.3. However, there is a "strong presumption" that the lodestar amount represents the reasonable fee. *Perdue*, 559 U.S. at 554; *City of Burlington*, 505 U.S. at 562. The presumption is that "the lodestar includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee[.]" *Perdue*, 559 U.S. at 553 (citation omitted). Thus, "factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar[.]" *Id.* at 546. In that respect, the party seeking fees "has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Id.* Although the Supreme Court "has never sustained an enhancement of a lodestar

amount for performance," it has "repeatedly said that an enhancement may be awarded in 'rare' and 'exceptional' circumstances." *Id.* at 552 (internal quotation marks and citation omitted).

Here, the total amount of Plaintiffs' lodestar is $1,503,285.41. Plaintiffs argue that their requested fee award of $3,416,632.50 represents a "modest lodestar multiplier of 1.64."[11] (R. 126, Pls.' Mem. at 55.) Plaintiffs do not directly argue why the awarded lodestar amount should be increased. (*Id.* at 54-55.) Instead, they argue that "a lodestar multiplier cross-check" further confirms the reasonableness of their requested fee award.[12] (*Id.* at 54.) However, generally in support of their requested fee award, Plaintiffs emphasize the risk of nonpayment involved in this case, the extensive work required to litigate three class actions in different jurisdictions, and the "positive result achieved for the Class." (*Id.* at 53-54.) Defendants argue that an increase of the lodestar is not appropriate. (R. 147, Defs.' Resp. at 21-22.) Defendants contend that this case does not involve "rare" or "exceptional" circumstances justifying an increase of the lodestar because the litigation lasted less than two years and did not require an exceptional amount of work on the part of Plaintiffs' counsel. (*Id.* at 22-23.) Defendants further argue that the favorable result achieved for the Class and the "complex procedural issues" involved in the case are factors that are "more than encompassed by a properly calculated lodestar." (*Id.*)

Plaintiffs' counsel litigated this case on a contingent-fee basis and thus risked nonpayment for their efforts. (R. 126, Pls.' Mem. at 54.) However, it is well established that the

---

[11] Plaintiffs calculated their lodestar multiplier value of 1.64 based on its purported lodestar amount of $2,087,643. (R. 126, Pls.' Mem. at 55.) Based on the adjusted lodestar value of $1,503,285.41, Plaintiffs' requested fee award of $3,416,632.50 now represents a multiplier of 2.27.

[12] In percentage-of-the-fund cases, courts sometimes conduct a "lodestar multiplier cross-check" to further support their fee awards. *See In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2009 WL 4799954, at *17 (N.D. Ill. Dec. 9, 2009) ("The purpose of a lodestar cross-check is simply to determine whether a proposed fee award is excessive relative to the hours reportedly worked by counsel, or whether the fee is within some reasonable multiple of the lodestar.").

risk of nonpayment involved in a contingent-fee case brought under a fee-shifting statute does not justify the enhancement of a determined lodestar amount. *City of Burlington*, 505 U.S. at 562-65 (noting that "an enhancement for contingency would likely duplicate in substantial part factors already subsumed in the lodestar[,]" and "concluding that no contingency enhancement whatever is compatible with the fee-shifting statutes"). The Seventh Circuit has held that Supreme Court authority on this issue "has been interpreted to preclude generally the use of risk multipliers in fee-shifting cases." *Florin*, 34 F.3d at 564. This is due in part to the fear that by increasing a plaintiff's lodestar in a fee-shifting case based on the risk of nonpayment involved, the "defendants would essentially be subsidizing plaintiffs' attorneys for unsuccessful lawsuits against other defendants." *Florin*, 34 F.3d at 565. In other words, such an increase would allow, at the defendant's expense, a plaintiff's attorney to accept other, less meritorious cases without risking a net financial loss. Here, the MMA fee-shifting provision governs the Court's analysis of Plaintiffs' fee petition, and thus based on the foregoing precedent, the Court declines to increase Plaintiffs' lodestar on the basis of the risk of nonpayment involved in the case.

Plaintiffs next point to the substantial settlement amount and the difficult nature of litigating three class actions in different jurisdictions to justify an increase in the lodestar. (R. 126, Pls.' Mem. at 53.) Defendants argue that the amount recovered and the complexities of the procedural issues are factors that are already subsumed in the lodestar calculation. (R. 147, Defs.' Resp. at 22-23.) Defendants are correct that in this District, the amount of a recovery is considered to be a factor that is subsumed in the lodestar calculation. *See Warfield*, 733 F. Supp. 2d at 957. Further, while this case may have involved some complex procedural issues, the Court does not consider these to be rare or exceptional circumstances justifying an increase in the lodestar. *See Perdue*, 559 U.S. at 553 ("an attorney's performance" and the "novelty and

complexity of a case" are presumably reflected in the attorney's billable hours and "may not be used as a ground for an enhancement"). Thus, the Court declines to increase the lodestar on either of those bases.

Accordingly, the Court, in its discretion, declines to increase or otherwise adjust its lodestar calculation.

## V.    Plaintiffs' request for reimbursement of litigation costs and expenses

Rule 23 provides that plaintiffs may recover reasonable nontaxable costs authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). The MMA's fee-shifting provision authorizes the prevailing party to recover reasonable costs and expenses. 15 U.S.C. § 2310(d)(2). Additionally, the parties have agreed that Unilever will pay Class Counsel for costs incurred in connection with the prosecution of the three class action lawsuits. (R. 143, Ex. 1, Agreement at 36.)

Plaintiffs seek a total of $36,069.52 in costs and expenses. (R. 154, Miller Decl. at 3; R. 155, Eisinger Decl. at 8-9; R. 156, Polaszek Decl. at 8; R. 157, Getty Decl. at 9.) Specifically, Miller Law LLC requests $1,054.98; The Law Office of Jana Eisinger requests $8,480.90; Morgan & Morgan, P.A. requests $22,334.81; and The Getty Law Group, PLLC requests $4,198.83. (R. 154, Miller Decl. at 3; R. 155, Eisinger Decl. at 8-9; R. 156, Polaszek Decl. at 8; R. 157, Getty Decl. at 9.) Each law firm provided an itemization of all their costs and expenses. (R. 154, Miller Decl. at 3; R. 155, Eisinger Decl. at 8-9; R. 156, Polaszek Decl. at 8; R. 157, Getty Decl. at 9.) Defendants do not specifically object to any of Plaintiffs' claimed costs and expenses. The Court has reviewed the requested costs and expenses and concludes that all the charges are reasonable. Accordingly, the Court awards Plaintiffs their requested costs and expenses. *See Kurgan v. Chiro One Wellness Ctrs. L.L.C.*, No. 10-cv-1899, 2015 WL 1850599,

at *9 (N.D. Ill. Apr. 21, 2015) (awarding plaintiffs their requested costs and expenses where defendants did not challenge the costs and plaintiffs properly itemized the costs in the fee petition); *Iroanyah v. Bank of Am., N.A.*, No. 09 C 94, 2013 WL 268635, at *1 (N.D. Ill. Jan. 24, 2013) (awarding plaintiff his requested costs where defendant posed no objection); *A.L. v. Chi. Pub. Sch. Dist. No. 299*, No. 10 C 494, 2012 WL 3028337, at *7 (N.D. Ill. July 24, 2012) (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorneys' fees and costs (R. 121) is GRANTED in part and DENIED in part. The Court awards Plaintiffs attorneys' fees in the amount of $1,503,285.41 and costs and expenses in the amount of $36,069.52, for a total fee award of $1,539,354.93.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: June 10, 2015**